**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DISTRICT**

DAVID JIA,

Plaintiff,

CASE NO.:

v.

University of Miami,
a not-for-profit corporation,
ANGELA CAMERON,
KATHARINE WESTAWAY, in her
official and individual capacities
WILLIAM ANTHONY LAKE, in his
official and individual capacities,

Defendant,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID JIA, by and through his undersigned counsel, files his complaint against Defendants, UNIVERSITY OF MIAMI (hereinafter referred as the "University"), ANGELA CAMERON, KATHARINE WESTAWAY, and WILLIAM ANTHONY LAKE alleges as follow:

### Parties

1. Plaintiff, DAVID JIA is a natural person, and citizen of the United States. He was a student at the University during the incidents from which this lawsuit stems, he is currently a resident of California, domiciled in California and plans to remain there indefinitely.

1

2.   Defendant, the University, is a private institution of higher education that is incorporated in Florida, with its principal place of business in Florida;

3.   Defendant, KATHARINE WESTAWAY is a natural person, and citizen of the United States. She is resident of Florida, domiciled in Florida, and plans to remain there indefinitely. At all material times, she was employed by the University.

4.   Defendant, ANGELA CAMERON is a natural person, and a citizen of the United States. She is resident of Florida, domiciled in Florida, and plans to remain there indefinitely. She is a student at the University and resides on the campus in Coral Gables, Florida.

5.   Defendant, WILLIAM ANTHONY LAKE (hereinafter referred as "TONY LAKE") is a natural person, and a citizen of the United States. He is resident of Florida, domiciled in Florida, and plans to remain there indefinitely. At all material times, he was employed at the University.

## Jurisdiction and Venue

6.   This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 20 U.S.C. § 1367.

7.   DAVID JIA a resident of California, domiciled in California with the intent to permanently remain therein and defendants are citizens of Florida, domiciled in Florida with the intent to remain therein.

8.   Plaintiff is diverse from all defendants and the amount in controversy exceeds $75,000, exclusive of costs and interests.

2

9.    DAVID JIA's state law claims are so closely related to his federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

10.   This Court has jurisdiction over this action by virtue of federal question jurisdiction pursuant to 28 U.S.C. §1331, since this claim stems from a violation of a federal law by way of Title IX, and the protection of civil rights pursuant to 28 U.S.C. §1343.

11.   This Court has personal jurisdiction over the defendants because (a) they are citizens of Florida, doing business in Florida, and/or (b) reside in the state of Florida, specifically Miami-Dade County, Florida.

12.   Venue for this action is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this Court's judicial district. Venue is also proper over the defendants because (a) they are citizens of Florida, doing business in Florida, and/or (b) reside in the state of Florida, specifically Miami-Dade County, Florida.

## PROCEDURAL HISTORY AND BACKGROUND

13.   This case arises amidst a growing national controversy stemming from the U.S. Dept. of Education's Office of Civil Rights ("OCR") threats to withhold federal education dollars in order to compel colleges and universities to address "sexual violence" on their campuses.

14.   The Federal Government, through the U.S. Department of Education, has been pressuring colleges and universities to aggressively pursue investigations of sexual violence on campuses under Title IX, the federal civil rights law that prohibits discrimination in education on the basis of gender, and for violations of the Clery Act, which requires all

colleges and universities that participate in federal financial aid programs to keep and disclose information about crime on and near their respective campuses, also to hold tribunals mirroring their mandated procedures to enact punishments for those accused of sexual assault. Compliance with reporting sexual violence is monitored by the U.S. Department of Education, which can impose civil penalties up to $35,000 per violation against institutions for each infraction and can suspend institutions from participating in federal student financial aid programs, which could financially destroy any college or university.

15.   On April 4, 2011, the U.S. Education Department's Office of Civil Rights sent a "Dear Colleague Letter" to colleges and universities. (See Exhibit 1) The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and Universities must enact processes as mandated by the Department of Education ("DOE"), they must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct.   Most notably, the Dear Colleague Letter required schools to adopt a relatively low burden of proof --"more likely than not"—in cases involving sexual misconduct, including, assault, and suggested that schools should focus more on victim advocacy.  However, the letter states:

> "Throughout a school's Title IX investigation, including at any hearing, the parties must have an equal opportunity to present relevant witnesses and other evidence.  The complainant and the alleged perpetrator must be afforded similar and timely access to any information that will be used at the hearing."

16.   The University, upon pressure from governmental agencies such as OCR/DOE and/or internal forces at the University, caused the University to take unlawful and gender

4

biased disciplinary actions against DAVID JIA. Evidence of these unlawful and/or gender biased actions include, but is not limited to, the University's pattern and practice of taking unlawful disciplinary actions against male students such as DAVID JIA, without allowing for constitutional due process as mandated by title IX.

17.   Based on the information detailed in this Complaint (and) upon information and belief, Defendants' unlawful discipline of DAVID JIA occurred in part because of Defendants' biased assumptions that female students do not sexually assault their fellow male students.

18.   Evidence of governmental pressure exerted upon the University includes The White House's April 2014 report entitled "Not Alone" which threatens the elimination of federal funds by stating:

> "If OCR finds a Title IX violation, the school risks losing federal funds. In these cases, OCR must first seek to voluntarily resolve the noncompliance before terminating funds. Through this voluntary resolution process, OCR has entered into agreements that mandate schools to take a number of comprehensive steps to remedy the problem on their campuses."

19.   The White House also noted that:

> "The Justice Department (DOJ) . . . shares authority with OCR for enforcing Title IX, and may initiate an investigation or compliance review of schools receiving DOJ financial assistance. If schools are found to violate Title IX and a voluntary resolution cannot be reached, DOJ can . . . seek to terminate DOJ funds."

20.   In response to pressure from the DOE, the DOJ, and/or the White House, educational institutions like the University of Miami are severely mishandling procedural protections afforded to students like DAVID JIA in sexual misconduct cases.

21.     Similarly, the facts detailed in this Complaint prove the University's Policies explicitly and/or implicitly incorporate and/or embrace the Association of Title IX Administrators (ATIXA) and National Center for Higher Education Risk Management (NCHERM) procedures, however they are misinterpreting the procedures causing gender bias and severely limiting the procedural protections that should be afforded male and female students alike in sexual misconduct cases.

22.     In February 2014, Catherine E. Lhamon, the Assistant Secretary of Education who heads the department's OCR office, told college officials attending a conference at the University of Virginia that schools need to make "radical" change.  According to the Chronicle of Higher education, college presidents suggested afterward that there were "crisp marching orders from Washington."[1]

23.     "The Federal government has created a significant amount of pressure on colleges and universities which in turn has led universities to unfairly treat all those accused of sexual misconduct with a presumption of guilt."[2] The Chronicle of Higher Education noted that "Colleges face increasing pressure from 'survivors' and federal government to improve the campus climate."[3]  In the same article, the Chronicle noted that different standards were applied to men and women: "Under current interpretations of colleges' legal responsibilities, if a female student alleges sexual assault by a male student after heavy drinking, he may be suspended or expelled, even if she appeared to be a willing participant and never said no.  That is because in heterosexual cases, colleges typically

---

[1] *Colleges Are Reminded of Federal Eye on Handling of Sexual-Assault Cases,* Chronicle of Higher Education, February 11, 2014

[2] *Occidental Justice,* Esquire Magazine, April 2015.

[3] *Presumed Guilty: College men accused of rape say the scales are tipped against them,* Chronicle of Higher Education, September 1, 2014

see the male student as the one physically able to initiate sex, and therefore responsible for gaining the woman's consent."[4]

24.     After years of criticism for being too lax on campus sexual violence, college and universities are relying on Title IX to crack down on alleged perpetrators of sexual violence and sexual misconduct.  The pendulum has now swung too far in the other direction against accused male students.

25.     The University's Title IX department improperly mishandled the investigation, by having an unfair hearing process against DAVID JIA.

### THE NATURE OF THIS ACTION

26.     DAVID JIA seeks redress against defendants the University, ANGELA CAMERON, KATHARINE WESTAWAY, and TONY LAKE, due to actions, omissions, errors, and the flawed procedures, and/or negligence and overall failure to provide DAVID JIA with a meaningful standard of due process and equity, concerning the wrongful allegations of sexual misconduct made against him.

27.     DAVID JIA, a male undergraduate student at the University in good standing, an active member of the University's student community, with a 3.2 GPA was accepted into the University with the Dickenson Scholarship.  The allegations against David were made by a fellow University student, ANGELA CAMERON, after one evening of consensual sexual intercourse following a night of drinking together at an apartment get together.

28.     Due to a complete lack of evidence, no charges were brought against DAVID JIA by the South Miami Police Department.  Notwithstanding the foregoing, the University made

---

[4] Id.

the decision to charge DAVID JIA with violations of the University's student handbook policies and procedures for sexual misconduct with respect to ANGELA CAMERON.

29.     After a flawed and discriminatory investigation, the University found DAVID JIA responsible for "Sexual Assault/Battery" and "Relationship and/or Intimate Partner Violence" and suspended him for one semester.

30.     The foregoing, coupled with the University's violations of its own policies, and title IX's policies, during the course of its investigation, resulted in the ability for DAVID JIA to continue his education, to be stripped away.

31.     Due to University placing a sexual battery charge on DAVID JIA's record, his ability to enter a graduate program after graduation has been severely compromised, in addition he was delayed a semester and was forced to obtain council.

32.     DAVID JIA's emotional health has been greatly compromised by the entire ordeal and its consequences.  Thus, DAVID JIA brings this action to obtain damages and relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972 and state law claims.

33.     It is imperative for the court to place a check on institutions interpreting Title IX claims. Failure to do so would inevitably lead to fraudulent claims and a shift in statistical data that would unfortunately lead to the conclusion that men are being discriminated against.

## FACTUAL BACKGROUND

### A. Events leading up to false accusations against DAVID JIA

34.     Plaintiff, DAVID JIA, met ANGELA CAMERON while taking an Intermediate Acting class at the University during the spring semester of 2014.

8

35.    During the acting class, they became scene partners and had to act out a scene from "The Blue Room", a play where DAVID JIA played a cab driver and ANGELA CAMERON played a prostitute who falls in love with the cab driver.

36.    DAVID JIA and ANGELA CAMERON began to have consensual sex on or about the beginning of March, 2014 while practicing as scene partners.

37.    On April 11, 2014, DAVID JIA invited ANGELA CAMERON to join him to be an extra at a film shoot of a party, taking place at the Red Roads Commons Apartments.  They both began to drink and became intoxicated during the party film shoot.

38.    DAVID JIA offered to walk ANGELA CAMERON to her dormitory, but she rejected the idea insisting that she stay with DAVID JIA at his apartment for the night.

39.    DAVID JIA and ANGELA CAMERON both walked into his apartment "noticeably drunk" according to his roommates Merrick Stein and Michael Gardell. (See Exhibit 2 and 3).

40.    ANGELA CAMERON went into DAVID JIA's room and took off her clothes to get more comfortable.

41.    ANGELA CAMERON later asked DAVID JIA to have sex but he rejected her advances because she had told him that she became sick when she used the bathroom. Due to her eagerness to have sex and his drunken state, DAVID JIA would later that night agree to have sex with ANGELA CAMERON.

42.    DAVID JIA and ANGELA CAMERON had consensual sex that night, and according to his roommates, they could hear ANGELA CAMERON's moaning noises from the room

and "overheard her [Angela] telling Dave that she wanted him inside of her and other vulgar phrases". (Exhibit 3 Michael Gardell written testimony)

43.    The next morning DAVID JIA and ANGELA CAMERON again had consensual sex and would continue to do so fairly regularly for more or less the next two weeks.  David had a "new hickey on his neck" the next morning after having consensual sex with ANGELA CAMERON. (Exhibit 3 Michael Gardell written testimony)

44.    On April 14, 2014 DAVID JIA and ANGELA CAMERON went out to dinner at Gigi's, a restaurant in the Midtown area of Miami, after the alleged incident.

45.    Furthermore, on April 15, 2014 ANGELA CAMERON delivered cookies to DAVID JIA as a way to thank him for not leaving her alone at the apartment, the night of the alleged sexual assault.

46.    ANGELA CAMERON became more attached to DAVID JIA, hinting towards wanting to continue having sex and seeing each other.  David informed her that he could not commit to a relationship with her.

47.    On April 16, 2014 DAVID JIA and ANGELA CAMERON performed their final theater scene for their class and afterwards attended a meeting together on campus for the film fraternity, Delta Kappa Alpha ("DKA").

48.    ANGELA CAMERON, after the DKA meeting, asked DAVID JIA to be her date for her Kappa Kappa Gamma sorority formal.  David reluctantly agreed to attend the formal with her.

49.   DAVID JIA and ANGELA CAMERON continued to communicate but he began to have second thoughts about going to the sorority formal with ANGELA CAMERON and continuing a relationship with her.

50.   On the night of April 19, 2014, DAVID JIA publicized a Facebook event page about a party he was having at his apartment for the same weekend of the Kappa Kappa Gamma sorority formal. ANGELA CAMERON was not invited. Within a few hours (during the morning of April 20, 2014), ANGELA CAMERON emailed a letter to the school claiming that on April 11, 2014, DAVID JIA sexually assaulted her.

**B. Events During the 2014 University Hearings**

51.   On May 2, 2014, DAVID JIA met with TONY LAKE and David was informed of the complaint brought against him by ANGELA CAMERON. From the very beginning, DAVID JIA was treated unfairly as the guilty party because of the complete disregard to his side of the story or his witnesses.

52.   DAVID JIA, throughout the entire process was not given notice of his rights and was not allowed to have legal counsel present.

53.   The University investigator for this alleged incident was Dean TONY LAKE.  It is the University's policy to have a non-biased investigator, but they failed to adhere to their policy by appointing TONY LAKE.

54.   TONY LAKES' University profile page and LinkedIn page (see Exhibit 6 and 7) states that he is personally involved in "social rights issues", which suggests that he favors women in sexual assault cases.  Furthermore, on his LinkedIn profile he mentions he "provides advisory support to the Panhellenic association".  The Panhellenic association

11

is one of the largest organizations in the United States that advocates for women. (See Exhibit 8 Panhellenic association) Given this information, the investigation conducted by TONY LAKE into the accusations against DAVID JIA, substantially crippled any chance for David to be afforded a fair and impartial opportunity to present evidence to rebut the accusations. It is clear by TONY LAKE's conduct that in his mind, DAVID JIA was guilty.

55.   Furthermore, during one of the meetings TONY LAKE had with DAVID JIA, TONY loudly shouted to DAVID that they needed to "be more compassionate" toward ANGELA CAMERON.

56.   On July 2, while in a meeting, TONY LAKE tells DAVID JIA that it was DAVID who was the one who had "caused the situation" without looking into David's account of the night or even attempting to find any evidence to corroborate any statements provided. This conduct directly shows his bias and disregard towards anything DAVID JIA had to say or any of the evidence David presented.

57.   Demonstrating a complete disregard of DAVID JIA's evidence throughout the entire process, TONY LAKE had a written letter of charges already typed and prepared prior to the May 7, 2014 meeting, before David could present all of his evidence.

58.   On May 7, 2014 DAVID JIA was charged with "Sexual Assault/Battery" and "Relationship and/or Intimate Partner Violence" at the University's major disciplinary level.  DAVID JIA responded with "Not Responsible" to the allegations.

59.   DAVID JIA emailed TONY LAKE to inform Tony that he had two witnesses, Michael Gardell and Merrick Stein. Michael and Merrick were David's roommates and who were

willing to give sworn testimonies in defense of the allegations. Both witnesses were present on April 11, 2014 in David's apartment when the alleged sexual misconduct took place and had first-hand knowledge of the events that took place that night.

60. On May 9, 2014 DAVID JIA notified TONY LAKE, via email, that a witness by the name of Michael Gardell desired to present verbal testimony to TONY LAKE in person on May 12, 2014 and that Michael would not be able to be present for the official June 24, 2014 hearing because Michael would be home in New York on June 24, 2014.

61. On May 27, 2014 DAVID JIA emailed TONY LAKE to request Merrick Stein to be invited to participate in person for the official June 24, 2014 hearing.(See Exhibit 7 Email)

62. TONY LAKE, as well as the University failed to call Merrick Stein to be present for the June 24, 2014 hearing and instead neglectfully called Michael Gardell to be present for the June 24, 2014 hearing even though the University had notice that Michael would not be available for the June 24, 2014 hearing. Although the University did receive written statements from both witnesses their conduct shows their carelessness and disregard for DAVID JIA's side of the story. It is apparent from the University's actions that the Deans had purposefully confused Michael's schedule with Merrick's schedule, which resulted in the exclusion of witnesses who had first-hand knowledge of the incident in question. Although the school received written testimony of both DAVID JIA's witnesses it is very important that they be present to give testimony in person.

63. According to the University's Code of Conduct, under Section II (Procedural Rights for Students During a Major-Level Discipline Case) H (6), "the University will supply to the

13

Charged Student a list of the Witness/es that will be called during a hearing on its behalf."

64. However, despite DAVID JIA's written requests and submissions of his witnesses to be present, DAVID JIA never received from the University a witness list of designated witnesses for the June 24, 2014 hearing.  Had David received such list, he would have been able to note that the two individuals with direct knowledge of the allegations (Merrick Stein and Michael Gardell) had been prevented from properly participating in the proceedings.

65. According to the University's Code of Conduct, under Section II (Procedural Rights for Students During a Major-Level Discipline Case) G, "Each panel shall be composed of one student and one faculty member, each from a larger pool of prospective panelists who are each trained to hear and decide upon discipline cases. […] In addition to faculty and student body representatives, an objective Student Affairs Dean will sit on the MDHP (Major Disciplinary Hearing Panel) and will serve as Chairperson for the hearing."

66. DAVID JIA requested a three-person panel for his June 24, 2014 hearing but only received a one-person panel, consisting of only Dean Steve Priepke, to make the decision on his responsibility of the alleged incident. (TONY LAKE was also present but sitting solely as the investigator of the incident, not part of the MDHP.) (See Exhibit 8)

67. On June 24, 2014, DAVID JIA presented pertinent evidence, questions, and testimony to Dean Steve Priepke, but it was not taken into account or was maliciously disregarded without any care for the truth.  He was not allowed to question ANGELA CAMERON's

14

"witness" or ANGELA CAMERON, present his text messages with ANGELA CAMERON and series of events demonstrating or suggesting consensual sex during the April 11, 2014 incident were completely disregarded, demonstrated by the less than five (5) minutes it took for Dean Steve Priepke to make his decision in David's hearing.

68.   On July 10, 2014, DAVID JIA was sent an email by Dean Ricardo Hall informing him he was being suspended from the University for one semester.

69.   On July 14, 2014, DAVID JIA appealed the decision via letter to Vice President Patricia Whitely for "substantive finding of responsibility due to procedural defects" and "severity of sanction imposed". ( See Exhibit 9 appeal letter)

70.   Vice President Patricia Whitely declined the appeal and DAVID JIA was required to serve out his Fall semester suspension.

**C. Events After the 2014 University Hearings**

71.   During the Fall semester of 2014, ANGELA CAMERON and TONY LAKE spoke out to the Miami Hurricane, the University's official print and online newspaper, discussing the matters in regards to DAVID JIA's hearing with ANGELA CAMERON.  Although DAVID JIA was not mentioned by name, by the time the first article was published (published on December 4, 2014), many students and faculty members already knew that DAVID JIA was the accused male student.  The article was also published on the website of KATHARINE WESTAWAY, the University professor for Women's and Gender Studies, further spreading the false and defamatory information. (See Exhibit 10 Article The Miami Hurricane)

15

72. This University newspaper article states, "'There are some parts of this issue that have to do with compliance, because you could lose funding for not doing so,' Lake said." (See Exhibit 10 Article The Miami Hurricane) TONY LAKE admits that the possibility of losing funding affects the school's decisions in regards to sexual assault cases.

73. The University newspaper article further states, "'The hardest part of my job is taking a step back,' Lake said. 'I find myself getting too connected to the emotions of the accused or of the victim sometimes.' However, for Cameron, Lake was a constant source of support throughout her hearing. 'He is one of the few people on campus who is really there for students and wants them to get better,' Cameron said." (See Exhibit 10 Article The Miami Hurricane) Because TONY LAKE was "getting too connected to the emotions" and "for Cameron, Lake was a constant source of support throughout her hearing", TONY LAKE failed to properly perform his duties as an objective, impartial and unbiased University Dean and investigator during DAVID JIA's hearing with ANGELA CAMERON.

74. DAVID JIA returned to school during the spring semester of 2015.  During that time, there was already a movement started by KATHARINE WESTAWAY and ANGELA CAMERON with the malicious intent to make David's life on campus a living hell.

75. On April 6, 2015, ANGELA CAMERON falsely accused DAVID JIA of battery (this time, alleging that he had assaulted her at the theater department on campus), and he was subjected to an investigation by the Coral Gables Police Department, and another University hearing (similar to the 2014 sexual assault hearing).  Later, ANGELA CAMERON's accusations were found to be false after surveillance camera videos

16

showed that DAVID JIA was never on campus during the times of the alleged battery and that ANGELA CAMERON was not even at the scene where she told the police the battery took place  (but rather in her dormitory, Eaton Residential College) on April 6, 2015.  (See Exhibit 11 charges are unfounded)

76.    Three days later, on April 9, 2015, ANGELA CAMERON falsely accused DAVID JIA of battery again for the third time (this time alleged that he had assaulted her by the theater department on campus), and again DAVID JIA was subjected to a full investigation by the Coral Gables Police Department and by the University. After a thorough investigation by the police, it was proven that DAVID JIA was again not at the scene of the alleged incident.  ANGELA CAMERON's accusation proved to lack merit and was discredited by police.  (see Exhibit 12 Investigative Overview)

77.    The police investigation revealed, once again, that DAVID JIA was never at the location of the alleged crime after they reviewed the evidence from surveillance camera footage, phone records, internet usage records, financial records and witnesses, collected and provided by DAVID JIA.

78.    During these three (3) separate instances of ANGELA CAMERON's false accusations of serious violent crimes, with the malicious intent to get him kicked out of school and further cause intentional harm upon him. All while DAVID JIA agonized about getting kicked out of school, sat through hours of police investigations, and investigative hearings by the school.

79.    Furthermore, ANGELA CAMERON showed the police bruises and scratches all throughout her body which the police photographed. After investigating ANGELA

17

CAMERON's account of the events and the evidence, the medical examiner determined that ANGELA CAMERON's injuries were all self-inflicted wounds and bruising, which were found to be inconsistent with a beating. (See Exhibit 13 Medical Examiner)

80.   On April 21, 2015, ANGELA CAMERON, University professor, KATHARINE WESTAWAY, along with a student organization called "Canes Consent," held an event on University's campus to get "Justice for Angela". Although the battery accusations were false, ANGELA CAMERON, Professor KATHARINE WESTAWAY and the other members of "Canes Consent" continued for the next few weeks to claim that DAVID JIA had hurt and beat ANGELA CAMERON close to unconsciousness.   (see Exhibit 14 news article).

81.   Furthermore, that same day Professor KATHARINE WESTAWAY, ANGELA CAMERON and the "Canes Consent" organization, started an online petition to get DAVID JIA expelled from school before he graduates. Full of false and defamatory information, the petition gathered over 5,500 signatures. (see Exhibit 15 over 5,500 signatures)

82.   Also, the University faculty was deeply involved in the event described above as the faculty at the University had to approve such event by signing a Coral Gables Campus Revocable Agreement for Use of University Facilities. (Exhibit 24)

83.   In addition, ANGELA CAMERON states in this petition, "On April 11, 2014 my world was turned upside down when I was raped by my scene partner for my acting class. As a result, I have been diagnosed with Post Traumatic Stress Disorder, severe depression, anxiety, and chronic pain from physical trauma. A piece of my T7 vertebrae has been

cracked off and a disk is protruding causing spinal stenosis plus my pelvis is misaligned." During the 2014 investigation, there was no mention at all about any physical injuries.

84. Moreover, according to investigation reports made by the University and the Coral Gables Police Department from August and September of 2014, ANGELA CAMERON was diagnosed with multiple sclerosis ("MS") and suffered from episodes of seizures and falling, causing her pains on her back and throughout the rest of the her body. Despite the fact that the University was aware of her back problems resulting from MS, the University still allowed Professor KATHARINE WESTAWAY, ANGELA CAMERON and the "Canes Consent" organization to promote these new false claims that her back problems were allegedly caused by DAVID JIA.

85. Immediately after the online petition was written, KATHARINE WESTAWAY began circulating emails across the Internet to promote the petition. KATHARINE WESTAWAY concluded her e-mail with, "In solidarity, Dr. KATHARINE WESTAWAY and the students of Intro to Women's and Gender Studies", indicating that her University class was involved with the contents and distribution of the petitions and emails.

86. On April 22, 2015, the Miami Hurricane (the University's newspaper) released an article promoting the petition. (see Exhibit 14)

87. On April 23, 2015, a public Facebook page was started by the "Canes Consent" organization to promote the petition to get DAVID JIA expelled before graduation. (see Exhibit 16)

19

88.   On April 24, 2015, ANGELA CAMERON filed a temporary restraining order against DAVID JIA, which legally prevented him from being able to step foot on the University campus, since ANGELA CAMERON's residency was on campus.  DAVID JIA was called into Dean Maria Sevilla's office to be informed that he could be arrested for coming on campus.  This resulted in DAVID JIA having to completely change his schedule to take his final exams off-campus, while living in fear of being arrested for even taking a step on campus. (see restraining order exhibit 17)

89.   The temporary restraining order further encumbered DAVID JIA's life at the University with his access to the benefits that a University student are provided, such has the library, the gym, professors' office hours during final exams, etc.

90.   More importantly, ANGELA CAMERON's temporary restraining order originally prevented DAVID JIA from being legally able to walk during his graduation ceremony. Only with the assistance from counsel, DAVID JIA was able to submit a modification of the restraining order to allow him to participate during his graduation ceremony.

91.   On April 29, 2015, KATHARINE WESTAWAY spoke to Miami Local 10 news, a local Miami-Dade news channel, to further attempt to, in bad faith, bash DAVID JIA's reputation without any regards to the truth. (See Exhibit 18 local 10 news article)

92.   Throughout the next few weeks, numerous other news and media outlets began publishing articles referring to DAVID JIA's University disciplinary hearings with ANGELA CAMERON, and many of these articles identified DAVID JIA by name. According to various representatives from these news and media outlets, stated that

KATHARINE WESTAWAY made frequent phone calls to them, providing information about DAVID JIA and the petition.

93. On May 4, 2015, DAVID JIA filed a complaint against ANGELA CAMERON with the University for "False Information", "Harassment or Harm to Others", "Online/Internet Social Networking Usage", and "Interference with University investigations, Disciplinary Proceedings, or Records".

94. On May 6, 2015, the University determined that ANGELA CAMERON's claims of alleged assaults on April 6, 2015 and April 9, 2015 to be "unfounded".

95. Despite the fact that the University had concluded their investigations and determined ANGELA CAMERON's claims to be "unfounded," on May 6 2015, Professor KATHARINE WESTAWAY continued to promote her and ANGELA CAMERON's petition and called for a protest against DAVID JIA walking during his graduation, rallying students to put the symbol "IX" on their graduation caps symbolizing the alleged Title IX violations perpetrated against ANGELA CAMERON.  (See article exhibit 19)

96. During his May 8, 2015 graduation, DAVID JIA had to sit among his peers while his fellow students protested his walking the stage during graduation.  Meanwhile his parents were also present, experiencing great embarrassment and emotional stress of watching their only son being humiliated so publicly.

97. On May 8, 2015, University President, Donna Shalala, issued a statement further acknowledging ANGELA CAMERON's claims to be "unfounded".

98. On May 13, 2015, the Coral Gables Police Department released the police reports in regards to ANGELA CAMERON's claims of alleged assaults on April 6, 2015 and April

9, 2015, which were determined to be "unfounded". These police investigations revealed that ANGELA CAMERON had asked to retract her statements, signed a "No Prosecution" form and lied about at least 3 pregnancy tests with Hunter Bihn (another male University student who had a sexual relationship with ANGELA CAMERON). An independent medical examiner determined that ANGELA CAMERON's wounds were inconsistent with her claims and likely to be self-inflicted.

99. On May 16, 2015, a Local 10 news article was published, in which KATHARINE WESTAWAY was still continuing to support and promote her earlier claims against DAVID JIA, "[t]he Coral Gables police report 'does not shake my faith on Angela at all,' Westaway said Friday. 'I don't know how you crack your own vertebrate.'" (See exhibit 18 local 10 news article)

100. DAVID JIA suffered countless attacks on his character via social media and internet forums from fellow students, numerous false accusations of battery by ANGELA CAMERON, harassment perpetrated by Professor KATHARINE WESTAWAY on multiple occasions that were mentioned above, and a restraining order prohibiting him to be on campus.

101. In addition, DAVID JIA's character has been severely hurt with his name now being tied to "rape". All this was done with the facilitation by the University who permitted this to happen and did nothing to protect DAVID JIA during their investigation and after the claims against him were all found to be unfounded.

102. Furthermore, the University is responsible for approving events that are scheduled and organized to take place on the campus, showing a complete disregard to DAVID JIA and

allowing the narrative that ANGELA CAMERON was beaten and raped by DAVID JIA to be further perpetrated by the University staff, faculty, students and student organization, "Canes Consent".

103. After graduation, DAVID JIA filed a complaint against the University faculty and administrators involved with DAVID JIA's 2014 and 2015 hearings for misconduct and Title IX violations. The school failed to find any Title IX violations. (See Exhibit 20 Title IX complaint)

104. The school failed to find any Title IX violations instructing DAVID JIA to file privately. The school also instructed DAVID JIA that on the meeting where the evidence about the Title IX complaint was to be heard an attorney could not be present. Additionally, DAVID JIA was instructed that no facts or information would be heard about the prior occurrence regarding the accusations of rape.

105. Coincidentally TONY LAKE and KATHARINE WESTAWAY at the time are not employed at the University any longer. This leaves DAVID JIA without ability ascertain as to how certain determinations regarding his case were made at University.

106. DAVID JIA has suffered through over a year of extreme emotional stress, anguish, and embarrassment, for actions he did not commit.

107. DAVID JIA, in good faith, has exhausted all methods in attempt to resolve this situation with the University, to no avail and is now seeking justice through the court system alleging the following counts.

## COUNT I

### Breach of Contract

108.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

109.   At all times material hereto, a contractual relationship existed between the University and DAVID JIA.  The Student Rights and Responsibilities Handbook (the "Handbook") was deemed part of the contract.  Pursuant thereto, the University was required to act in accordance with the handbook in resolving complaints of misconduct and violations of the school's policies and regulations, in the investigation of those complaints, in the process of adjudicating complaints of sexual misconduct, and in resolving appeals brought challenging disciplinary decisions.

110.   Pursuant to the University's handbook students have the right to (1) the right to be treated equally in academic and social settings, (2) the right to live and/or attend classes in a physically safe environment, (3) the right to express diverse opinions in an intellectually safe environment, (4) the right to privacy, (5) the expectation of a positive living/learning environment, amongst others. DAVID JIA was usurped of these rights. He was not treated equally during social and academic settings. He did not attend classes in a physically safe environment as he feared from retaliation during his time in the University. DAVID JIA was pushed into an intellectually hostile environment where his opinions were shunned and ridiculed.

24

111.    The University breached its contract with DAVID JIA by failing to comply with the handbook and its procedures for sexual misconduct cases.

112.    First, Section II (Procedural Rights for Students During a Major Level Discipline Case) under subsection H (6) states, "All reasonable efforts will be made to entertain the insights of a charged student's witness/es.  Upon written request and submission of the Charged Student's witness list, the University will supply to the Charged Student a list of Witness/es that will be called during a hearing on its behalf."

113.    On May 9, 2014, DAVID JIA notified TONY LAKE, via email that a witness by the name of Michael Gardell desired to present verbal testimony at the hearing held on May 12, 2014 and would not be able to be present for the June 24, 2014 hearing because he would be home in New York.  DAVID JIA received confirmation via email from Dean TONY LAKE later that same day.

114.    On May, 27, 2014, DAVID JIA emailed TONY LAKE to notify him that a witness by the name of Merrick Stein would be a witness on his behalf for the determination of responsibility hearing on June 24, 2014.

115.    Both witnesses were present on April 11, 2014 in DAVID JIA's apartment when the alleged sexual misconduct took place and had first hand knowledge of the events that took place that night.

116.    Despite clear indications, via email, of the two witnesses, neither was properly considered for the respective hearings.  Mr. Stein was never summoned by the University as a witness for the June, 24, 2014 hearing nor did he receive notice whatsoever regarding the same.

117.    Incredulously, the University sent Mr. Gardell an email asking him to participate in the June 24, 2014 hearing, despite clear indications, via email by DAVID JIA, that he would not be available for the June 24, 2014 hearing because he would be home in New York.

118.    No reasonable efforts to submit the verbal testimony of either witness was ever made by the University which lead to the exclusion of witnesses with direct knowledge.

119.    Second, Section II, (H) 6 also states "For the purposes of a formal disciplinary hearing, 'witnesses' must be individuals who have first hand knowledge of the incident in question and be able to speak to the facts of the case at hand."

120.    The University allowed ANGELA CAMERON, to summon a witness who possessed no first hand knowledge of the incident in question.  The witness, Sophia, was not present for the alleged incident on April 11, 2014. Additionally, DAVID JIA was not given the opportunity to question this witness in regards to her knowledge.

121.    Third, Section II, H (13) states, "The Hearing Officer is charged with the responsibility for maintaining proper decorum and order during the hearing.  S/He may use any reasonable means necessary to maintain decorum and may exclude any person whom, in his/her opinion, has no legitimate interest in the hearing, or whose conduct impedes or threatens to impede a fair and orderly hearing".

122.    According to the University's policies, all questions must be directed towards the hearing panel and therefore, ANGELA CAMERON and DAVID JIA were not allowed to direct questions to each other. However, at the June 24, 2014 hearing, Dean Priepke allowed ANGELA CAMERON to address DAVID JIA while not allowing the same for DAVID JIA.

123.    Fourth, the handbook states in Section II, G that "Each panel shall be composed of one student and one faculty member, each from a larger pool of prospective panelist who are each trained to hear and decide upon discipline cases…In addition to faculty and student body representatives, an objective Student Affairs Dean will sit on the MDHP (Major Disciplinary Hearing Panel) and will serve as Chairperson for the hearing."

124.    In a case with such serious allegations this policy should have been strictly followed. Instead, the hearing was adjudged solely by Dean Priepke, with no other panel members present, only with TONY LAKE present as the investigator for the alleged incident.

125.    Fifth, Section II in the handbook mandates that " *Explanation of Personal Rights*, [a]t the beginning of each meeting with a student who may be charged with a violation of the Code of Conduct, the Discipline Officer shall ensure that the student involved understands her/his personal rights as explained above."

126.    At the beginning of every hearing or meeting, DAVID JIA's personal rights were never explained to him as mandated by the handbook and had a biased investigator  (Dean TONY LAKE).

127.    As a direct and proximate cause of the University's breach of contract, DAVID JIA has suffered damages including, without limitation, having his University school record improperly include a conviction and/or finding of guilt of sexual misconduct based upon unfounded charges brought against him, marrying his ability to enroll in another college or university of similar or greater stature, damaging DAVID JIA's reputation due to a finding of guilt for sexual misconduct, and present and future monetary losses as a result of the same.

27

WHEREFORE, regarding Count I, DAVID JIA demands judgment and relief against the University, KATHARINE WESTAWAY, and/or TONY LAKE as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## Count II

### Promissory Estoppel By Defendants

(in the alternative to Count I Breach of Contract Claim)

28

128. DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

129. University's employees and/or agents made various promises to DAVID JIA regarding how the University would adjudicate allegations of sexual misconduct against DAVID JIA. These promises include, but are not limited to, promises outlined in the University's Student Handbook (Exhibit 8).

130. Because of the power and authority of the University's employees and/or agents, and the relative lack of power of DAVID JIA, DAVID JIA relied upon the University's employees and/or agents' statements that DAVID JIA's rights afforded to him by the University Student Handbook's section, titled Procedures for a Formal Disciplinary Hearing (Exhibit 8), would be honored.

131. DAVID JIA reasonably relied on the University Student Handbook (See Exhibit 8) in accepting the University's offer of admission and incurring the cost of tuition and related expenses to attending the University.

132. As detailed above, DAVID JIA relied to his detriment on the University's Student Handbook (See Exhibit 8) and this reliance created the environment that allowed the University's unlawful discipline of DAVID JIA.

133. Injustice can only be avoided by enforcement of the University Student Handbook's procedure.

134. As a direct and foreseeable result of the breach of the procedures afforded by the University's Student Handbook, DAVID JIA sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to: mental anguish; severe

29

emotional distress; injury to reputation; past and future economic loss; deprivations of

due process; loss of educational opportunities; and loss of future career prospects.

WHEREFORE, regarding Count II, DAVID JIA demands judgment and relief against the

University, KATHARINE WESTAWAY, and/or TONY LAKE as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to

compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by

Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all

information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA

CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future

conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred

in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and

statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and

Appropriate.

## COUNT III

### Negligence

135.    DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

136.    At all times material hereto, the University had a duty to hire competent personnel, adequately train its personnel, and adequately supervise its personnel.

137.    Furthermore at all times material hereto, the University had a duty of care to ensure that its policies and procedures including, without limitation, those set forth in the Handbook were fair, reasonable, and followed as mandated by the Handbook.

138.    The University breached these duties of care owed to DAVID JIA and independent of its breach of contract set forth above in Count I, was negligent in the following respects:

   138.1.    Failing to train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, complaints of sexual misconduct.

   138.2.    Failing to supervise its employees, agents or representatives and making sure the handbook procedures were followed.

   138.3.    Failing to maintain proper policies and procedures designed to fairly, reasonably and properly adjudicated claims of sexual misconducts without bias or favor.

   138.4.    Failing to supervise the University's Professor KATHARINE WESTAWAY and stop her campaign, with the University's consent, with its sole purpose was to further damage DAVID JIA's reputation.

31

139.     As a direct a proximate cause of the University's negligence, DAVID JIA suffered damages including, without limitation, having his school record improperly include a conviction and/or finding of guilt of sexual misconduct based upon unfounded charges marring his ability to enroll in another college or university of similar stature as the University. Stigmatizing him with a finding of guilt for an act he did not commit, monetary losses, and suspension from school for one (1) full semester.

140.     Furthermore, once allowed back on campus DAVID JIA was harassed by students, ANGELA CAMERON, and the University's Professor, KATHARINE WESTAWAY, directly or indirectly, personally and via various Internet forums and local newspapers.

141.     DAVID JIA had charges brought against him maliciously by ANGELA CAMERON in 2015 of battery on two additional separate occasions (April 6, 2015 and April 9 2015). Both charges were proved false after police investigations and footage from the University's surveillance cameras, however, it substantially caused additional pain and emotional stress.

142.     ANGELA CAMERON also was successful in getting a temporary injunction, through the state court system, which banned DAVID JIA from being on campus but was later dropped by ANGELA CAMERON and her attorney.

143.     The University's professor, KATHARINE WESTAWAY, organized a rally of the University students to petition the school to get DAVID JIA expelled before he graduated. (See Exhibit the petition has over 5,000 signatures).

144.     Finally, the University professor, KATHARINE WESTAWAY also organized a silent protest during DAVID JIA's graduation ceremony, where graduating students wore the

symbol (IX) in red tape on their caps.  This was a protest directly towards DAVID JIA after being allowed to walk for his graduation and to symbolize what the professor believed to be violations of Title IX. This occurred all while DAVID JIA and his family members were present at the graduation, substantially causing pain and emotional distress.

WHEREFORE, regarding Count III, DAVID JIA demands judgment and relief against the University, ANGELA CAMERON, KATHARINE WESTAWAY, and/or TONY LAKE as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

33

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## COUNT IV

### Violation of Title IX Hostile environment and/or discrimination

145.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

146.   DAVID JIA was discriminated based on his gender by the University during its flawed hearing process for the alleged incident with ANGELA CAMERON in April 11, 2014. (See Exhibit 25)

147.   Title IX of the Education Act Amendment of 1972, 20 U.S.C. 1681 *et seq.* ("Title IX") is enforceable through an implied right of action affording an aggrieved individual pecuniary damages and equitable relief.

148.   The University receives federal funding in various manners including, but not limited to, student loans given to students either directly by the federal government, or by the University with funds furnished by the federal government.

149.   The University, in the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, and related claims made in connection to sexual misconduct, creates an environment in which a male accused is so fundamentally denied due process as to be virtually assured of a finding of guilt.  Such a biased and one-sided process deprives male students of educational opportunities on the basis of gender.

150.    The University had clear evidence that both parties consumed alcohol to the point of intoxication. Per the University's policy, on its face, neither individual was capable of providing consent. Both students, by the University's policy, were "sexually assaulted" but it is only DAVID JIA, because he is a male, that is punished.  In most cases of student sexual misconduct, it has been found that it is the female to bring accusations.

151.    The University has a violation called "retaliation" (Exhibit 8) so once DAVID JIA found out he was "sexually assaulted" as well that night he could have brought a complaint against ANGELA CAMERON but face potentially further punishment for "retaliation". This policy alone fundamentally discriminates male students from the very beginning and forces them into a situation where you can take a small punishment or face a much larger one whether innocent or not.

152.    Sexual assault through lack of consent is not a gender-specific violation; however, it is clear the University has enforced it as such and has lead to DAVID JIA being discriminated based on his gender, depriving him his education.

WHEREFORE, regarding Count IV, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

35

D. For punitive damages in an amount sufficient to deter University, ANGELA

CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future

conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred

in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and

statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and

Appropriate.

### Count V

#### Violation of Title IX Deliberate Indifference by University

153.    DAVID JIA hereby incorporates by reference the aforementioned allegations contained
        in this complaint as though fully set forth herein.

154.    The University's employees and/or agents, including, but not limited to, KATHARINE
        WESTAWAY, and TONY LAKE acted with deliberate indifference towards DAVID JIA
        because of his male gender.

155.    The University's employees, including, but not limited to, KATHARINE WESTAWAY,
        and TONY LAKE, received actual notice of the fact that the University's representatives:
        (a) violated DAVID JIA's rights under the University's student Handbook Procedures
        (exhibit 8), Title IX, and/or guidance promulgated by OCR; and/or (b) wrongly found

36

DAVID JIA violated University policies which the University adopted pursuant to federal laws and regulations related to Title IX.

156.   University employees and/or agents, including, but not limited to, KATHARINE WESTAWAY, and TONY LAKE, had the authority to institute corrective measures to remedy: (a) the University's violations of DAVID JIA's rights under the University's student Handbook Procedures (exhibit 8), Title IX, and/or guidance promulgated by OCR; and/or (b) the University's erroneous determination that DAVID JIA violated the University's policies which the University adopted pursuant to federal laws and regulations related to Title IX.

157.   University employees and/or agents, including, but not limited to, KATHARINE WESTAWAY, and TONY LAKE, exhibited deliberate indifference by refusing to remedy: (a) the University's violations of DAVID JIA's rights under the University's student Handbook Procedures (exhibit 8), Title IX, and/or guidance promulgated by OCR; and/or (b) the University's erroneous determination that DAVID JIA violated University policies which the University adopted pursuant to federal laws and regulations related to Title IX.

158.   Upon information and belief, the University possesses communications evidencing its employees and/or agents' gender based deliberate indifference towards DAVID JIA and/or other similarly situated male students.

159.   The University's deliberate indifference caused DAVID JIA economic and non-economic damages in an amount to be determined at trial.

37

WHEREFORE, regarding Count V, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## Count VI

### Violation of Title IX Erroneous Outcome

160.    DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

161.    By suspending DAVID JIA, the University violated its own Student Handbook Procedures, Title IX, and/or guidance promulgated by OCR. 

162.    University employees, including, but not limited to, KATHARINE WESTAWAY, and TONY LAKE, received actual notice of the fact that University representatives: (a) violated DAVID JIA's rights under the University Student Handbook Procedures, Title IX, and/or guidance promulgated by OCR; and/or (b) wrongly found DAVID JIA's violated University Student Handbook Procedure which University adopted pursuant to federal laws and regulations related to Title IX. 

163.    University employees and/or agents, including, but not limited to, KATHARINE WESTAWAY, and TONY LAKE, had the authority to institute corrective measures to remedy: (a) University's violations of DAVID JIA's rights under, University's Student Handbook Procedure, Title IX, and/or guidance promulgated by OCR; and/or (b) University's erroneous determination that DAVID JIA violated University's Student Handbook Procedure which University adopted pursuant to federal laws and regulations related to Title IX.

164.    University employees and/or agents, including, but not limited to, KATHARINE WESTAWAY, and TONY LAKE, exhibited deliberate indifference by refusing to remedy: (a) University's violations of DAVID JIA's rights under University's Student Handbook Procedure, Title IX, and/or guidance promulgated by OCR; and/or (b) University's erroneous determination that DAVID JIA violated University's Student

Handbook Procedure which University adopted pursuant to federal laws and regulations related to Title IX.

165.   Upon information and belief, University possesses communications evidencing University's deliberate indifference in imposing unlawful discipline on DAVID JIA on the basis of his gender.

166.   University's wrongful discipline of DAVID JIA caused DAVID JIA economic and non-economic damages in an amount to be determined at trial.

WHEREFORE, regarding Count VI, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

40

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## Count VII

### Negligent Supervision

167.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

168.   Pursuant to either the University's Student Handbook Procedures, and/or TONY LAKE's contract, University created a contractual relationship with TONY LAKE which included, but was not limited to, obligating TONY LAKE to investigate and/or adjudicate ANGELA CAMERON'S allegations against DAVID JIA pursuant to University's Policies.

169.   As detailed above, TONY LAKE acted unlawfully and/or incompetently with regard to his obligation to investigate and/or adjudicate ANGELA CAMERON'S allegations against DAVID JIA pursuant to University's Policies.

170.   As detailed above, DAVID JIA put University on actual or constructive notice of TONY LAKE's unlawful and/or incompetent actions.

171.   Pursuant to the University's Student Handbook Procedures, and/or KATHARINE WESTAWAY's contract, University created a contractual relationship with KATHARINE WESTAWAY which included, but was not limited to, obligating

41

Katharine to respect DAVID JIA's right to privacy and his right to be in a positive learning environment, she also violated DAVID JIA's right to a fair trial.

172.    As detailed above, Katharine acted unlawfully and/or incompetently with regard to her obligation to respect DAVID JIA's privacy, by speaking publicly and bringing about false accusations of rape.

173.    As detailed above, Katharine acted unlawfully and/or incompetently with regard to her obligation to respect DAVID JIA's ability to engage in a positive learning environment. By posting false accusations Katharine caused other students to create a very hostile environment for DAVID JIA to be in.

174.    As detailed above, DAVID JIA put University on actual or constructive notice of TONY LAKE's and Katharine's unlawful and/or incompetent actions.

175.    As detailed above, TONY LAKE and KATHARINE WESTAWAY' unlawful and/or incompetent acts and/or omissions caused DAVID JIA irreparable damages

176.    As detailed above, University's negligence in hiring, retaining, training, and/or supervising of TONY LAKE and KATHARINE WESTAWAY caused DAVID JIA irreparable damages.

WHEREFORE, regarding Count VII, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all

42

information related to his interactions with ANGELA CAMERON;

      C. Judgment for attorneys' fees, pursuant any applicable statute;

      D. For punitive damages in an amount sufficient to deter University, ANGELA

CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future

conduct but in no event less than $100,000;

      E. Judgment for all other reasonable and customary costs and expenses that were incurred

in pursuit of this action;

      F. Pre-judgment interest and post judgment interest as may be permitted by law and

statute; and/or

      G. Such other and further relief as this court may deem just, proper, equitable, and

Appropriate.

## COUNT VIII

### Florida's Deceptive and Unfair Trade Practices Act

177.    DAVID JIA hereby incorporates by reference the aforementioned allegations contained
       in this complaint as though fully set forth herein.

178.    At all times material hereto, the University offered for sale to DAVID JIA, and the
       consumer public, educational services.

179.    In connection with the sale of its educational services and collection of tuition, fees and
       cost related thereto, the University committed various deceptive and unfair acts and
       practices, in violation of Florida's Deceptive and Unfair Trade Practices Act, including

but not limited to (1) representing, warranting and guaranteeing in writing that the University trained its employees and agents in the proper and unbiased investigation and adjudication of complaints of sexual misconduct, when in fact it had not; (2) representing that DAVID JIA would receive a fair and impartial hearing in connection with allegations of sexual misconduct, when he would not; and (3) Misrepresenting UM's compliance with Title IX.

180. DAVID JIA relied upon the various warranties and misrepresentations made by the University to enter in agreement to enroll and make payment to the institution.

181. DAVID JIA suffered actual damages including, but not limited to, having his school record improperly include a conviction and/or finding of guilt of sexual misconduct based upon unfounded charges marring his ability to enroll in another college or university of similar stature as the University. Stigmatizing him with a finding of guilt for an act he did not commit, monetary losses, and suspension from school for one (1) full semester.

182. Furthermore, once allowed back on campus, DAVID JIA was harassed by students, ANGELA CAMERON, and the University professor, KATHARINE WESTAWAY, directly or indirectly, personally and via Internet forums and news media.

183. DAVID JIA, had charges brought against him by ANGELA CAMERON in 2015 of Battery on two separate occasions (April 6, 2015 and April 9 2015) that were found to be false after a police investigation found the injuries ANGELA CAMERON sustained to be self-inflicted and footage from the University surveillance cameras that supported DAVID JIA's statement that he was not in town at the time the alleged incident occurred.

184. ANGELA CAMERON also was successful in getting an injunction, through the state court system, which banned DAVID JIA from being on campus but was later dropped.

185. The only purpose of the two false charges of battery brought by ANGELA CAMERON, along with the allegations of sexual assault, and the court order injunction against DAVID JIA, only served to cause him additional pain and emotional stress.

186. In addition to the false claims being brought by ANGELA CAMERON against DAVID JIA, the University professor, KATHARINE WESTAWAY, organized a student rally based on the allegations brought forth by ANGELA CAMERON. The rally was to encourage the University students involved to obtain signatures to petition the school to get DAVID JIA expelled before he graduated.  (See exhibit the petition has over 5,000 signatures).

187. Finally, the University professor, KATHARINE WESTAWAY also organized a silent protest during DAVID JIA's graduation ceremony, where graduating students wore the symbol (IX) in red tape on their caps.  This was a protest directly towards DAVID JIA after being allowed to walk for his graduation and to symbolize what the professor believed to be violations of Title IX. This occurred all while DAVID JIA and his family members were present at the graduation, substantially causing pain and emotional distress.

WHEREFORE, regarding Count VIII, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by

45

Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## COUNT IX

### Intentional Infliction of Emotional Distress

188.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

189.   Instead, maybe argue the following: Florida law provides an intentional infliction of severe emotional distress cause of action where a company abuses (1) its power; (2) position of trust; or (3) fiduciary duty for financial gain by causing fear and emotional distress in others.

190.    In *Dominguez* the 3rd District Court of Appeal held that a $\pi$ stated a cause of action for

IIED against an insurance company where an insurance agent went to the home of an

insured and falsely represented that the insured's previous optical disability was gone;

that he was no longer totally disabled and therefore no longer covered by the insurance

policy; that the policy was no longer in force…he was no longer entitled to receive

benefits under the policy… the $\pi$ alleged that the insurance agent knew the

representations were false and made them with the intent to get him to surrender the

subject policy. The court held "the foregoing acts were all in violation of their fiduciary

relationship and duty of good faith and in an effort to use their superior knowledge, skill,

and position to take advantage of this debilitated $\pi$.

191.    In this case, TONY LAKEs, acting as an agent of the University abused his power of

authority while conducting the investigation of ANGELA CAMERON's claims. TONY

LAKE failed to properly inform DAVID JIA of his rights and available opportunities to

rebut these allegations. TONY LAKE failed to conduct an unbiased investigation, allow

Jia to bring in testimony of his witnesses,…etc. all of which would make so he (1) knew

or should've known that emotional distress would likely result; (2) the conduct was

outrageous and is to be regarded as odious and utterly intolerable in a civilized

community; (3) the conduct caused the emotional distress; and (4) the emotional distress

was severe. *Dominguez v. Equitable Life Assur. Soc. Of U.S., 438 So. 2d 58, 59 (Fla. 3d*

*DCA 1983).*

192.    The University professor, KATHARINE WESTAWAY, acting as an agent of the

University, abused her position of power by holding rallies, being the ignition that set

47

forth for numerous protests against Jia, advocating false claims after the claims were found to be false. Assembling the student body population with demonstrations on school campus, calling for student and all people alike to sign a petition against the school to strip DAVID JIA of his right to education, to strip the afforded presumption "innocent until proven guilty", making statements to the student body, faculty, staff and numerous media outlets convicting and labeling Jia as sexual predator.

193.    The University's conduct and behavior were outrageous, careless and reckless by, inter alia, conducting a flawed and damaging investigation, refusing to adhere to, or even consider, the information, guidance or investigation of trained professionals in the local police department who did not find there to be probable cause. And most damaging, for fundamentally ignoring the University's own policies and procedures as stated in the Handbook, making for an unfounded decision by the University that permanently harmed and will continue to harm DAVID JIA.

194.    As a direct and proximate result of the University's actions, DAVID JIA has been publicly humiliated by the University, its staff, its students, and ANGELA CAMERON. The actions allowed by the University has permanently tainted his name in the community and the Internet. felt ashamed, emotionally distraught and violated.

195.    As a result of the University's actions, DAVID JIA was forced to spend countless hours throughout 2014 and 2015 being investigated by the Coral Gables Police Department, the University's Police Department and the University itself. DAVID JIA took it upon himself to collect all the evidence needed in an effort to prove his innocence, he arranged meetings with any and all witnesses who had first-hand knowledge, as well as, relevant

knowledge in regards to the allegations and he personally met with representatives from the media in an effort to clear up name.

196.     The negligent handling of DAVID JIA's case by the University and the behavior allowed by the University professor, KATHARINE WESTAWAY, has sufficiently demonstrated that the University knowingly, purposely, and/or intentionally inflicted severe emotional distress to DAVID JIA.

197.     The University's actions were a direct and proximate cause of DAVID JIA's severe emotional distress.

198.     DAVID JIA has incurred, and will continue to incur, significant damage, as a direct result of the University's  intentional acts to cause him severe emotional distress.

WHEREFORE, regarding Count IX, DAVID JIA demands judgment and relief against the University, ANGELA CAMERON, KATHARINE WESTAWAY, and/or TONY LAKE as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

49

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## Count X

### Negligent Infliction of Emotional Distress

199.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

200.   ANGELA CAMERON owed DAVID JIA a duty to not engage in the conduct detailed above.

201.   University owed DAVID JIA a duty to not engage in the conduct in the detailed above.

202.   ANGELA CAMERON breached the duties she owed DAVID JIA to not engage in the conduct detailed above and this breach was the proximate cause of DAVID JIA's damages which include, but were not limited to, severe emotional distress which caused, among other things, DAVID JIA to seek assistance from healthcare professionals.

203.   University breached the duties it owed DAVID JIA to not engage in the conduct detailed above and this breach was the proximate cause of DAVID JIA's damages which include, but were not limited to, severe emotional distress which caused, among other things, DAVID JIA to seek assistance from healthcare professionals.

50

204.    University and/or ANGELA CAMERON's aforementioned conduct caused DAVID JIA
        to be damaged in an amount to be determined at trial.

WHEREFORE, regarding Count X, DAVID JIA demands judgment and relief against the

University, ANGELA CAMERON, KATHARINE WESTAWAY, and/or TONY LAKE as

follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to

compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by

Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all

information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA

CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future

conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred

in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and

statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and

Appropriate.

## COUNT XI

### Defamation Per Se

205.  DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

206.  The University, KATHARINE WESTAWAY, and ANGELA CAMERON each made false and defamatory public statements about DAVID JIA regarding his character and implicating him as guilty of committing an act of moral turpitude. (Exhibit 21)

207.  These statements include, but not limited to, allegations that DAVID JIA perpetrated a sexual assault on ANGELA CAMERON and was a danger to ANGELA CAMERON and the University community.

208.  The University, KATHARINE WESTAWAY, and ANGELA CAMERON had knowledge of, acted in reckless disregard as to, or acted negligent to the falsity of these statements and that a cloud of defamation would be placed over DAVID JIA in the community.

209.  The University, KATHARINE WESTAWAY, and ANGELA CAMERON's conduct was wanton, reckless, willful, malicious and oppressive, demonstrating reckless indifference to the rights and interest of DAVID JIA.

210.  Such statement cause DAVID JIA to suffer actual damages including, but not limited to, mental anguish, shame, humiliation, and monetary losses.

211.  ANGELA CAMERON knowingly acted with gross malic in retaliation against DAVID JIA by, included but not limited to , (1) alleging sexual assault in which the allegations were later determined to be "unfounded"; (2) bringing false charges of battery on two

different occasions to police, in which both times the allegations were found to be "unfounded"; (3) purposely inflicting injuries on her person to support her false battery claims, as found by an independent medical doctor; (4) obtaining a court ordered injunction using facts based on these same false claims, and; (5) stating false claims of battery and inconsistent recollections of the alleged sexual assault to countless news outlets and internet forms referring to DAVID JIA by name. Thus, ANGELA CAMERON's conduct, untruthfulness, and repeated false criminal allegations against DAVID JIA, clearly prove that she knowingly, purposely and intentionally were inflicted to cause emotional distress.

WHEREFORE, regarding Count XI, DAVID JIA demands judgment and relief against the University, KATHARINE WESTAWAY, and/or ANGELA CAMERON as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

53

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## COUNT XII

### Defamation Per Quod

212.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

213.   The University, KATHARINE WESTAWAY, under her capacity as an agent of the University, and ANGELA CAMERON each made false and defamatory public statements about DAVID JIA regarding his character and implicating him as guilty of committing an act of moral turpitude.

214.   These statements include, but not limited to, allegations that DAVID JIA perpetrated a sexual assault on ANGELA CAMERON and was a danger to ANGELA CAMERON and the University community.

215.   The University, KATHARINE WESTAWAY, and ANGELA CAMERON had knowledge of, acted in reckless disregard as to, or acted negligent to the falsity of these statements and that a cloud of defamation would be placed over DAVID JIA in the community.

216.   The University, KATHARINE WESTAWAY, and ANGELA CAMERON's conduct was wanton, reckless, willful, malicious and oppressive, demonstrating reckless indifference to the rights and interest of DAVID JIA.

217.    Such statement cause DAVID JIA to suffer actual damages including, but not limited to, mental anguish, shame, humiliation, and monetary losses.

WHEREFORE, regarding Count XII, DAVID JIA demands judgment and relief against the University, KATHARINE WESTAWAY, and/or ANGELA CAMERON as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## COUNT XIII

**Violation of the Equal Protection Clause of the 14th Amendment by a State Actor**

55

218.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

219.   The University, acting as an actor of the state, under color of law violating DAVID JIA's rights under the Fourteenth Amendment to the United States Constitution.

220.   The University has acted intentionally and with callous disregard for DAVID JIA's clearly established Constitutional Rights.

221.   The University receives appropriations from the state of Florida yearly. These appropriations are given to institutions private or public for adhering to Title IX. We must argue how there is sufficient facts in this case that creates a nexus between the private business and the state. Such as, federal funding, taxpayer contributions, zoning, whether the functions being provided are done so with the public funds and how in acting as a state actor resulted in the violation of the Equal Protection Clause as to gender discrimination. Rendell-Baker v. Kohn, 457 U.S. 830, 102 S. Ct. 2764 (1982).

222.   In a similar case where the DOE had to intervene, the DOE sent a letter and a resolution to the educational institution explaining the violations of the policy and the resolutions for the future. (Exhibit 22, 23)

223.   As a direct and proximate result of the University's violations of DAVID JIA's Constitutional rights, DAVID JIA has suffered severe and substantial damages including: diminished earnings capacity, loss of educational opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional distress, and other compensatory damages that will be determined at trial.

56

224.   Pursuant to 42 U.S.C. § 1983 the University is liable for DAVID JIA's damages

225.   Pursuant to 42 U.S.C. § 1988 DAVID JIA is entitled to attorney's fees incurred in bringing this action.

WHEREFORE, regarding Count XIII, DAVID JIA demands judgment and relief against the University as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## COUNT XIV

### Violation of the Due Process Clause under the 14th Amendment

226.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

227.   The University failed to afford DAVID JIA Due Process Rights in violation of the Fourteenth Amendment to the United States Constitution.

228.   Although the University is a private institution, it can be classified as a state actor because it meets the four prong test as established in the <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 102 S. Ct. 2764 (1982). Which examines whether a private actor is assumed a responsibility for an action that is typically undertaken by the government. Here we must look at the (1) receipt of the public funds, (2) the regulation by the state, (3) the performance of a public function, (4) the nature of the relation between the state and the school. In addition the "Dear Colleague Letter" from the Department of Education that forced Universities across the nation to establish a very low burden of proof for sexual assault cases which allowed the University to deprive DAVID JIA of his Due Process Rights.  The University also received a majority of its money from Federal student loans, in combination with the "Dear Colleague Letter" this is enough for the University to be a state actor as a substantial relationship exists as a state actor.

229.   The University failed to allow DAVID JIA the rights to challenge the evidence presented against him, failed to turn over exculpatory evidence prior to the disciplinary hearing, failed to inform him of his rights before every hearing, failed to allow council to be

present, failed to allow him a fair opportunity to defend the allegations, failed to allow him to present new evidence at a new hearing.

230.  The disciplinary review process established by the University is inherently flawed and in violation of DAVID JIA's rights and those similarly situated.

231.  The University denied DAVID JIA due process of law resulting in substantial damages to him to be determined at a trial of this matter.

WHEREFORE, regarding Count XIV, DAVID JIA demands judgment and relief against the University, KATHARINE WESTAWAY, and/or TONY LAKE as follows:

A. Damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to compensate DAVID JIA's past and future pecuniary and/or non-pecuniary damages caused by Defendants' conduct;

B. Order(s) requiring University expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

C. Judgment for attorneys' fees, pursuant any applicable statute;

D. For punitive damages in an amount sufficient to deter University, ANGELA CAMERON, KATHARINE WESTAWAY and/or TONY LAKE, from conducting similar future conduct but in no event less than $100,000;

E. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

F. Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

G. Such other and further relief as this court may deem just, proper, equitable, and Appropriate.

## Count XV

### Injunctive Relief

232.  DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

233.  Based on the facts articulated above, DAVID JIA is entitled to injunctive relief because the University's discipline of DAVID JIA is unlawful and violates DAVID JIA's rights under the University's Policies, federal, and/or state laws.

234.  The University's unlawful discipline of DAVID JIA will cause irreparable harm which is certain, great, actual and not theoretical. The University's unlawful discipline of DAVID JIA cannot be remedied by an award of monetary damages because of difficulty or uncertainty in proof or calculation.

235.  Based on the facts articulated above, DAVID JIA is entitled to injunctive relief which includes, but is not limited to an Order requiring the University to expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON. The granting of injunctive relief will cause no harm to the University because the University has no cognizable interest in its unlawful discipline of DAVID JIA.

236.  The granting of an injunctive relief will advance a significant and appreciable public interest by protecting members of the public – like DAVID JIA –from having their fundamental rights threatened by unlawful government action.

## Count XVI

### Vicarious Liability – Defendant KATHARINE WESTAWAY

237.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

238.   At all times material, the University employed KATHARINE WESTAWAY. KATHARINE WESTAWAY was under the University's direct supervision, employ, and control when she committed the wrongful and negligent acts described above. KATHARINE WESTAWAY engaged in this conduct while acting in the course and scope of her employment with the University.

239.   The University granted KATHARINE WESTAWAY authority to perform as an agent within the University. The University held KATHARINE WESTAWAY out to the community as a fit and competent agent of the University. KATHARINE WESTAWAY committed the acts alleged within the apparent authority arising from her agency. Said conduct was undertaken in the course and scope of KATHARINE WESTAWAY's employment with the University and/or ratified by the University.

240.   By using her position and the trust, power and authority of the position conferred on her, KATHARINE WESTAWAY purported to act and/or speak on behalf of the University when she committed the tortious acts alleged above.

241.   As a direct result of conduct described herein, David Jia has suffered the injuries and damages described herein.

### Count XVII

61

## Vicarious Liability – Defendant TONY LAKE

242.   DAVID JIA hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

243.   At all times material, the University employed TONY LAKE. TONY LAKE was under the University's direct supervision, employ, and control when she committed the wrongful and negligent acts described above. TONY LAKE engaged in this conduct while acting in the course and scope of his employment with the University.

244.   The University granted TONY LAKE authority to perform as an agent within the University. The University held TONY LAKE out to the community as a fit and competent agent of the University. TONY LAKE committed the acts alleged within the apparent authority arising from his agency. Said conduct was undertaken in the course and scope of TONY LAKE's employment with the University and/or ratified by the University.

245.   By using his position and the trust, power and authority of the position conferred on him, TONY LAKE purported to act and/or speak on behalf of the University when he committed the tortious acts alleged above.

246.   As a direct result of conduct described herein, DAVID JIA has suffered the injuries and damages described herein.

WHEREFORE, regarding Count XV DAVID JIA demands judgment and relief against University as follows:

A. Order(s) requiring the University to expunge DAVID JIA's official University files of all information related to his interactions with ANGELA CAMERON;

B. Judgment for attorneys' fees, pursuant to any applicable statute;

C. Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

D. Pre-judgment interest as may be permitted by law and statute; and/or

E. Such other and further relief as this court may deem just, proper, equitable, and appropriate.

Dated this 3rd day of January 2017.

Respectfully Submitted,

/s/ Lonnie B. Richardson

_____
Lonnie B. Richardson
Lonnie B. Richardson, P.A.
Attorney for the Plaintiff
Florida Bar No: 564516
690 Lincoln Road, Suite 204
Miami Beach, Florida 33139
Tel: 786-603-1323
Fax: 305-428-9539
Email: OfficelonnieRichardson@gmail.com

## CERTIFICATE OF COMPLIANCE WITH FONT REQUIREMENTS

I HEREBY CERTIFY that this brief complies with the font requirements of Florida Rule of Appellate Procedure 9.210(a).

Respectfully Submitted,

/s/ Lonnie B.  Richardson

_____

Lonnie B. Richardson
Lonnie B. Richardson, P.A.
Attorney for the Plaintiff
Florida Bar No: 564516
690 Lincoln Road, Suite 204
Miami Beach, Florida 33139
Tel: 786-603-1323
Fax: 305-428-9539
Email: OfficelonnieRichardson@gmail.com