```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                      CASE NO. 17-CV-20018-DPG
 3

 4   DAVID JIA,                          Miami, Florida

 5        Plaintiff,                     January 18, 2018

 6           vs.                         9:30 a.m. to 11:10 a.m.

 7   UNIVERSITY OF MIAMI, et al          Pages 1 to 66

 8        Defendants.
                                  _____
 9   _____

10                         MOTION HEARING
                  BEFORE THE HONORABLE DARRIN P. GAYLES
11                  UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13
     FOR THE PLAINTIFF:          LONNIE B. RICHARDSON, ESQ.
14                               LONNIE B. RICHARDSON, P.A.
                                 175 SW 7 Street
15                               Suite 1912
                                 Miami, Florida 33130
16

17   FOR UNIVERSITY OF MIAMI
     AND WILLIAM ANTHONY LAKE:
18                               ERIC D. ISICOFF, ESQ.
                                 CHRISTOPHER M. YANNUZZI, ESQ.
19                               ISICOFF, RAGATZ & KOENIGSBERG
                                 601 Brickell Key Drive, Suite 750
20                               Miami, Florida 33131

21
     FOR KATHARINE WESTAWAY:
22                               DWON I. HUGGINS, ESQ.
                                 P.O. Box 821802
23                               South Florida, Florida  33082

24
     FOR ANGELA CAMERON:         ANGELA CAMERON, Pro Se.
25
```

1    STENOGRAPHICALLY REPORTED BY:

2                          PATRICIA DIAZ, FCRR, RPR, FPR
                          Official Court Reporter
3                          United States District Court
                          400 North Miami Avenue
4                          11th Floor
                          Miami, Florida 33128
5                          (305) 523-5178

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 (Call to the order of the Court.)

 2            THE COURT:  Please be seated.

 3            COURTROOM DEPUTY:  Calling JIA versus University of

 4   Miami, et al., case number 17-CV-20018.  Counsel, please make

 5   your appearance.

 6            THE COURT:  Let's start with Mr. Richardson.  He is the

 7   plaintiff.

 8            MR. RICHARDSON:  Yes, sir.  Lonnie Richardson on behalf

 9   of David Jia.

10            THE COURT:  All right.

11            MR. ISICOFF:  Good morning, Your Honor, Eric Isicoff

12   and Christopher Yannuzzi on behalf of defendants University of

13   Miami and Anthony Lake.

14            THE COURT:  Good morning.

15            MS. CAMERON:  Good morning, Your Honor, Angela Cameron

16   and I'm pro se.

17            THE COURT:  Okay.  Good morning.

18            MS. HUGGINS:  Good morning, Dwon Huggins on behalf of

19   defendant Katharine Westaway.

20            THE COURT:  All right.  Good morning.

21            MR. RICHARDSON:  Your Honor, I'd like to say I'm sorry.

22   I have had bronchitis for a few weeks.  It's a good thing we

23   are in different tables.  I may be coughing a lot, so I

24   apologize.  I brought some cough drops and water.

25            THE COURT:  Okay.  That's fine.
```

1          We are here on the motions to dismiss.  Why don't I

2    hear from an attorney from each defendant and then I will hear

3    from Mr. Richardson.

4          MR. ISICOFF:  All right.  Thank you, Your Honor.

5          Should I proceed from here or up at the podium?

6          THE COURT:  Wherever you prefer.

7          MR. ISICOFF:  I think I will step up there because

8    Mr. Richardson is not feeling well and it may be a little

9    distracting.

10          I do feel bad for the man.  The whole world is sick now

11   it seems.

12          THE COURT:  It seems.

13          MR. ISICOFF:  Good morning, Your Honor, again, Eric

14   Isicoff on behalf of the defendants University of Miami and

15   Anthony Lake.  We have moved to dismiss, essentially, the

16   entire complaint.  We have directed our efforts not so much at

17   the breach of contract claim, and I will circle back to that

18   very briefly because if there is any claim that's been

19   potentially stated it will be that claim, although we think

20   deficient as well.

21          But with respect to the three Title 9 claims, the

22   defamation claims and the invasion of privacy claim, we think

23   it's very, very clear that claims have not been stated, cannot

24   be stated and those claims should be dismissed with prejudice.

25          Starting very briefly with the Title 9 claims, the law

```
 1    is very fairly well developed at this point, particularly in

 2    this circuit.  It is very clear that the Supreme Court

 3    standards that have been set forth in Iqbal and Twombly apply

 4    to such pleadings to determine the sufficiency of the

 5    allegations made.  And as those cases say, "A complaint must

 6    contain sufficient factual matter accepted as true to state a

 7    claim for relief that is plausible on its face."

 8            "It is not enough to ask the Court to make inferences.

 9    It is not enough to allege legal conclusions.  It's very clear,

10    including in Title 9 cases, particularly applicable here where

11    a Title 9 claim is based on student-on-student alleged sexual

12    harassment, the harassment must be so severe, pervasive and

13    objectively offensive that it denied its victim the equal

14    access to education that Title IX is designed to protect."

15    That's Sarver versus Jackson, Eleventh Circuit Court of

16    Appeals, 2009.  And there are other cases all of which have

17    been cited in our brief.

18            The Courts have been very clear that merely parroting

19    the words, deliberate indifference, for example, is simply

20    insufficient.  In none of the three Title IX claims does the

21    plaintiff allege that the alleged discrimination is on the

22    basis of sex.

23            Again, there the courts have been very, very clear.

24    When there are multiple explanations for an alleged action

25    that's been taken in an educational context, it is proper to
```

1   dismiss where it has not been expressly alleged and then later,

2   if alleged, proven that it's on the basis of sex.

3   Irregularities in a process, some procedural defect, those are

4   not automatically inferred to be on the basis of sex.

5        In fact, the courts have spoken to that in the Eleventh

6   Circuit and other courts in this district recently.  For

7   example, Your Honor, in the Robin Rosenberg, Judge Robin

8   Rosenberg decision that followed the Doe versus Columbia case,

9   which was out of the Second Circuit.  Of course, Judge

10  Rosenberg being in this court, she stated in Doe versus Lynn

11  University, Inc., "but the fact of procedural missteps that

12  happened to disadvantage a male student in favor of a female

13  student do not, standing alone, support the plausible inference

14  that those steps occurred because of the accused student's

15  gender."

16        Further, as this Court knows in the lengthy amended

17  complaint that's at issue now, there was a lot of discussion

18  about the pressure that's on universities, the pressure that's

19  on the courts from the Office of Civil Rights and where these

20  Title IX investigations need to be done thoroughly and on and

21  on.  In a case where those same arguments and allegations were

22  made, which, of course, are not fact specific and don't help

23  the complaint in this case, the Court held there, "The Court

24  acknowledges the difficulties of plausibly pleading gender bias

25  absent smoking-gun evidence like gender bias statements, but

1    given Twombly and Iqbal, plaintiff's claim must fail absent

2    factual allegations sufficient to support the plausible

3    inference that he was discriminated against on the basis of his

4    gender."

5          As all this relates to this case -- and I will move on

6    in a moment to what I think are even more clearly dismissible

7    claims -- in this case what we have is your classic scenario.

8    A student comes to the university and makes a very serious

9    allegation of sexual assault.  The university follows its

10   rules.  We immediately investigate.  We bring in the parties.

11   We interview people.  There is a disciplinary hearing and there

12   is an outcome.  All of that happens in the context of our

13   published clear longstanding administrative process and it is

14   not a criminal court.  The criminal rules do not apply case

15   after case after case in the State of Florida and around the

16   country.  That is very clear.

17         THE COURT:  My reading of the complaint, it indicates

18   the university didn't follow its procedures.

19         MR. ISICOFF:  Your Honor, if that's true, which

20   respectfully that's not the case, but if that's true, then

21   that's the claim that would be resolved on a breach of contract

22   claim which has been brought.  That's Count 1.

23         So, if, in fact, under our handbook, which is a

24   contract between the student and the university -- there is

25   lots and lots of cases on that point -- if we did not follow

1     our rules with respect to the manner in which the disciplinary

2     process was handled, then that could be challenged

3     theoretically on that breach of contract claim, and our

4     thinking was that we would come back on summary judgment on

5     that claim because respectfully we disagree that we departed

6     from our rules, and if we did, it was harmless error.  Again,

7     cases in Florida speak to that.

8          THE COURT:  If it's properly alleged, presumably, if

9     the failure to comply with the procedures was due to the

10    plaintiff's gender, that would probably be enough to get past

11    the motion to dismiss.

12         MR. ISICOFF:  If properly alleged, which it is not, I

13    would agree with the Court.  If it was alleged appropriately

14    that we departed from our procedure and the reason for that was

15    because of gender-based discrimination, I would agree with the

16    Court.  It's not what is here but I agree.

17         THE COURT:  Okay.

18         MR. ISICOFF:  So, the courts in Florida have made very

19    clear in the context of student disciplinary matters that what

20    due process means is notice and an opportunity to be heard.

21    That's what is required.  Those are the elements of due process

22    in student disciplinary hearings in the State of Florida, and I

23    think pretty much most, if not all, states in the country.

24         There is no question we provided notice of the charge.

25    We gave a full administrative process and review and the

 1    student is unhappy with the outcome.  As we know, he graduated.

 2    We know that there was a court-issued restraining order that

 3    had nothing to do with the University of Miami.  We know that

 4    we allowed him to walk in this graduation notwithstanding

 5    protests and all these other things.

 6          So, in terms of Title IX, we have done everything that

 7    we were supposed to do.  We investigated.  We, essentially,

 8    adjudicated the claim, and then when they came back later with

 9    further allegations which were determined to be unfounded, they

10    were rejected and no consequences resulted.  So, because of the

11    fact that they have not alleged that these irregularities, this

12    improper outcome, this deliberate indifference, which has not

13    been appropriately alleged, there is just simply no facts to

14    support it, are in no sense alleged to be based on sex.  The

15    Title IX claim simply cannot stand.  The law in the Eleventh

16    Circuit and in this district is very clear on that.  This Court

17    isn't required to and shouldn't make inferences.

18          Now, with respect to the defamation claims, we believe

19    that that is maybe even more clear.  In a defamation claim, the

20    only liability that's being alleged against the University of

21    Miami is with respect to a respondeat superior.  We are being

22    alleged to be responsible for the statements made by Katharine

23    Westaway and Anthony Lake.

24          Respectfully, Your Honor, there are no allegations that

25    would meet the test for being defamatory in this case.  There

1   are strong first amendment implications here.  There are

2   numerous statements that are time barred on their face because

3   these various statements that are alleged to have been made are

4   dated in the actual amended complaint.  Any alleged statement

5   that predates January 3rd of 2015, when this complaint was

6   filed, would be time barred and that's, I think, indisputable

7   and it's on the face of the complaint so the Court should

8   properly consider that.

9          With respect to those alleged statements that have been

10  made, they are -- we would respectfully submit they are not

11  defamatory and the Court as the gatekeeper I think has the

12  authority and the duty to look at these statements and

13  determine that these are comments that are being made.  These

14  are made in a student newspaper.  They were being made to the

15  press, and there is nothing defamatory about them.

16         However, as to the University of Miami, there can be no

17  liability on a defamation claim because their own pleadings,

18  the plaintiff's own pleading undermines any such claim.  They

19  have alleged that the University of Miami, right or wrong, true

20  or false, doesn't matter, it's what they've alleged that we

21  fired Katharine Westaway because of her conduct in this matter.

22  That's what they alleged, because of the things she did and

23  said, we fired her.  That is the antithesis that what she was

24  doing was to serve the interest of her employer or that it was

25  in the course and scope or something that we encouraged.

1    Our strong position is very clear.  One, we don't think

2  that anything that Katharine Westaway said or published was

3  defamatory, but even if it were, the University of Miami is not

4  liable because they have alleged that these statements were

5  made maliciously, falsely, that she was fired because of it.

6  That is counter to the clear well-established, well-settled law

7  that we can be responsible for her actions.  She is acting on

8  her own if, in fact, all those things they allege were true.

9    With respect to Anthony Lake, sticking with defamation

10  for a moment, Mr. Lake said nothing.  I would direct the Court

11  to -- front to back of this amended complaint, there is not a

12  single allegation that would constitute defamatory conduct on

13  his part, and the only statements that are attributed to him

14  were made to a student newspaper where Mr. Jia wasn't even

15  mentioned in the story.  The sum and substance of his comment

16  was, "these are emotional matters," without even referencing

17  the plaintiffs, "these student cases are emotional and you have

18  to step back and detach yourself from them."  That's what he

19  said.  Maybe more importantly that statement was alleged to

20  have occurred in December of 2014 and that claim was time

21  barred as a result of the actual filing date of this complaint.

22    THE COURT:  Does the plaintiff or does the person

23  making the statement have to use or identify the subject by

24  name?  I know that's something you pointed out in the pleading.

25  Mr. Richardson cited a case that stands for the proposition

```
 1   that -- I am paraphrasing, but if it's clear who the person was

 2   talking about, then it doesn't -- it's not dispositive that an

 3   actual name wasn't used.

 4        MR. ISICOFF:  Your Honor, I agree.  I agree that it is

 5   not a black and white rule that if you don't mention the person

 6   by name you are off the hook because there are many instances

 7   where it's clear who you are talking about where it's the only

 8   possible event or person or thing.  There is no question that

 9   that can be the case.  I don't dispute that.

10        In this case, though, looking at the alleged published

11   student newspaper article and how Mr. Lake is quoted, there is

12   nothing in there that is defamatory by any reasonable standard

13   and, more importantly, the comment that's attributed to him is

14   outside of the period where you could actually bring a claim.

15   And, again, with respect to Mr. Lake, while he is an agent of

16   the university and was acting in the course and scope of his

17   employment, there is no defamatory statement, period, in this

18   record, regardless of whether Mr. Jia was named or not named in

19   the article.  We point it out simply to show that there

20   certainly was no animus.

21        He wasn't mentioned in the article.  There is nothing

22   there defamatory as it relates to Mr. Lake.  Therefore, there

23   would be no claim against him and as a result of that, there

24   can be no claim against the University of Miami, which then

25   takes me to the invasion of privacy counts.
```

 1           A very similar argument applies there and it's sort of

 2    the other side of the coin.  This plaintiff cannot have it both

 3    ways.  The plaintiff is alleging throughout the complaint that

 4    the alleged statements are malicious, defamatory, false,

 5    mean-spirited.  Those are the words that are used throughout

 6    this amended complaint.  An invasion of privacy claim, as a

 7    matter of law, is a claim where a party is publishing, publicly

 8    disclosing private facts that are true.

 9           So, when -- they are alleging all throughout this

10    complaint that all of these alleged things that were allegedly

11    said into the public, put into the media, whatever the case may

12    be, as a matter of law there is no possible way that these

13    could be actionable claims because their own pleadings say that

14    these were -- in other words, you can't say that this is a

15    defamatory, false, malicious statement and at the same time say

16    you're publishing a true fact about someone.  They are mutually

17    inconsistent.

18           And the allegations -- it's not even a matter of

19    inconsistent pleading or theories.  The actual facts that they

20    are alleging would undermine any claim of invasion of privacy.

21    There is no allegation here that there were private facts that

22    were truthful that were being disclosed into the public.

23    That's not what they are alleging.

24           What they are alleging, in essence, are defamation

25    claims and they are trying to recast them, for some reason,

1    additionally maybe to have more counts and to expand the

2    possibility that some of this case will survive.  But they are

3    taking these clear allegations that say that they are false,

4    defamatory, malicious and at the same time saying that they are

5    true private facts that are being disclosed.  They are mutually

6    inconsistent.  There are no separate facts in this amended

7    complaint that standing alone fall outside of this gloss that

8    they have put over all the allegations that they are false,

9    malicious, mean-spirited, untrue, etcetera.

10          Your Honor, I also want to point out that there is no

11    rule about continuing liability.  The liability arises on

12    publication because some mention of that was made in the

13    response.  The law is pretty clear that liability arises upon

14    publication, and there is no rule where you can keep expanding

15    and extending the date by which a claim must be brought.

16    Particularly in defamation the Eleventh Circuit has rejected

17    the continuing tort doctrine.

18          So, looking at this complaint in the light most

19    favorable to this plaintiff, there is a lack of specificity of

20    any allegations that would rise to the level of defamatory

21    comments, period.  They are just not there.

22          More importantly, as it relates to the University of

23    Miami, their own allegations would undermine any sort of

24    respondeat superior liability, particularly with respect to

25    Ms. Westaway where they are alleging she was fired because of

1    this conduct, and it was mean-spirited, malicious, etcetera.

2          Mr. Lake, slightly different situation.  He is quoted

3    in a student newspaper.  That quoted material is not defamatory

4    by any reasonable standard, and the Court is the gatekeeper for

5    that, but maybe more important, even that quoted material is

6    outside of the period of time for which there would be an

7    actionable claim with respect to the statute of limitation.

8          Respectfully, the Title IX claims are not adequately

9    plead.  They miss the boat on tying whatever irregularities

10   there may be to a sex-based discrimination and that's an

11   essential element on the claim on all Title IX counts and it's

12   simply not there.  Inference won't do.

13         Defamation, there are no defamatory comments in this

14   record in these allegations on the pleadings.  More

15   importantly, those that are even close are time barred.  The

16   university is not responsible on the theory of respondeat

17   superior because these would be comments that were made outside

18   the course and scope of employment and not to benefit the

19   University of Miami.

20         With respect to Mr. Lake, there is absolutely no

21   defamatory comments with respect to him, and any comment is

22   outside the limitations period.

23         And with respect to invasion of privacy, the legal

24   standard is clear.  They don't meet it.  They had to be

25   personal true private facts that nobody knows about that they

```
 1    went and published and put out into the world.  That's not --
 2    they are just taking the same allegations.  There is no
 3    difference.  If you look, they are not separating them out.
 4    They are the same untrue, malicious, false statements and they
 5    are claiming it as an invasion of privacy which it plainly and
 6    clearly is not.
 7            So for those reasons, Your Honor, we did move against
 8    generally Count 1, but I recognize that, you know, in a liberal
 9    construction of the amended complaint they have alleged the
10    basic fundamentals of a breach of contract claim, and we think
11    that's more appropriate for summary judgment.  But as to every
12    other count in this complaint, we think that they are
13    deficient.  We think that we are now at an amended complaint
14    where this Court has made very clear that dismissal is
15    appropriate with prejudice.  And I think just yesterday there
16    was another decision that came out of the Eleventh Circuit
17    called the -- it's Cita, C-I-T-A.  It came down yesterday.
18            That decision is another case out of the Eleventh
19    Circuit that says the following:  "When we are in this exact
20    situation it does not save a plaintiff to tuck into a response
21    to a motion to dismiss a request for leave to amend.  If there
22    is no motion to amend pending at this time, at this moment, it
23    is not an abusive discretion to dismiss the complaint when the
24    request to amend and fix these problems is tucked into a
25    response to a motion to dismiss."  Exactly our scenario.  We
```

1    are on an amended complaint already and that Cita decision just

2    came out of the Eleventh Circuit I think it was yesterday, or

3    else we would have put it in our reply.

4            THE COURT:  Okay.

5            MR. ISICOFF:  So, Your Honor, for those reasons we

6    would ask the Court to dismiss all counts other than Count 1.

7            THE COURT:  All right.

8            Ms. Huggins, why don't I hear from you next?

9            MR. ISICOFF:  Oh, Your Honor, if I may, I didn't

10   mention intentional infliction of emotional distress.  May I

11   have two minutes?

12           THE COURT:  Sure.

13           MR. ISICOFF:  I apologize for that.  I overlooked it.

14           THE COURT:  Just so I am clear, UM isn't named in

15   Count 10 and neither is --

16           MR. ISICOFF:  It is not, I don't believe.

17           THE COURT:  You are not moving as to Count 10.  Right?

18           MR. ISICOFF:  That is correct.  Count 10 is only as to

19   Ms. Westaway and Ms. Cameron, so we are not moving as to

20   Count 10.  That is correct.

21           Now, Your Honor, with respect to intentional infliction

22   of emotional distress, again, another scenario where the courts

23   of Florida have been very, very clear.

24           Again, this is one of those counts that we think is

25   absolutely on its face insufficient and cannot be fixed.

```
 1   Florida law states that the conduct alleged must be so
 2   outrageous in character and so extreme in degree as to go
 3   beyond all possible bounds of decency as to be regarded as
 4   atrocious and utterly intolerable in a civilized community.
 5   That's Walton versus Johnson.  That's a Middle District of
 6   Florida case.  There are numerous cases we have cited in our
 7   papers.
 8           The courts of Florida have repeatedly rejected claims
 9   of intentional infliction of emotional distress in sexual
10   harassment cases.  They are often brought and always rejected
11   because they simply don't rise to the level.  I am not saying
12   it couldn't happen.  There wouldn't be such a case ever in the
13   history of the world, but typically the type of allegations
14   that are required to meet the very high standards in Florida
15   for intentional infliction of emotional distress is never met
16   in a sexual harassment because even those horrible allegations
17   -- and I have been associated with many, many cases where the
18   most outrageous things are done and alleged to have been done,
19   and those cases don't ever qualify at that high standard and
20   this case doesn't even come close.
21           We cited cases to the Court with examples of the kinds
22   of cases where people are alleged to have done horrible things.
23   They have alleged to be in affairs within their church and all
24   these false scurrilous allegations, not enough, rejected as
25   meeting the high standard.
```

```
 1              With respect to that claim, again, that's another one

 2     where the Court is the gatekeeper.  The law is very well

 3     developed on that legal theory in Florida.  This case doesn't

 4     even come close to meeting that very high standard.  There

 5     would be no reason to allow amendments.  The facts are what

 6     they are.  Taking them as true, giving them every benefit of

 7     the doubt, looking at the light most favorable to the

 8     plaintiff, there is no way that standard is met or ever could

 9     be, and for that reason we would move to dismiss with prejudice

10     that count as well because that standard hasn't and cannot be

11     met on the facts of this case as alleged.

12              THE COURT:  All right.  Thank you.

13              MS. HUGGINS:  Your Honor, do you mind if I sit while I

14     argue?

15              THE COURT:  That's fine.  Just pull the microphone

16     close to you.

17              MS. HUGGINS:  "A complaint can only survive a 12(b)(6)

18     motion to dismiss if it contains factual allegations that are

19     enough to raise the right to relief above the speculative level

20     under assumption that the factual allegations in the complaint

21     are true."  And I'm citing to Bell Atlantic Corporation versus

22     Twombly.

23              "A common law claim for defamation requires the

24     unprivileged publication to a third party of a false and

25     defamatory statement concerning another with fault amounting to
```

1    at least negligence on behalf of the publisher with damage

2    ensuing."  The citation, Mile Marker Incorporated versus

3    Petersen Publishing.

4         "In Florida slander is actionable per se without a

5    showing of special damages if it imputes to another a criminal

6    offense amounting to a felony," Campbell versus Jacksonville

7    Kennel Club.

8         "A published statement is libellous per se if it

9    charges a person has committed an infamous crime or intends to

10   subject one to hatred, distrust, ridicule, contempt or

11   disgrace," Richard v. Gray, citation, 62 So.2d 597, 598.

12        Plaintiff's defamation claim against Dr. Westaway does

13   not use a phrase defamation per se.  Nevertheless, the

14   applicable grounds for the plaintiff to proceed against

15   Dr. Westaway are slander per se and libel per se, which

16   encompasses statements that accuse a person of a felony,

17   charges that a person has committed and infamous crime or tends

18   to subject one to hatred, distrust, ridicule, contempt, or

19   disgrace.

20        As a general rule, there is a presumption of malice

21   where statements are defamatory per se but that presumption

22   ceases to exist where the defendant has a qualified privilege

23   to make the statements.  The determination that a defendant's

24   statements are qualifiedly privileged eliminates the

25   presumption of malice attaching to defamatory statements by

```
 1    law.  The privilege instead raises a presumption of good faith

 2    and places upon the plaintiff the burden of proving expressed

 3    malice.

 4          In our brief Dr. Westaway is -- well, let me backtrack.

 5    In plaintiff's amended complaint plaintiff asserts that

 6    Dr. Westaway is a former member of the National Organization of

 7    Women.  It also alleges that at the time, the pertinent time

 8    period, Dr. Westaway served as a member of the University of

 9    Miami's Task Force on Sexual Violence Prevention and Education,

10    also served as a Canes Consent Founder and worked as a Women

11    and Gender Studies professor.

12          In terms of her obligation, interest, duty, I believe

13    that a communication made in good faith on any subject matter

14    by one having an interest therein or in reference to which he

15    has a duty is privileged if made to a person having a

16    corresponding duty or interest even if it contains matter which

17    would otherwise be actionable and though the duty is not a

18    legal one but only a moral or social obligation.  I am citing

19    to Healy versus SunTrust Service Corporation.

20          THE COURT:  Is the issue of whether a person made a

21    statement in good faith or bad faith appropriate for me to

22    decide at a motion to dismiss stage or at some later stage of

23    the proceeding?

24          MS. HUGGINS:  I believe the facts are undisputed as to

25    that.  In terms of your opportunity to make that decision, if
```

1    the facts are undisputed, the Court is allowed to make that

2    determination.

3           Based on the facts as alleged in the amended complaint,

4    Dr. Westaway had a legitimate interest and a duty, I will say,

5    in terms of corresponding with like-minded people including the

6    public regarding her interest.

7           As I stated previously, Dr. Westaway served as a member

8    of the task force.  She was a Cane Consent Founder, which was

9    as alleged in the Miami Hurricanes publication from December 4,

10   2014, spread sexual assault awareness on the UM campus and the

11   surrounding areas.

12          In addition to that, she also served as a Women and

13   Gender Studies professor and she is also a former now National

14   Organization of Women state officer.  As a result, she had an

15   obligation to convey to the public the findings of the UM

16   disciplinary board.

17          UM found that plaintiff, David Jia, had been found

18   responsible for two allegations, one being sexual assault and

19   battery, the second one being interrelation -- intimate partner

20   violence.

21          The University of Miami, despite having an appeal from

22   plaintiff JIA, upheld his responsibility for those two claims.

23   So, when Professor Westaway spoke to the public, whether it be

24   the University of Miami, whether it be to the Local 10 News

25   outlet, whether it be through Instagram, social media, she was

1    acting in a qualified privilege forum or obligation.

2          THE COURT:  Because there had been an investigation by

3    the university?

4          MS. HUGGINS:  There had been an investigation by the

5    university, but similar to the case that I cited in my brief,

6    Jarzynka versus St. Thomas University, despite her not having a

7    an explicit role in that investigation, she was still a member

8    of the task force.  She was still a member of Canes Consent.

9          The University of Miami has a publication, the Miami

10   Hurricane, which herald her involvement in sexual assault

11   awareness on University of Miami campus grounds.  So, for her

12   to take a step back and not voice her concerns and comment as

13   to the severity of what's going on would have been a

14   dereliction of duty.

15         In the plaintiff's complaint, amended complaint, the

16   plaintiff failed to address in the factual terms expressed

17   malice.  The plaintiff failed to state explicitly or implicitly

18   that Dr. Westaway was not acting in good faith when she

19   corresponded with the public about the University of Miami's

20   findings regarding plaintiff David JIA, that he had been found

21   responsible for the intimate partner violence as well as for

22   the sexual battery and assault.

23         The question of whether publication of a false

24   statement on a certain subject is subject to qualified

25   privilege is still a question of law to be resolved by the

```
 1     Court when there is no dispute as to the circumstances

 2     surrounding the publication.

 3          In Count 2, defamation count against Dr. Westaway,

 4     Dr. Westaway is listed as stating -- and I am quoting paragraph

 5     124, subsection B -- "So, now she is forced" -- presumably,

 6     Defendant Angela Cameron -- "to walk the campus with her

 7     predator and in retribution her rapist found her in the theater

 8     two weeks ago and beat her until she was almost unconscious."

 9          According to Nodar versus Galbreath, which is a Supreme

10     Court case cited in my brief, 462 So2d 803, 810, "While the

11     malice may be inferred from the communications, it is not

12     inferable from the mere fact that the statements are untrue."

13          Dr. Westaway acted in good faith when she communicated

14     with the Miami Hurricane, when she communicated with the media

15     outlets, when she communicated with the source or media about

16     the responsibility that was found by UM against plaintiff David

17     Jia.  I believe it's the Court's obligation based on the facts

18     as alleged specifically in the amended complaint, that

19     Dr. Westaway acted in good faith when she made her statements

20     to the University of Miami faculty as well as to the students

21     and the Florida community.

22          THE COURT:  Is reliance alone on the university's

23     finding and perhaps her discussions with Ms. Cameron enough?

24          I mean, is she -- in that good faith, bad faith

25     analysis is she required to do any diligence on her own part?
```

1          MS. HUGGINS:  In terms of her due diligence, I believe

2     as asserted in the plaintiff's complaint, there were enough

3     facts to substantiate her statements.

4          One, the University of Miami, as stated in Exhibit A of

5     the complaint, and the first exhibit which is a Miami Hurricane

6     publication from December 24, 2014, stated that there was a

7     disciplinary hearing.  There was an independent investigation

8     that was conducted.  The plaintiff had an opportunity to

9     present facts, defenses as well as Ms. Cameron had an

10    opportunity to present facts regarding the same.

11         The police department was involved in the

12    investigation.  There was a finding in regards to liability but

13    as alleged in the Miami Hurricane publication from

14    December 4th, due to the one week delay in reporting the

15    assault, that contributed to the police department not making a

16    charge against the plaintiff.

17         THE COURT:  Okay.  Is there anything you wanted to add?

18         MS. HUGGINS:  In addition to the qualified privilege

19    argument that I made, I also would like to address the opinion

20    as an opportunity to state that the motion to dismiss the

21    defamation claim should be made.

22         As alleged in the amended complaint, the plaintiff

23    states that although David Jia was not mentioned by name, by

24    the time the first article was published, which was published

25    on December 4, 2014, many students and faculty members already

1   knew that David Jia was the accused male student.  In paragraph

2   102 of the amended complaint, the local news article, Local 10

3   News published an article where Dr. Westaway was interviewed

4   and in the later part of that article it stated, "Although it

5   is the policy of the Local 10 News to not name victims of rape,

6   Cameron has been public about her accusations.  The accused

7   rapist was not charged."

8          In paragraph 89 of the amended complaint, on

9   April 22nd, 2015, the Miami Hurricane published an article

10  according to the plaintiff promoting the petition.

11         In paragraph 101 of the amended complaint, on May 13,

12  2015, the Coral Gables Police Department released police

13  reports in regards to the April 6 and April 9 assault

14  allegations.  In addition, in paragraphs 91, on April 24, 2015,

15  Cameron filed a temporary restraining order against Jia, which

16  prohibited Jia from entering the UM campus.

17         In a response to Cameron filing a temporary restraining

18  order, according to paragraph 93 of the amended complaint,

19  David Jia submitted to the judicial system and got a

20  modification of the restraining order which allowed him to

21  participate during his graduation ceremony.

22         All together these statements that Dr. Westaway made in

23  regards to the allegations of April 2014 as well as April 2015

24  were part of the public record.  She commented on matters that

25  were of the record which voluntarily plaintiff Jia had inserted

1     into the record by seeking a modification of the restraining

2     order.  Also, the University of Miami published numerous

3     articles on the matter putting it into the public arena.

4          Dr. Westaway was allowed to comment, opine on what was

5     going on since it was a matter of public record.  Pure opinions

6     must be stated and disclosed as known to the audience when the

7     publication is made for it not to be actionable.  Based on the

8     paragraphs that I have previously stated, including paragraph

9     89, 101, 102, paragraph 91 and 93, which include also the Miami

10    Hurricane publishing at least two articles discussing the

11    April 2014 and April 2015 allegations, these allegations which

12    were made against plaintiff David Jia were a matter of public

13    record.

14          As a result, Dr. Westaway's statements where she

15    commented were perfectly within the grounds of pure opinion.

16    Therefore, the statements that are alleged in Count 2, which

17    are from A to G, which are about seven statements, all fall

18    within the realm of a pure opinion.

19          Moving on to civil conspiracy, the plaintiff asserted

20    that Cameron, UM and Dr. Westaway's defamatory acts constituted

21    the basis for a civil conspiracy and ostensibly cited an

22    agreement that Ms. Cameron and Dr. Westaway engaged in to

23    defame the plaintiff.

24          Despite realleging and incorporating the allegations

25    that were set forth in paragraph 35 to 112 of the amended

1   complaint, the plaintiff fails to assert any factual basis as

2   to a particular act that either party engaged in to further

3   that conspiracy.  Instead, plaintiff's conspiracy claims would

4   fall under being vague, general and conclusory.

5         In the brief, Carlson v. Armstrong World Industries is

6   cited, and the Court is found to have granted the defendant's

7   motion to dismiss the civil conspiracy counts due to the lack

8   of specificity that was made.  That was made in regards to

9   fraud, but I think the grounds are applicable here.  Within the

10  entire amended complaint there aren't any factual assertions

11  substantiating that Dr. Westaway engaged in a specific act or

12  any behavior that would have been in furtherance of a

13  conspiracy.

14        And the plaintiff is not allowed to use any of the

15  defamatory acts as a tort to substantiate civil conspiracy if

16  the Court finds that it had as a basis to dismiss with

17  prejudice today the defamation count against Dr. Westaway.

18        In regards to the intentional infliction of emotional

19  distress count against Dr. Westaway, Anderson v. Rossman and

20  Baumberger, P.A., 440 So.2d 591 out of the Florida District

21  Court of Appeals found that there was no cause of action for

22  intentional infliction of emotional distress where the primary

23  conduct relied upon was defamatory statements in court

24  pleadings.

25        In short, the Court found that a plaintiff cannot

1    transform a defamation action into a claim for intentional

2    infliction of emotional distress simply by characterizing their

3    alleged defamatory statements as outrageous.

4          In the amended complaint, the plaintiff pleads

5    paragraph 35 through 112 for each of the counts against

6    Dr. Westaway.  In the defamation count the same paragraphs 35

7    through 112 are used.  According to the Fourth DCA, if the

8    Court finds that there are no defamatory statements in the

9    Court pleadings, there should not be a finding of intentional

10   infliction of emotional distress based on those same actions.

11         In terms of outrageousness of the conduct, there has

12   not been sufficient support to show that the assertions made by

13   the plaintiff against Dr. Westaway show that she engaged in

14   outrageous conduct against the plaintiff.  There is no factual

15   support for that in the amended complaint.  All there are are

16   bare bones allegations which recite the elements.

17         THE COURT:  With what you were just saying a moment

18   ago, as I understood it you were saying if the intentional

19   infliction of emotional distress is based on purported

20   defamatory statements, if the counts alleging defamatory

21   statements fail then necessarily the intentional infliction of

22   emotional distress must fail.

23         MS. HUGGINS:  Exactly, Your Honor.

24         THE COURT:  Okay.  But were you saying that defamation

25   can never be a basis or defamatory statements can never be a

```
 1    basis for intentional infliction of emotional distress?

 2          MS. HUGGINS:  No, what I'm saying is if the arguments

 3    that I made are viable regarding the qualified privilege as

 4    well as the opinion, there will be opportunities for those

 5    statements to serve as the basis for intentional infliction of

 6    emotional distress, but in these circumstances that privilege,

 7    qualified privilege as well as opinion negate any recovery by

 8    the plaintiff for that count, intentional infliction of

 9    emotional distress.  The plaintiff is, essentially, recasting

10    the same argument for each of the tort claims against

11    Dr. Westaway.

12          There is no differentiation of the facts.  There isn't

13    a new analysis.  It's the same argument, the same pleadings,

14    the same factual assertions that are being made.  In another

15    set of circumstances there is a possibility, but in this

16    circumstance I don't believe that at this stage, the motion to

17    dismiss, the plaintiff has sufficiently alleged enough facts to

18    substantiate that separate count.

19          THE COURT:  Are those all the counts against

20    Dr. Westaway?

21          MS. HUGGINS:  I'm sorry, repeat that.

22          THE COURT:  Have you addressed all the counts against

23    Dr. Westaway?

24          MS. HUGGINS:  The last count I would like to address

25    would be the invasion of privacy count.
```

1          THE COURT:  Okay.

2          MS. HUGGINS:  "The elements for the invasion of privacy

3     through the publication of private facts require that the

4     plaintiff must allege the disclosure was public, private facts

5     were discussed, the matter publicized was highly offensive to a

6     reasonable person and the matter is not a legitimate concern to

7     the public."  I am citing to Morrison v Morgan Stanley.

8          In the amended complaint, the plaintiff argued that

9     Dr. Westaway's statements were false.  Also, according to one

10    of the elements of invasion of privacy, the matter is not a

11    legitimate concern to the public.  However, the plaintiff

12    repeatedly asserted in its amended complaint that the Miami

13    Hurricane, the Local 10 News outlet and other media outlets

14    provided Dr. Westaway with the forum to publish her statements

15    regarding the allegations.

16         If it's not a matter, a legitimate concern to the

17    public, these media outlets including the Miami Hurricane,

18    would not have provided Dr. Westaway with a forum.

19         Specifically, in paragraph 89 of the amended complaint,

20    on April 22nd, 2016, it's noted in the amended complaint that

21    Miami Hurricane published an article promoting their position.

22    According to paragraph 95 of the amended complaint, according

23    to the news and media outlets, Westaway made frequent calls to

24    them providing information about the information about David

25    Jia and the plaintiff.

1          Going back to the elements of invasion of privacy, the

2    last element states the matter is not a legitimate concern to

3    the public; yet, there are repeated instances in the

4    plaintiff's amended complaint showing that it is a matter of

5    legitimate concern to the public.

6          In addition, the plaintiff repeatedly asserts in its

7    amended complaint that the statements that Dr. Westaway made

8    were untrue or false.  Yet, contrary to what the element

9    requires, there needs to be disclosure of true but private

10   facts.  That contradiction does not allow for the plaintiff to

11   recover for an invasion of privacy against Dr. Westaway.

12         MS. HUGGINS:  Thank you, Your Honor.

13         THE COURT:  All right.  Thank you.

14         All right.  Ms. Cameron, you are certainly welcome to

15   make some additional argument.  I think the attorneys have

16   covered pretty much everything but if there is something you

17   want to add, you are welcome to do that.

18         If you are going to stay at the table, it's easier if

19   you sit because of the microphone.

20         MS. CAMERON:  I was going to go to the podium.

21         THE COURT:  All right.  That's fine.

22         MS. CAMERON:  Your Honor, both the University of

23   Miami's and William Lake's attorney, as well as Dr. Westaway's

24   attorneys have covered most of the arguments, I feel, for all

25   the counts but I wanted to add kind of my two cents.

```
 1              In terms of the plaintiff -- the plaintiff filed this

 2    very long and -- this very long lawsuit in January of 2017 and

 3    we are here a year later and no closer to really -- really, no

 4    closer than we were a year ago.  His claims in the lawsuit are

 5    ridiculous, to say the least.  His claim of defamation is very

 6    weak.  Most of the statements he identifies -- he identifies

 7    five particular statements within the lawsuit and beginning

 8    with Point A, which was a Facebook status, that Facebook status

 9    is time barred by the statute of limitations because the actual

10    status was posted on December 14th, 2014.

11              In terms of the second status, the second Facebook

12    status, that status was taken down almost immediately after it

13    was published.

14              The third one is not something I ever commented on or

15    was aware of until he brought it to light, quite frankly.  I

16    wasn't aware of that article.

17              Most of his claims of defamation are based on an

18    article in the Miami Hurricane that was published in December

19    of 2014, which, again, is barred -- any statements in there are

20    barred by the statute of limitations, and in terms of his last

21    point that I spoke at campus events on various occasions about

22    the incident, he provides no proof of those occasions anywhere

23    within his amended complaint.  He just simply says it happened

24    and that's not enough for this statute for defamation.

25              In terms of the intentional infliction of emotional
```

1   distress, as the university's lawyer said, even some of the

2   most extreme cases, the standard isn't met.  Not only that,

3   Mr. Jia tried when he didn't -- he tried to basically -- he

4   filed a report with the university on me which I go into detail

5   about within my motion and when he filed this report it was a

6   slew of alleged violations to the student code of conduct for

7   many of which I was cleared from the beginning.  And then the

8   one that was heard, which was intentional infliction of

9   emotional distress, the university found that I was not

10   responsible for that and then when Mr. Jia -- basically,

11   Mr. Jia didn't like that so he has taken that claim and is now

12   trying to take it into this courtroom, which is ridiculous.

13          In terms of the conspiracy charge, the plaintiff

14   doesn't meet the statute for defamation or for intentional

15   infliction of emotional distress and he alleges that I

16   conspired with Dr. Westaway to do just those things.  So,

17   because he doesn't -- because he hasn't met the statutes or the

18   burden of proof, excuse me, for defamation or for intentional

19   infliction of emotional distress, the claim of conspiracy does

20   not stand, Your Honor.

21          And I believe that's all the arguments I have, Your

22   Honor?  Thank you.

23          THE COURT:  Thank you.

24          All right.  Mr. Richardson.

25          MR. RICHARDSON:  Can I present from right here, Your

1    Honor, I'm sorry, I am a mess.  I appreciate it.

2         THE COURT:  It's all right.

3         MR. RICHARDSON:  Your Honor, today Title IX, as

4    everyone knows, is a bear.  It's a huge issue amongst all the

5    courts and it's under severe scrutiny.  It's about where it's

6    gone, what it was intended to do at the beginning and it's

7    morphed into a lot of different things.

8         Unfortunately, rape has become a part of the college

9    experience in many places and it's terrible.

10         Unfortunately IX, in all my counts, IX in all regards

11   here was misused on David Jia.  He didn't have -- he wasn't

12   treated anything fair.  It was an erroneous outcome to begin

13   with, and I won't go through all the law I put in the motion.

14   I can barely speak, but I will state that he was precluded from

15   having the ability to have access to the record in many ways,

16   from witnesses and all of that.

17         I won't be redundant and I won't go into it in too much

18   detail, but I could say that the way he was treated from the

19   beginning to the end in reference to how IX and this handbook

20   and the procedure is used at the University of Miami, if you

21   switch roles, quite frankly, and made him a woman and the

22   discovery that I have already gotten from Dr. Westaway showing

23   that how many professors, may I say, 70 plus professors signed

24   a petition to kick out -- and I will use the words that is used

25   in this petition.  And it was -- the colleagues referred to him

1   as a rapist, a batterer, a threat to all students and at one

2   point she calls him evil.  And she says, "Remember, evil can

3   only exist when good people look the other way."

4          This is all under the guise of University of Miami.

5   This is all under -- these letters were disseminated to

6   President Shalala.  These were -- 70 professors co-signed this.

7          Your Honor, David wasn't given a chance at moment one.

8   The facts, and this is facts -- I won't go into all the facts.

9   That's for a later date, but I would say that David Jia got a

10  call to come into the office.  He came into the office and he

11  met with the dean, deans of the school, and he met with them.

12  And their first experience was not a hearing, was not any kind

13  of panel or anything or here is what you do, you can get a

14  lawyer but he can't speak, none of those things.

15         He immediately was approached and -- based on the

16  conversation that Ms. Cameron had with the school, the

17  university said, Angela Cameron is alleging that she did not

18  have consensual sex and that you raped her.  This is a

19  one-on-one with him with no procedural Title IX, nothing.  This

20  is a conversation, and he said it never happened.

21         They said, "Did you consent to having sex with Angela

22  Cameron?"

23         And he said, "We both did."

24         What he said that day is many people who across the

25  country, kids, who because one reason or another someone

1   decides today, you don't love me enough or you are not serious

2   enough about me or whatever it is, they can use this as an

3   avenue to get the kid kicked out of school.  Many cases like

4   that exist today, and only today is this changing.

5          This dear colleague letter is not just conjecture what

6   we talk about.  Yes, I put it into the complaint, but the

7   reality is, this dear colleague letter was like a noose, like

8   tightening up against the universities because of this problem

9   that is going on through college campuses where women were

10  being ignored, where people weren't getting the proper Title IX

11  representation.  But today -- and when you look at David Jia,

12  it's really -- I mean, I don't want to say it's a landmark type

13  of case or set of facts but, I mean, at the end of the reading

14  of the complaint and at the end of the reading of the facts,

15  and if a jury heard this, the only thing I think we would be

16  missing is Ms. Cameron standing up on the stand in front of a

17  jury and saying, you know, I made this all up just to test the

18  system and see how bad Title IX is working against so many

19  people and how it's being so unfairly used.

20         THE COURT:  Well, you understand the issue before me

21  today is if you have alleged your case properly in the amended

22  complaint.

23         MR. RICHARDSON:  I do.

24         THE COURT:  I would kind of like to focus on that.

25         MR. RICHARDSON:  Yes, sir, I'm sorry.

1          So, they asked David before the proceeding --

2          THE COURT:  Well, why don't you point out to me how you

3     have properly set forth all of this in the complaint?

4          MR. RICHARDSON:  I'm sorry.  All right.

5          THE COURT:  Let me just tell you my own observation and

6     then you can respond.

7          MR. RICHARDSON:  All right.

8          THE COURT:  The university concedes that you have

9     enough for Count 1, which is the breach of contract claim but

10    all the defendants indicate their various problems with the

11    other counts.  I guess starting with two basic things, the

12    amended complaint isn't signed and there is not a complete

13    certificate of service that complies with the civil rules of

14    procedure and our local rules.

15         Do you agree that that is a problem?

16         MR. RICHARDSON:  One more time, which was the --

17         THE COURT:  That the -- the fact that the complaint was

18    not signed and there is not a complete certificate of service

19    which is in compliance with the civil rules as well as our

20    local rules, that that is first a fatal problem with the

21    complaint.

22         MR. RICHARDSON:  That was at one point and I think we

23    had cleared it up.  There was a clerical error and I believe I

24    sent the material -- I thought I had sent the material to

25    opposing counsel.  They understood.  I addressed the Court and

```
 1    I thought the Court had allowed us to properly deal with the
 2    signature.
 3            THE COURT:  All right.  Maybe I forgot.  Is that an
 4    issue anymore, Counsel?
 5            MR. ISICOFF:  Your Honor, the reason why I didn't argue
 6    that point, although we did raise it in our motion, was the
 7    Court is correct there were Rule 10 and 11 implications here
 8    because there was no executed pleading or certificate of
 9    service, but then there was a motion to correct technical
10    deficiencies and that was a Docket Entry number 50 and it was
11    dated June 13 of 2017.  So, as a result of that -- although we
12    think at the time this complaint was filed it was deficient and
13    did not comport with those rules as well as the local rules, it
14    appears to have been corrected in June in Docket Entry 50.
15    That's why I didn't argue it today.
16            THE COURT:  All right.  I see it.  On Docket Entry 57 I
17    granted that motion.
18            Okay.  So, let's start with some kind of overarching
19    issues and you can address those.  Well, it's a very long
20    complaint but many of the allegations in the body of the counts
21    are conclusory.  So, you can, of course, incorporate and
22    reallege prior paragraphs but within the actual counts the
23    statements at times are a bit conclusory.
24            For example, in Count 7, which is one of the
25    intentional infliction of emotional distress counts as to
```

1   Ms. Cameron, in paragraph 56 you say that she engaged in

2   conduct that could be described as so outrageous in character

3   and so extreme in degree as to go beyond all possible bounds of

4   decency, etcetera.

5        In Count 8 against Katharine Westaway and University of

6   Miami, you refer to conduct detailed in the above paragraphs

7   after incorporating paragraphs 35 through 112 and in paragraph

8   161 you say that Katharine Westaway engaged in conduct that can

9   be described as so outrageous in character and so outrageous in

10  character and so extreme in degree as to go beyond all possible

11  bounds of decency, etcetera.

12       Another reference to conduct described above, in

13  paragraph -- I mean, I'm sorry, in Count 9 is invasion of

14  privacy count dealing with Dr. Westaway and the University of

15  Miami, you refer to the dissemination of private information

16  without describing what that information is, things like that

17  where you are not specific enough -- well, I am kind of telling

18  you what I think by saying that but would you agree that

19  that's, that you need more specificity?

20       MR. RICHARDSON:  I won't disagree, Your Honor, that

21  there could be more specific facts.  In the amended

22  complaint -- I think there was much more in the original

23  complaint and I had stuck most of it into the argument.  I

24  didn't put as much in to describe in the amended complaint but

25  I think -- I mean, I think it's -- I mean, I think it still

```
 1    holds muster, Your Honor, when it comes down to the weight of
 2    everything that when I refer to the acts -- describe the
 3    outrageous character and extreme degree and going beyond bounds
 4    of decency, I still think the complaint within the four corners
 5    of it still is very clear what those allegations are
 6    specifically talking about.
 7            THE COURT:  You know, as Ms. Huggins mentioned a little
 8    earlier, like when you -- for example, the intentional
 9    infliction of emotional distress count, when you use a
10    reference to conduct described above, it's not clear if you are
11    talking about the statements that were made or if you are
12    talking about the lack of due process or sufficient process,
13    the hearing process, if it's the dissemination of certain
14    information.  It's not clear, so it's hard -- you can't
15    differentiate among the many allegations that you make and what
16    you are talking about.
17            MR. RICHARDSON:  And I do understand.  I mean, I wish I
18    said all of the above because frankly it is.
19            THE COURT:  Well, you can't do that.  That's the point.
20            MR. RICHARDSON:  You are right, I can't.
21            THE COURT:  Let me talk about a couple of legal issues
22    and I will go back to some of the more general things.  The
23    statute of limitations issue and the statements -- so, are any
24    statements, in your opinion, the purportedly defamatory
25    statements, are any of them that were made not within two years
```

```
 1   of filing of the complaint or are any of them actionable?

 2           MR. RICHARDSON:  Absolutely, Your Honor.  There were

 3   statements made well after January, not only statements made

 4   but there were -- I mean, Katharine Westaway was, and I just

 5   got a hard drive showing e-mails that -- I mean, I wish I had

 6   them earlier, obviously, but there are e-mails where there is

 7   just constant contact with not only the news.  I mean, look,

 8   she reached out to a hundred different news group.  She

 9   continually referred to him as a rapist, a batterer and evil

10   amongst the students.  The amount of e-mail correspondence that

11   I got, it took -- I mean, really I spent probably about

12   15 hours just analyzing how much and how it's connected.  UM

13   was fully aware of all of her actions past that January where

14   -- and connected to that January.  So, it was -- I mean, I

15   understand the ongoing argument and how I can't hang my hat on

16   just ongoing but it was all in the same breath.  It never

17   stopped.

18           Katharine Westaway, and while the University of Miami

19   was watching and I could just put in parenthesis, if she -- I

20   mean, she is clear even in 9/15, September of '15 in articles

21   or interviews where she made where she throws the University of

22   Miami under the bus and says all the times I was doing all

23   these things and all the things I was saying it was while under

24   the auspices, like I was a knight and shining armor for the

25   University of Miami with the task force to do what I am doing,
```

 1   which is to disseminate this information about this rapist

 2   that's on campus.

 3        They made cartoons.  She approved cartoons.  She asked

 4   for people to create cartoons of like a female rape victim in

 5   front of the panel and in the cartoon it even says, "I can't

 6   see anything, can you?"  And she is limping covered basically

 7   in Band-aids and blood.

 8        She was calling physically every news place writing

 9   letters, CCing students that were in the room and students in

10   her class saying, "we must get this rapist expelled by all

11   means."

12        And she begun not only spreading the word but enhancing

13   for it, because when the first hearing happened, which is

14   another topic, but the first hearing happened during the

15   hearing for Angela originally when he was accused of the sexual

16   battery, it continued throughout and tied into this.  So, in

17   that first hearing the language that they use to describe what

18   he was will guilty of, this language that Professor Westaway is

19   using, it goes so far beyond what decency is and what you do to

20   a student.

21        THE COURT:  Well, but in the contention, though, of the

22   statute of limitations, as a general proposition, anything that

23   occurred before, two years before you filed the complaint would

24   be time barred unless there is a reason to get around the bar.

25   I mean, do you agree with that?

```
 1          MR. RICHARDSON:  I believe there is a reason to get

 2   around the bar.

 3          THE COURT:  Okay.  Well, first of all, what is that and

 4   have you sufficiently pointed that out in the amended

 5   complaint?

 6          MR. RICHARDSON:  It's much clearer in my opposition to

 7   defendants' motion to dismiss the complaint but, I mean, I am

 8   basically tying up the law and I am also saying that, you known

 9   the torturous campaign of defamation carried out by Westaway, I

10   mean, it wasn't -- if the January 13th would be the time bar,

11   let's say January 13th hypothetically was the time bar and

12   statements were still being made on the 14th and 15th, I mean,

13   this defamation -- my client, you know, was a student.  It was

14   still ongoing and this was totally brought to his attention,

15   and the more he learned as it went on, it was even later in

16   time, Your Honor.

17          I think towards the end of his schooling in May is

18   where he really became aware of the gravity of just how much

19   defamation was out there.  I mean, he was finding out slowly

20   but surely and in discovery I am even finding out slowly but

21   surely just how much of this defamation was out there and how

22   much of this like really intentional harassment that went so

23   far beyond reckless.  I mean, he was getting probably -- he may

24   have gotten 5,000 e-mails from students saying you are an

25   animal, you are a rapist, you are this, you are that.  This was
```

1    all begun within the classrooms of the University of Miami.

2          So, there was defamation at all points in her lectures,

3    at the lectern, in the middle of campus which was caught on

4    video.  It was an ongoing thing.  So, I think if Mr. Jia had

5    known or maybe had lawyers in his family or something else, he

6    could have begun this earlier.  But I think as a 20-year old

7    student and where he would realize what a defamation is, as

8    intelligent as he is, still a kid and a child in school, I

9    think that where it really comes to light is when he finally

10   retains me, right before, moments before he graduates.

11        THE COURT:  So, why wouldn't Dr. Westaway's conduct be

12   considered as a protected opinion in light of the fact that the

13   university had conducted an investigation?  Whether it was

14   flawed or not, the information was public.  I mean, even from

15   your allegations, it was commonly known what the allegations

16   were.  Why couldn't she comment on what she had learned under

17   those circumstances?

18        MR. RICHARDSON:  Because, Your Honor, she didn't just

19   comment on what the record said or, you know, what would have

20   been put out there that she had any access to legally.  She

21   went so far beyond.  I mean, "a brutal rapist amongst us."

22        Listen, he was suspended for a semester.  He was

23   almost -- he was a full ride student.  I think he missed two

24   questions on his SAT.  His father is a surgeon and his mother

25   is a scientist.  They are Chinese America.  The level of

1    disgrace that she set upon him with her words from the

2    beginning to the graduation where she had a silent protest and

3    they all wore 9s on their hats to protest, his Asian American

4    family showing up from Philadelphia to go watch his graduation,

5    going back every step of the way was so beyond what human

6    decency can be.

7         If he stole a computer, which this is a totally

8    different concept, but if a computer was stolen, you know what,

9    you could explain that to a graduate institution.  You could

10   explain that with a high GMAT.  You can explain that with a lot

11   of things.

12        When you have a sexual situation that happens on

13   campus, and let's say he could have been vindicated, which I

14   believe he was on the second hearing, he could have even maybe

15   later gotten a letter from the dean to explain this away but

16   the press wouldn't have known.

17        If the majority, and I say majority of all of these

18   cases they don't hit the press.  People don't disseminate this

19   kind of information around campus and most schools don't let

20   you.

21        THE COURT:  But does opinion hinge on the degree to

22   which you offer your opinion?  That sounds like what you are

23   suggesting.

24        MR. RICHARDSON:  I believe that the University of Miami

25   knew that she was saying the things that she was saying and

```
 1    they, in fact, knew better as well.
 2          And I don't -- and I understand the opinion and she
 3    could opine that he is a rapist because they are saying there
 4    is no consent that one night that they were both drinking.
 5    Nothing afterwards, nothing before, but that one night that
 6    they were drinking.  But she didn't call him just a rapist and
 7    she didn't say he just didn't consent.  She said that he is
 8    brutal.  She says that he is evil.  She says that he can't be
 9    in this university, that he needs to be kicked out, that the
10    university has not done enough, and I am going to be the -- I
11    am going to be the, you know, the knight and shining armor to
12    really expose this because that's why University of Miami
13    brought me here.  That's why I have this task force.  That's
14    why I have my funding because I want my University of Miami to
15    know my worth.
16          All my supervisors promote me.  They all love me.  They
17    gave me letters of recommendation.  This is ridiculous that UM
18    is doing this, and UM has a long history of rape and violence.
19    This isn't the first case like this, and the reality is she is
20    there to help UM.  UM is hand in hand -- until this moment,
21    until this case -- excited that they had somebody like
22    Katherine Westaway to be this person who was an advocate, which
23    rightly so would be fantastic under other circumstances but
24    under these circumstances she went so beyond opinion.  You
25    can't opine to evil and all these things.
```

```
1            THE COURT:  Where I am having difficulty here, if

2    Ms. Cameron made the allegation to Dr. Westaway, and if

3    Dr. Westaway didn't do her own due diligence and started doing

4    all the things she did, perhaps that's problematic for

5    Dr. Westaway.  But where you actually have a university

6    investigation, whether it's flawed or not and she relies upon

7    that, I think that's a little more difficult, perhaps, for the

8    plaintiff.

9            Let me also ask you about this -- maybe I did ask you.

10           So much of this was in the public record.  Right?

11   There was media accounts.  I mean, you detail it.  So she -- by

12   virtue of her position she couldn't make any comments?  Is that

13   the argument or that she went too far?

14           MR. RICHARDSON:  I mean, I am not going to say that she

15   couldn't make comments but I think that too far really is an

16   understatement.  I mean, this -- just, I mean, I don't want to

17   give too much of a backdrop, obviously, but he applied to 1,200

18   jobs since this time period in his own field.  He is rightfully

19   a genius.  He took the GRE and missed like 10 questions

20   recently.  He cannot get into a remedial school.

21           She went so far that the kid thought about killing

22   himself on more than one occasion.  That's the backdrop, and I

23   know it's --

24           THE COURT:  Well, I want to stick to the complaint.

25           MR. RICHARDSON:  I think that too far is so far beyond
```

1    what she should have done and what any university would have

2    let her do and, in fact, when they realized what she did and

3    they really started to grapple with it and the university was

4    all in correspondence with her in May of 2015, these

5    communications between the university was like, hey -- and they

6    didn't fire her and I'm sorry if that sounded like that because

7    I -- she was not renewed.  There is a big difference.

8           If they had fired her, they would probably have opened

9    up a whole new can of worms for themselves with her being a

10   witness so they played it cool.  They let her continue to work

11   in May.  They took away her funding from the task force on the

12   21st of May in 2013.  Then, by September, I believe when her

13   contract was over, I guess whatever that temporary contract

14   that she was, they let her go.  So, she just would kind of sail

15   off into the wind without causing too much of a hassle or a

16   fight there.

17          So, they knew she was out of control.  They didn't stop

18   her and they knew it.  It wasn't just opinion.  Their inter

19   laws -- their college memos and administrator memos and e-mails

20   to one another and correspondence all really point to we have a

21   problem here, and they don't address the problem.

22          Not only they don't address the problem when they

23   could, I mean, yes, there was an injunction hearing, Your

24   Honor.  And I was the lawyer in the injunction hearing.  Angela

25   Cameron got a lawyer.  Angela Cameron's lawyer quit in the

1    middle of the injunction hearing.

2          THE COURT:  We are very far away from the issues I have

3    to decide.

4          MR. RICHARDSON:  Sorry.

5          THE COURT:  Let me ask you one further question.  For

6    Count 11, the invasion of privacy, are you agreeing to a

7    dismissal there or not?

8          The issue being you alleged throughout the complaint

9    that there were false allegations against your client but to

10   proceed on that count I think there has to be a disclosure of

11   truthful information.  There seems to be a conflict there.  Do

12   you agree with that premise?

13         MR. RICHARDSON:  I can agree with that premise, Your

14   Honor.

15         THE COURT:  All right.  So you have no objection to a

16   dismissal with prejudice on that count?

17         MR. RICHARDSON:  I wish I had more to give you.  I

18   think more will be revealed in discovery.  With prejudice are

19   strong words.  I believe there needs to be -- I would like

20   there to be more which I believe will be in the future.

21         THE COURT:  All right.  I am kind of out of time.

22         MR. RICHARDSON:  I understand.

23         THE COURT:  What I am going to do is grant the motion

24   to dismiss the amended complaint, except for Count 1, but I

25   will give the plaintiff leave to amend in addition to the -- I

1    mean, I am well aware of the case law and I have issued at

2    least one order on the same issue on whether or not the party

3    has to -- well, the proper thing is normally to file a motion

4    for leave to amend and that we review the amended complaint to

5    see if it's appropriate, but in this instance there is a count

6    that remains.  I think the more prudent thing in this situation

7    is to allow the plaintiff, to give the plaintiff leave to amend

8    but I do want to point out some deficiencies that, of course,

9    have to be fixed.

10           The general problem is the number of conclusory

11   allegations.  You can, of course, incorporate some of the -- or

12   all of the facts in the background section within the complaint

13   but within the actual count you still need to provide enough

14   information so that the defendants and the Court know what you

15   are talking about.

16           So, it's not enough to say, as mentioned above -- you

17   don't have to provide perhaps the same amount of detail that

18   you did in the preceding paragraphs or you can reference a

19   specific paragraph where you specify a statement or what have

20   you but the elements and sufficient facts have to be within the

21   actual body of the count.

22           The other problem with the purported defamatory

23   statements, it's difficult to tell which statements you are

24   talking about.  Some of them may have time bar issues, perhaps,

25   but you have to specify which statements you are talking about

1    so that the defendants can properly respond and I can do an

2    analysis.  I can't do it in the way that it's currently

3    written, including, of course, stating who made the statement,

4    the substance of the statement and when it was made.

5          The Title IX claims are deficient because while we all

6    know what you are talk about, you don't specifically state it.

7    It has to be based on sex and you don't specifically say that.

8    And that is fatal to the Title IX claims.

9          Interestingly enough -- I mean, looking at the party

10   section, I mean, David Jia is not -- he is identified as a

11   natural person or a citizen of the United States but I don't

12   think he was ever specifically identified as a man.  I mean, I

13   think that's the whole premise that you are making here that he

14   was in this instance discriminated against because he is a man.

15   If that's the case, you need to say it.

16         I also thought it was interesting that you provide the

17   detail regarding the Department of Education's policy dealing

18   with Title IX and how they affected not just the University of

19   Miami but other university and colleges and that that had an

20   effect on how the university acted as to Mr. Jia, but you don't

21   incorporate those paragraphs in the Title IX counts.  You

22   incorporate the later paragraphs but you don't incorporate

23   those that are probably the best ones to support your case.

24         So, from our discussions today, count -- the invasion

25   of privacy count, if there is nothing there then presumably you

```
 1    are not going to re-file that count, and I think you had

 2    already pretty much conceded as well as to Count 11.

 3            Again, with the intentional infliction of emotional

 4    distress counts, you need to specify which conduct is the

 5    outrageous conduct.  If you are talking about the statements or

 6    if you are talking about the university's actions and the

 7    investigation or if you are talking about something else

 8    because it's not clear here what you are talking about so the

 9    Court can't do a proper analysis.

10            So, how much time do you need to do that?

11            MR. RICHARDSON:  I, obviously, don't want to -- the

12    schedule keeps changing so I want to do the best I can for

13    everyone.  If I can get the -- if I can get the 30 days or less

14    would be great.

15            THE COURT:  Twenty days, does that sound sufficient.

16            MR. RICHARDSON:  Twenty days sounds great.

17            THE COURT:  Any objection to 20 days from the

18    defendant?

19            MR. ISICOFF:  No, Your Honor.  But I would ask the

20    Court not at this moment to but to consider looking at the

21    schedule in this case because we are almost a hundred percent

22    certain to be moving to dismiss again and there is going to be

23    time.

24            THE COURT:  I was going to bring that issue.

25            Somehow, I mean, you are aware we are short five judges
```

1    and we are all inundated, and this case and the motion kind of

2    got away with me.  The latter part of last year I was in trial

3    nonstop and you are constantly putting out fires and the ruling

4    on this one was delayed.

5           I think the appropriate thing to stay on top of this

6    is -- well, one -- well, we will, presumably, have the second

7    amended complaint within 20 days.  I think also within that

8    period perhaps if the parties consult and come up with a new

9    proposed schedule and including a status conference perhaps

10   within 60 or so days so that I don't lose track of this and we

11   can keep it moving because it's good that discovery has

12   continued.

13          How far are you now on discovery?

14          MR. ISICOFF:  I don't think there is going to be a

15   whole lot of discovery in this case and I know it's moving

16   along but I know there is definitely discovery left to be done.

17          I don't think that's going to be so unwieldy that it's

18   going to really severely impact any reasonable deadlines but we

19   will have to keep moving along because there is further

20   discovery to be taken.

21          THE COURT:  Have the main parties been deposed?

22          MR. ISICOFF:  No.

23          THE COURT:  Is Dr. Westaway local or is she out of

24   town?

25          MS. HUGGINS:  No, Your Honor, she is in Tennessee.

1        THE COURT:  Okay.  And the plaintiff is out of state as

2   well?

3        MR. RICHARDSON:  My plaintiff is in California.  He is

4   going to come in and I think we are going to have arrangements

5   to have Ms. Westaway come in.

6        THE COURT:  Within the next week or so if the parties

7   can provide a new proposed scheduling order and then we will

8   see where we are.

9        Okay.  Thank you very much.

10        MR. RICHARDSON:  Thank you, Your Honor.

11        MR. ISICOFF:  Thank you, Your Honor.

12        MS. HUGGINS:  Thank you, Your Honor.

13        COURT SECURITY OFFICER:  All rise.

14        (The proceedings were concluded at 11:10 a.m.)

15

                    C E R T I F I C A T E
16

17

         I hereby certify that the foregoing is an
18

   accurate transcription of the proceedings in the
19

   above-entitled matter.
20

21

22   January 20, 2018      /s/Patricia Diaz_____
     DATE                  PATRICIA DIAZ, FCRR, RPR, FPR
23                         Official Court Reporter
                           United States District Court
24                         400 North Miami Avenue, 11th Floor
                           Miami, Florida 33128
25                         (305) 523-5178

**'** 

**'15** [1] - 42:20

**/**

**/s/Patricia** [1] - 55:22

**1**

**1** [5] - 7:22, 16:8, 17:6, 38:9, 50:24
**1,200** [1] - 48:17
**10** [10] - 17:15, 17:17, 17:18, 17:20, 22:24, 26:2, 26:5, 31:13, 39:7, 48:19
**101** [2] - 26:11, 27:9
**102** [2] - 26:2, 27:9
**11** [3] - 39:7, 50:6, 53:2
**112** [4] - 27:25, 29:5, 29:7, 40:7
**11:10** [1] - 55:14
**11th** [1] - 55:24
**12(b)(6** [1] - 19:17
**124** [1] - 24:5
**13** [2] - 26:11, 39:11
**13th** [2] - 44:10, 44:11
**14th** [2] - 33:10, 44:12
**15** [1] - 42:12
**15th** [1] - 44:12
**161** [1] - 40:8
**17-CV-20018** [1] - 3:4

**2**

**2** [2] - 24:3, 27:16
**20** [3] - 53:17, 54:7, 55:22
**20-year** [1] - 45:6
**2009** [1] - 5:16
**2013** [1] - 49:12
**2014** [8] - 11:20, 22:10, 25:6, 25:25, 26:23, 27:11, 33:10, 33:19
**2015** [7] - 10:5, 26:9, 26:12, 26:14, 26:23, 27:11, 49:4
**2016** [1] - 31:20
**2017** [2] - 33:2, 39:11
**2018** [1] - 55:22
**21st** [1] - 49:12

**22nd** [2] - 26:9, 31:20
**24** [2] - 25:6, 26:14

**3**

**30** [1] - 53:13
**305** [1] - 55:25
**33128** [1] - 55:24
**35** [4] - 27:25, 29:5, 29:6, 40:7
**3rd** [1] - 10:5

**4**

**4** [2] - 22:9, 25:25
**400** [1] - 55:24
**440** [1] - 28:20
**462** [1] - 24:10
**4th** [1] - 25:14

**5**

**5,000** [1] - 44:24
**50** [2] - 39:10, 39:14
**523-5178** [1] - 55:25
**56** [1] - 40:1
**57** [1] - 39:16
**591** [1] - 28:20
**597** [1] - 20:11
**598** [1] - 20:11

**6**

**6** [1] - 26:13
**60** [1] - 54:10
**62** [1] - 20:11

**7**

**7** [1] - 39:24
**70** [2] - 35:23, 36:6

**8**

**8** [1] - 40:5
**803** [1] - 24:10
**810** [1] - 24:10
**89** [3] - 26:8, 27:9, 31:19

**9**

**9** [6] - 4:21, 4:25, 5:10, 5:11, 26:13,

40:13
**9/15** [1] - 42:20
**91** [2] - 26:14, 27:9
**93** [2] - 26:18, 27:9
**95** [1] - 31:22
**9s** [1] - 46:3

**A**

**a.m** [1] - 55:14
**ability** [1] - 35:15
**above-entitled** [1] - 55:19
**absent** [2] - 6:25, 7:1
**absolutely** [3] - 15:20, 17:25, 42:2
**abusive** [1] - 16:23
**accepted** [1] - 5:6
**access** [3] - 5:14, 35:15, 45:20
**according** [7] - 24:9, 26:10, 26:18, 29:7, 31:9, 31:22
**accounts** [1] - 48:11
**accurate** [1] - 55:18
**accusations** [1] - 26:6
**accuse** [1] - 20:16
**accused** [4] - 6:14, 26:1, 26:6, 43:15
**acknowledges** [1] - 6:24
**act** [2] - 28:2, 28:11
**acted** [3] - 24:13, 24:19, 52:20
**acting** [4] - 11:7, 12:16, 23:1, 23:18
**action** [3] - 5:24, 28:21, 29:1
**actionable** [6] - 13:13, 15:7, 20:4, 21:17, 27:7, 42:1
**actions** [4] - 11:7, 29:10, 42:13, 53:6
**acts** [3] - 27:20, 28:15, 41:2
**actual** [6] - 10:4, 11:21, 12:3, 13:19, 33:9, 39:22, 51:13, 51:21
**add** [3] - 25:17, 32:17, 32:25
**addition** [5] - 22:12, 25:18, 26:14, 32:6, 50:25
**additional** [1] - 32:15
**additionally** [1] - 14:1
**address** [6] - 23:16,

25:19, 30:24, 39:19, 49:21, 49:22
**addressed** [2] - 30:22, 38:25
**adequately** [1] - 15:8
**adjudicated** [1] - 9:8
**administrative** [2] - 7:13, 8:25
**administrator** [1] - 49:19
**advocate** [1] - 47:22
**affairs** [1] - 18:23
**affected** [1] - 52:18
**afterwards** [1] - 47:5
**agent** [1] - 12:15
**ago** [3] - 24:8, 29:18, 33:4
**agree** [10] - 8:13, 8:15, 8:16, 12:4, 38:15, 40:18, 43:25, 50:12, 50:13
**agreeing** [1] - 50:6
**agreement** [1] - 27:22
**aids** [1] - 43:7
**al** [1] - 3:4
**allegation** [4] - 7:9, 11:12, 13:21, 48:2
**allegations** [32] - 5:5, 6:21, 7:2, 9:9, 9:24, 13:18, 14:3, 14:8, 14:20, 14:23, 15:14, 16:2, 18:13, 18:16, 18:24, 19:18, 19:20, 22:18, 26:14, 26:23, 27:11, 27:24, 29:16, 31:15, 39:20, 41:5, 41:15, 45:15, 50:9, 51:11
**allege** [4] - 5:9, 5:21, 11:8, 31:4
**alleged** [41] - 5:11, 5:21, 5:24, 6:1, 6:2, 8:8, 8:12, 8:13, 9:11, 9:13, 9:14, 9:20, 9:22, 10:3, 10:4, 10:9, 10:19, 10:20, 10:22, 11:4, 11:19, 12:10, 13:4, 13:10, 16:9, 18:1, 18:18, 18:22, 18:23, 19:11, 22:3, 22:9, 24:18, 25:13, 25:22, 27:16, 29:3, 30:17, 34:6, 37:21, 50:8
**allegedly** [1] - 13:10
**alleges** [2] - 21:7, 34:15
**alleging** [8] - 13:3, 13:9, 13:20, 13:23,

13:24, 14:25, 29:20, 36:17
**allow** [3] - 19:5, 32:10, 51:7
**allowed** [6] - 9:4, 22:1, 26:20, 27:4, 28:14, 39:1
**almost** [4] - 24:8, 33:12, 45:23, 53:21
**alone** [3] - 6:13, 14:7, 24:22
**amend** [6] - 16:21, 16:22, 16:24, 50:25, 51:4, 51:7
**amended** [37] - 6:16, 10:4, 11:11, 13:6, 14:6, 16:9, 16:13, 17:1, 21:5, 22:3, 23:15, 24:18, 25:22, 26:2, 26:8, 26:11, 26:18, 27:25, 28:10, 29:4, 29:15, 31:8, 31:12, 31:19, 31:20, 31:22, 32:4, 32:7, 33:23, 37:21, 38:12, 40:21, 40:24, 44:4, 50:24, 51:4, 54:7
**amendment** [1] - 10:1
**amendments** [1] - 19:5
**America** [1] - 45:25
**American** [1] - 46:3
**amount** [2] - 42:10, 51:17
**amounting** [2] - 19:25, 20:6
**analysis** [4] - 24:25, 30:13, 52:2, 53:9
**analyzing** [1] - 42:12
**Anderson** [1] - 28:19
**Angela** [7] - 3:15, 24:6, 36:17, 36:21, 43:15, 49:24, 49:25
**animal** [1] - 44:25
**animus** [1] - 12:20
**Anthony** [4] - 3:13, 4:15, 9:23, 11:9
**antithesis** [1] - 10:23
**apologize** [2] - 3:24, 17:13
**appeal** [1] - 22:21
**Appeals** [2] - 5:16, 28:21
**appearance** [1] - 3:5
**applicable** [3] - 5:10, 20:14, 28:9
**applied** [1] - 48:17
**applies** [1] - 13:1
**apply** [2] - 5:3, 7:14

**appreciate** [1] - 35:1
**approached** [1] - 36:15
**appropriate** [5] - 16:11, 16:15, 21:21, 51:5, 54:5
**appropriately** [2] - 8:13, 9:13
**approved** [1] - 43:3
**April** [9] - 26:9, 26:13, 26:14, 26:23, 27:11, 31:20
**areas** [1] - 22:11
**arena** [1] - 27:3
**argue** [3] - 19:14, 39:5, 39:15
**argued** [1] - 31:8
**argument** [8] - 13:1, 25:19, 30:10, 30:13, 32:15, 40:23, 42:15, 48:13
**arguments** [4] - 6:21, 30:2, 32:24, 34:21
**arises** [2] - 14:11, 14:13
**armor** [1] - 42:24, 47:11
**Armstrong** [1] - 28:5
**arrangements** [1] - 55:4
**article** [11] - 12:11, 12:19, 12:21, 25:24, 26:2, 26:3, 26:4, 26:9, 31:21, 33:16, 33:18
**articles** [3] - 27:3, 27:10, 42:20
**Asian** [1] - 46:3
**assault** [7] - 7:9, 22:10, 22:18, 23:10, 23:22, 25:15, 26:13
**assert** [1] - 28:1
**asserted** [3] - 25:2, 27:19, 31:12
**assertions** [3] - 28:10, 29:12, 30:14
**asserts** [2] - 21:5, 32:6
**associated** [1] - 18:17
**assumption** [1] - 19:20
**Atlantic** [1] - 19:21
**atrocious** [1] - 18:4
**attaching** [1] - 20:25
**attention** [1] - 44:14
**attorney** [2] - 4:2, 32:23
**attorneys** [2] - 32:15, 32:24

**attributed** [2] - 11:13, 12:13
**audience** [1] - 27:6
**auspices** [1] - 42:24
**authority** [1] - 10:12
**automatically** [1] - 6:4
**avenue** [1] - 37:3
**Avenue** [1] - 55:24
**aware** [6] - 33:15, 33:16, 42:13, 44:18, 51:1, 53:25
**awareness** [2] - 22:10, 23:11

**B**

**backdrop** [2] - 48:17, 48:22
**background** [1] - 51:12
**backtrack** [1] - 21:4
**bad** [4] - 4:10, 21:21, 24:24, 37:18
**Band** [1] - 43:7
**Band-aids** [1] - 43:7
**bar** [5] - 43:24, 44:2, 44:10, 44:11, 51:24
**bare** [1] - 29:16
**barely** [1] - 35:14
**barred** [8] - 10:2, 10:6, 11:21, 15:15, 33:9, 33:19, 33:20, 43:24
**based** [12] - 5:11, 8:15, 9:14, 15:10, 22:3, 24:17, 27:7, 29:10, 29:19, 33:17, 36:15, 52:7
**basic** [2] - 16:10, 38:11
**basis** [10] - 5:22, 6:2, 6:4, 7:3, 27:21, 28:1, 28:16, 29:25, 30:1, 30:5
**batterer** [2] - 36:1, 42:9
**battery** [3] - 22:19, 23:22, 43:16
**Baumberger** [1] - 28:20
**bear** [1] - 35:4
**beat** [1] - 24:8
**became** [1] - 44:18
**become** [1] - 35:8
**begin** [1] - 35:12
**beginning** [5] - 33:7, 34:7, 35:6, 35:19, 46:2

**begun** [3] - 43:12, 45:1, 45:6
**behalf** [5] - 3:8, 3:12, 3:18, 4:14, 20:1
**behavior** [1] - 28:12
**Bell** [1] - 19:21
**benefit** [2] - 15:18, 19:6
**best** [2] - 52:23, 53:12
**better** [1] - 47:1
**between** [2] - 7:24, 49:5
**beyond** [10] - 18:3, 40:3, 40:10, 41:3, 43:19, 44:23, 45:21, 46:5, 47:24, 48:25
**bias** [2] - 6:24, 6:25
**big** [1] - 49:7
**bit** [1] - 39:23
**black** [1] - 12:5
**blood** [1] - 43:7
**board** [1] - 22:16
**boat** [1] - 15:9
**body** [2] - 39:20, 51:21
**bones** [1] - 29:16
**bounds** [4] - 18:3, 40:3, 40:11, 41:3
**breach** [5] - 4:17, 7:21, 8:3, 16:10, 38:9
**breath** [1] - 42:16
**brief** [5] - 5:17, 21:4, 23:5, 24:10, 28:5
**briefly** [2] - 4:18, 4:25
**bring** [3] - 7:10, 12:14, 53:24
**bronchitis** [1] - 3:22
**brought** [7] - 3:24, 3:22, 14:15, 18:10, 33:15, 44:14, 47:13
**brutal** [2] - 45:21, 47:8
**burden** [2] - 21:2, 34:18
**bus** [1] - 42:22

**C**

**C-I-T-A** [1] - 16:17
**California** [1] - 55:3
**CAMERON** [3] - 3:15, 32:20, 32:22
**Cameron** [18] - 3:15, 17:19, 24:6, 24:23, 25:9, 26:6, 26:15, 26:17, 27:20, 27:22, 32:14, 36:16, 36:17,

36:22, 37:16, 40:1, 48:2, 49:25
**Cameron's** [1] - 49:25
**campaign** [1] - 44:9
**Campbell** [1] - 20:6
**campus** [9] - 22:10, 23:11, 24:6, 26:16, 33:21, 43:2, 45:3, 46:13, 46:19
**campuses** [1] - 37:9
**Cane** [1] - 22:8
**Canes** [2] - 21:10, 23:8
**cannot** [7] - 4:23, 9:15, 13:2, 17:25, 19:10, 28:25, 48:20
**Carlson** [1] - 28:5
**carried** [1] - 44:9
**cartoon** [1] - 43:5
**cartoons** [3] - 43:3, 43:4
**case** [34] - 3:4, 6:8, 6:21, 6:23, 7:5, 7:7, 7:14, 7:15, 7:20, 9:25, 11:25, 12:9, 12:10, 13:11, 14:2, 16:18, 18:6, 18:12, 18:20, 19:3, 19:11, 23:5, 24:10, 37:13, 37:21, 47:19, 47:21, 51:1, 52:15, 52:23, 53:21, 54:1, 54:15
**cases** [15] - 5:5, 5:10, 5:16, 7:25, 8:7, 11:17, 18:6, 18:10, 18:17, 18:19, 18:21, 18:22, 34:2, 37:3, 46:18
**caught** [1] - 45:3
**causing** [1] - 49:15
**CCing** [1] - 43:9
**ceases** [1] - 20:22
**cents** [1] - 32:25
**ceremony** [1] - 26:21
**certain** [3] - 23:24, 41:13, 53:22
**certainly** [2] - 12:20, 32:14
**certificate** [3] - 38:13, 38:18, 39:8
**certify** [1] - 55:17
**challenged** [1] - 8:2
**chance** [1] - 36:7
**changing** [2] - 37:4, 53:12
**character** [5] - 18:2, 40:2, 40:9, 40:10, 41:3
**characterizing** [1] -

29:2
**charge** [3] - 8:24, 25:16, 34:13
**charged** [1] - 26:7
**charges** [2] - 20:9, 20:17
**child** [1] - 45:8
**Chinese** [1] - 45:25
**Christopher** [1] - 3:12
**church** [1] - 18:23
**circle** [1] - 4:17
**Circuit** [8] - 5:15, 6:6, 6:9, 9:16, 14:16, 16:16, 16:19, 17:2
**circuit** [1] - 5:2
**circumstance** [1] - 30:16
**circumstances** [6] - 24:1, 30:6, 30:15, 45:17, 47:23, 47:24
**Cita** [2] - 16:17, 17:1
**citation** [2] - 20:2, 20:11
**cited** [8] - 5:17, 11:25, 18:6, 18:21, 23:5, 24:10, 27:21, 28:6
**citing** [3] - 19:21, 21:18, 31:7
**citizen** [1] - 52:11
**civil** [6] - 27:19, 27:21, 28:7, 28:15, 38:13, 38:19
**Civil** [1] - 6:19
**civilized** [1] - 18:4
**claim** [36] - 4:17, 4:18, 4:19, 4:22, 5:7, 5:11, 7:1, 7:21, 7:22, 8:3, 8:5, 9:8, 9:15, 9:19, 10:17, 10:18, 11:20, 12:14, 12:23, 12:24, 13:6, 13:7, 13:20, 14:15, 15:7, 15:11, 16:10, 19:1, 19:23, 20:12, 25:21, 29:1, 33:5, 34:11, 34:19, 38:9
**claiming** [1] - 16:5
**claims** [19] - 4:21, 4:22, 4:23, 4:24, 4:25, 5:20, 7:7, 9:18, 13:13, 13:25, 15:8, 18:8, 22:22, 28:3, 30:10, 33:4, 33:17, 52:5, 52:8
**class** [1] - 43:10
**classic** [1] - 7:7
**classrooms** [1] - 45:1

**clear** [25] - 4:23, 5:2, 5:9, 5:18, 5:23, 7:13, 7:16, 8:19, 9:16, 9:19, 11:1, 11:6, 12:1, 12:7, 14:3, 14:13, 15:24, 16:14, 17:14, 17:23, 41:5, 41:10, 41:14, 42:20, 53:8

**cleared** [2] - 34:7, 38:23

**clearer** [1] - 44:6

**clearly** [2] - 7:6, 16:6

**clerical** [1] - 38:23

**client** [2] - 44:13, 50:9

**close** [4] - 15:15, 18:20, 19:4, 19:16

**closer** [2] - 33:3, 33:4

**Club** [1] - 20:7

**co** [1] - 36:6

**co-signed** [1] - 36:6

**code** [1] - 34:6

**coin** [1] - 13:2

**colleague** [2] - 37:5, 37:7

**colleagues** [1] - 35:25

**college** [3] - 35:8, 37:9, 49:19

**colleges** [1] - 52:19

**Columbia** [1] - 6:8

**comment** [7] - 11:15, 12:13, 15:21, 23:12, 27:4, 45:16, 45:19

**commented** [3] - 26:24, 27:15, 33:14

**comments** [7] - 10:13, 14:21, 15:13, 15:17, 15:21, 48:12, 48:15

**committed** [2] - 20:9, 20:17

**common** [1] - 19:23

**commonly** [1] - 45:15

**communicated** [3] - 24:13, 24:14, 24:17

**communication** [1] - 21:13

**communications** [2] - 24:11, 49:5

**community** [2] - 18:4, 24:21

**complaint** [69] - 4:16, 5:5, 6:17, 6:23, 7:17, 10:4, 10:5, 10:7, 11:11, 11:21, 13:3, 13:6, 13:10, 14:7, 14:18, 16:9, 16:12,

16:13, 16:23, 17:1, 19:17, 19:20, 21:5, 22:3, 23:15, 24:18, 25:2, 25:5, 25:22, 26:2, 26:8, 26:11, 26:18, 28:1, 28:10, 29:4, 29:15, 31:8, 31:12, 31:19, 31:20, 31:22, 32:4, 32:7, 33:23, 37:6, 37:14, 37:22, 38:3, 38:12, 38:17, 38:21, 39:12, 39:20, 40:22, 40:23, 40:24, 41:4, 42:1, 43:23, 44:5, 44:7, 48:24, 50:8, 50:24, 51:4, 51:12, 54:7

**complete** [2] - 38:12, 38:18

**compliance** [1] - 38:19

**complies** [1] - 38:13

**comply** [1] - 8:9

**comport** [1] - 39:13

**computer** [2] - 46:7, 46:8

**conceded** [1] - 53:2

**concedes** [1] - 38:8

**concept** [1] - 46:8

**concern** [5] - 31:6, 31:11, 31:16, 32:2, 32:5

**concerning** [1] - 19:25

**concerns** [1] - 23:12

**concluded** [1] - 55:14

**conclusions** [1] - 5:9

**conclusory** [4] - 28:4, 39:21, 39:23, 51:10

**conduct** [16] - 10:21, 11:12, 15:1, 18:1, 28:23, 29:11, 29:14, 34:6, 40:2, 40:6, 40:8, 40:12, 41:10, 45:11, 53:4, 53:5

**conducted** [2] - 25:8, 45:13

**conference** [1] - 54:9

**conflict** [1] - 50:11

**conjecture** [1] - 37:5

**connected** [2] - 42:12, 42:14

**consensual** [1] - 36:18

**Consent** [3] - 21:10, 22:8, 23:8

**consent** [3] - 36:21, 47:4, 47:7

**consequences** [1] - 9:10

**consider** [2] - 10:8, 53:20

**considered** [1] - 45:12

**conspiracy** [9] - 27:19, 27:21, 28:3, 28:7, 28:13, 28:15, 34:13, 34:19

**conspired** [1] - 34:16

**constant** [1] - 42:7

**constantly** [1] - 54:3

**constitute** [1] - 11:12

**constituted** [1] - 27:20

**construction** [1] - 16:9

**consult** [1] - 54:8

**contact** [1] - 42:7

**contain** [1] - 5:6

**contains** [2] - 19:18, 21:16

**contempt** [2] - 20:10, 20:18

**contention** [1] - 43:21

**context** [3] - 5:25, 7:12, 8:19

**continually** [1] - 42:9

**continue** [1] - 49:10

**continued** [2] - 43:16, 54:12

**continuing** [2] - 14:11, 14:17

**contract** [8] - 4:17, 7:21, 7:24, 8:3, 16:10, 38:9, 49:13

**contradiction** [1] - 32:10

**contrary** [1] - 32:8

**contributed** [1] - 25:15

**control** [1] - 49:17

**conversation** [2] - 36:16, 36:20

**convey** [1] - 22:15

**cool** [1] - 49:10

**Coral** [1] - 26:12

**corners** [1] - 41:4

**Corporation** [2] - 19:21, 21:19

**correct** [4] - 17:18, 17:20, 39:7, 39:9

**corrected** [1] - 39:14

**corresponded** [1] - 23:19

**correspondence** [3] - 42:10, 49:4, 49:20

**corresponding** [2] -

21:16, 22:5

**cough** [1] - 3:24

**coughing** [1] - 3:23

**Counsel** [1] - 39:4

**counsel** [2] - 3:4, 38:25

**count** [20] - 16:12, 19:10, 24:3, 28:17, 28:19, 29:6, 30:8, 30:18, 30:24, 30:25, 40:14, 41:9, 50:10, 50:16, 51:5, 51:13, 51:21, 52:24, 52:25, 53:1

**Count** [16] - 7:22, 16:8, 17:6, 17:15, 17:17, 17:18, 17:20, 24:3, 27:16, 38:9, 39:24, 40:5, 40:13, 50:6, 50:24, 53:2

**counter** [1] - 11:6

**country** [3] - 7:16, 8:23, 36:25

**counts** [18] - 12:25, 14:1, 15:11, 17:6, 17:24, 28:7, 29:5, 29:20, 30:19, 30:22, 32:25, 35:10, 38:11, 39:20, 39:22, 39:25, 52:21, 53:4

**couple** [1] - 41:21

**course** [9] - 6:9, 6:22, 10:25, 12:16, 15:18, 39:21, 51:8, 51:11, 52:3

**Court** [35] - 3:1, 5:2, 5:8, 5:15, 6:16, 6:23, 8:13, 8:16, 9:16, 10:7, 10:11, 11:10, 15:4, 16:14, 17:6, 18:21, 19:2, 22:1, 24:1, 24:10, 28:6, 28:16, 28:21, 28:25, 29:8, 29:9, 38:25, 39:1, 39:7, 51:14, 53:9, 53:20, 55:23, 55:23

**court** [4] - 6:10, 7:14, 9:2, 28:23

**COURT** [63] - 3:2, 3:6, 3:10, 3:14, 3:17, 3:20, 3:25, 4:6, 4:12, 7:17, 8:8, 8:17, 11:22, 17:4, 17:7, 17:12, 17:14, 17:17, 19:12, 19:15, 21:20, 23:2, 24:22, 25:17, 29:17, 29:24, 30:19, 30:22, 31:1, 32:13, 32:21, 34:23, 35:2, 37:20, 37:24, 38:2, 38:5,

38:8, 38:17, 39:3, 39:16, 41:7, 41:19, 41:21, 43:21, 44:3, 45:11, 46:21, 48:1, 48:24, 50:2, 50:5, 50:15, 50:21, 50:23, 53:15, 53:17, 53:24, 54:21, 54:23, 55:1, 55:6, 55:13

**Court's** [1] - 24:17

**court-issued** [1] - 9:2

**COURTROOM** [1] - 3:3

**courtroom** [1] - 34:12

**Courts** [1] - 5:18

**courts** [8] - 5:23, 6:5, 6:6, 6:19, 8:18, 17:22, 18:8, 35:5

**covered** [2] - 32:16, 32:24, 43:6

**create** [1] - 43:4

**crime** [2] - 20:9, 20:17

**criminal** [3] - 7:14, 20:5

## D

**damage** [1] - 20:1

**damages** [1] - 20:5

**date** [3] - 11:21, 14:15, 36:9

**DATE** [1] - 55:22

**dated** [2] - 10:4, 39:11

**David** [15] - 3:9, 22:17, 23:20, 24:16, 25:23, 26:1, 26:19, 27:12, 31:24, 35:11, 36:7, 36:9, 37:11, 38:1, 52:10

**days** [6] - 53:13, 53:15, 53:16, 53:17, 54:7, 54:10

**DCA** [1] - 29:7

**deadlines** [1] - 54:18

**deal** [1] - 39:1

**dealing** [2] - 40:14, 52:17

**dean** [2] - 36:11, 46:15

**deans** [1] - 36:11

**dear** [2] - 37:5, 37:7

**December** [1] - 11:20, 22:9, 25:6, 25:14, 25:25, 33:10, 33:18

**decency** [6] - 18:3, 40:4, 40:11, 41:4, 43:19, 46:6
**decide** [2] - 21:22, 50:3
**decides** [1] - 37:1
**decision** [5] - 6:8, 16:16, 16:18, 17:1, 21:25
**defamation** [28] - 4:22, 9:18, 9:19, 10:17, 11:9, 13:24, 14:16, 15:13, 19:23, 20:12, 20:13, 24:3, 25:21, 28:17, 29:1, 29:6, 29:24, 33:5, 33:17, 33:24, 34:14, 34:18, 44:9, 44:13, 44:19, 44:21, 45:2, 45:7
**defamatory** [28] - 9:25, 10:11, 10:15, 11:3, 11:12, 12:12, 12:17, 12:22, 13:4, 13:15, 14:4, 14:20, 15:3, 15:13, 15:21, 19:25, 20:21, 20:25, 27:20, 28:15, 28:23, 29:3, 29:8, 29:20, 29:25, 41:24, 51:22
**defame** [1] - 27:23
**defect** [1] - 6:3
**defendant** [4] - 3:19, 4:2, 20:22, 53:18
**Defendant** [1] - 24:6
**defendant's** [2] - 20:23, 28:6
**defendants** [5] - 3:12, 4:14, 38:10, 51:14, 52:1
**defendants'** [1] - 44:7
**defenses** [1] - 25:9
**deficiencies** [2] - 39:10, 51:8
**deficient** [4] - 4:20, 16:13, 39:12, 52:5
**definitely** [1] - 54:16
**degree** [5] - 18:2, 40:3, 40:10, 41:3, 46:21
**delay** [1] - 25:14
**delayed** [1] - 54:4
**deliberate** [2] - 5:19, 9:12
**denied** [1] - 5:13
**departed** [2] - 8:5, 8:14
**Department** [2] - 26:12, 52:17

**department** [2] - 25:11, 25:15
**deposed** [1] - 54:21
**DEPUTY** [1] - 3:3
**dereliction** [1] - 23:14
**describe** [3] - 40:24, 41:2, 43:17
**described** [4] - 40:2, 40:9, 40:12, 41:10
**describing** [1] - 40:16
**designed** [1] - 5:14
**despite** [3] - 22:21, 23:6, 27:24
**detach** [1] - 11:18
**detail** [5] - 34:4, 35:18, 48:11, 51:17, 52:17
**detailed** [1] - 40:6
**determination** [2] - 20:23, 22:2
**determine** [2] - 5:4, 10:13
**determined** [1] - 9:9
**developed** [2] - 5:1, 19:3
**Diaz** [1] - 55:22
**DIAZ** [1] - 55:22
**difference** [2] - 16:3, 49:7
**different** [5] - 3:23, 15:2, 35:7, 42:8, 46:8
**differentiate** [1] - 41:15
**differentiation** [1] - 30:12
**difficult** [2] - 48:7, 51:23
**difficulties** [1] - 6:24
**difficulty** [1] - 48:1
**diligence** [3] - 24:25, 25:1, 48:3
**direct** [1] - 11:10
**directed** [1] - 4:16
**disadvantage** [1] - 6:12
**disagree** [2] - 8:5, 40:20
**disciplinary** [6] - 7:11, 8:1, 8:19, 8:22, 22:16, 25:7
**disclosed** [3] - 13:22, 14:5, 27:6
**disclosing** [1] - 13:8
**disclosure** [3] - 31:4, 32:9, 50:10
**discovery** [8] - 35:22, 44:20, 50:18, 54:11, 54:13, 54:15,

54:16, 54:20
**discretion** [1] - 16:23
**discriminated** [2] - 7:3, 52:14
**discrimination** [3] - 5:21, 8:15, 15:10
**discussed** [1] - 31:5
**discussing** [1] - 27:10
**discussion** [1] - 6:17
**discussions** [2] - 24:23, 52:24
**disgrace** [3] - 20:11, 20:19, 46:1
**dismiss** [18] - 4:1, 4:15, 6:1, 8:11, 16:21, 16:23, 16:25, 17:6, 19:9, 19:18, 21:22, 25:20, 28:7, 28:16, 30:17, 44:7, 50:24, 53:22
**dismissal** [3] - 16:14, 50:7, 50:16
**dismissed** [1] - 4:24
**dismissible** [1] - 7:6
**dispositive** [1] - 12:2
**dispute** [2] - 12:9, 24:1
**disseminate** [2] - 43:1, 46:18
**dissemination** [1] - 36:5
**dissemination** [2] - 40:15, 41:13
**distracting** [1] - 4:9
**distress** [20] - 17:10, 17:22, 18:9, 18:15, 28:19, 28:22, 29:2, 29:10, 29:19, 29:22, 30:1, 30:6, 30:9, 34:1, 34:9, 34:15, 34:19, 39:25, 41:9, 53:4
**district** [2] - 6:6, 9:16
**District** [3] - 18:5, 28:20, 55:23
**distrust** [2] - 20:10, 20:18
**Docket** [3] - 39:10, 39:14, 39:16
**doctrine** [1] - 14:17
**Doe** [2] - 6:8, 6:10
**done** [8] - 6:20, 9:6, 18:18, 18:22, 47:10, 49:1, 54:16
**doubt** [1] - 19:7
**down** [3] - 16:17, 33:12, 41:1
**Dr** [40] - 20:12, 20:15, 21:4, 21:6, 21:8, 22:4, 22:7,

23:18, 24:3, 24:4, 24:13, 24:19, 26:3, 26:22, 27:4, 27:14, 27:20, 27:22, 28:11, 28:17, 28:19, 29:6, 29:13, 30:11, 30:20, 30:23, 31:9, 31:14, 31:18, 32:7, 32:11, 32:23, 34:16, 35:22, 40:14, 45:11, 48:2, 48:3, 48:5, 54:23
**drinking** [2] - 47:4, 47:6
**drive** [1] - 42:5
**drops** [1] - 3:24
**due** [8] - 8:9, 8:20, 8:21, 25:1, 25:14, 28:7, 41:12, 48:3
**during** [2] - 26:21, 43:14
**duty** [7] - 10:12, 21:12, 21:15, 21:16, 21:17, 22:4, 23:14
**Dwon** [1] - 3:18

## E

**e-mail** [1] - 42:10
**e-mails** [5] - 42:5, 42:6, 44:24, 49:19
**easier** [1] - 32:18
**Education** [1] - 21:9
**education** [1] - 5:14
**Education's** [1] - 52:17
**educational** [1] - 5:25
**effect** [1] - 52:20
**efforts** [1] - 4:16
**either** [1] - 28:2
**element** [3] - 15:11, 32:2, 32:8
**elements** [6] - 8:21, 29:16, 31:2, 31:10, 32:1, 51:20
**Eleventh** [7] - 5:15, 6:5, 9:15, 14:16, 16:16, 16:18, 17:2
**eliminates** [1] - 20:24
**emotional** [22] - 11:16, 11:17, 17:10, 17:22, 18:9, 18:15, 28:18, 28:22, 29:2, 29:10, 29:19, 29:22, 30:1, 30:6, 30:9, 33:25, 34:9, 34:15, 34:19, 39:25, 41:9, 53:3

**employer** [1] - 10:24
**employment** [2] - 12:17, 15:18
**encompasses** [1] - 20:16
**encouraged** [1] - 10:25
**end** [4] - 35:19, 37:13, 37:14, 44:17
**engaged** [6] - 27:22, 28:2, 28:11, 29:13, 40:1, 40:8
**enhancing** [1] - 43:12
**ensuing** [1] - 20:2
**entering** [1] - 26:16
**entire** [2] - 4:16, 28:10
**entitled** [1] - 55:19
**Entry** [3] - 39:10, 39:14, 39:16
**equal** [1] - 5:13
**Eric** [2] - 3:11, 4:13
**erroneous** [1] - 35:12
**error** [2] - 8:6, 38:23
**essence** [1] - 13:24
**essential** [1] - 15:11
**essentially** [3] - 4:15, 9:7, 30:9
**established** [1] - 11:6
**et** [1] - 3:4
**etcetera** [4] - 14:9, 15:1, 40:4, 40:11
**event** [1] - 12:8
**events** [1] - 33:21
**evidence** [1] - 6:25
**evil** [5] - 36:2, 42:9, 47:8, 47:25
**exact** [1] - 16:19
**exactly** [2] - 16:25, 29:23
**example** [4] - 5:19, 6:7, 39:24, 41:8
**examples** [1] - 18:21
**except** [1] - 50:24
**excited** [1] - 47:21
**excuse** [1] - 34:18
**executed** [1] - 39:8
**Exhibit** [1] - 25:4
**exhibit** [1] - 25:5
**exist** [3] - 20:22, 36:3, 37:4
**expand** [1] - 14:1
**expanding** [1] - 14:14
**expelled** [1] - 43:10
**experience** [2] -

35:9, 36:12
**explain** [4] - 46:9, 46:10, 46:15
**explanations** [1] - 5:24
**explicit** [1] - 23:7
**explicitly** [1] - 23:17
**expose** [1] - 47:12
**expressed** [2] - 21:2, 23:16
**expressly** [1] - 6:1
**extending** [1] - 14:15
**extreme** [5] - 18:2, 34:2, 40:3, 40:10, 41:3

## F

**face** [4] - 5:7, 10:2, 10:7, 17:25
**Facebook** [3] - 33:8, 33:11
**fact** [12] - 6:5, 6:11, 6:22, 7:23, 9:11, 11:8, 13:16, 24:12, 38:17, 45:12, 47:1, 49:2
**facts** [29] - 9:13, 13:8, 13:19, 13:21, 14:5, 14:6, 15:25, 19:5, 19:11, 21:24, 22:1, 22:3, 24:17, 25:3, 25:9, 25:10, 30:12, 30:17, 31:3, 31:4, 32:10, 36:8, 37:13, 37:14, 40:21, 51:12, 51:20
**factual** [9] - 5:6, 7:2, 19:18, 19:20, 23:16, 28:1, 28:10, 29:14, 30:14
**faculty** [2] - 24:20, 25:25
**fail** [3] - 7:1, 9:21, 29:22
**failed** [2] - 23:16, 23:17
**fails** [1] - 28:1
**failure** [1] - 8:9
**fair** [1] - 35:12
**fairly** [1] - 5:1
**faith** [9] - 21:1, 21:13, 21:21, 23:18, 24:13, 24:19, 24:24
**fall** [3] - 14:7, 27:17, 28:4
**false** [12] - 10:20, 13:4, 13:15, 14:3, 14:8, 16:4, 18:24, 19:24, 23:23, 31:9,

32:8, 50:9
**falsely** [1] - 11:5
**family** [2] - 45:5, 46:4
**fantastic** [1] - 47:23
**far** [10] - 43:19, 44:23, 45:21, 48:13, 48:15, 48:21, 48:25, 50:2, 54:13
**fatal** [2] - 38:20, 52:8
**father** [1] - 45:24
**fault** [1] - 19:25
**favor** [1] - 6:12
**favorable** [2] - 14:19, 19:7
**FCRR** [1] - 55:22
**felony** [2] - 20:6, 20:16
**female** [2] - 6:12, 43:4
**few** [1] - 3:22
**field** [1] - 48:18
**fight** [1] - 49:16
**file** [2] - 51:3, 53:1
**filed** [7] - 10:6, 26:15, 33:1, 34:4, 34:5, 39:12, 43:23
**filing** [3] - 11:21, 26:17, 42:1
**finally** [1] - 45:9
**findings** [2] - 22:15, 23:20
**fine** [3] - 3:25, 19:15, 32:21
**fire** [1] - 49:6
**fired** [5] - 10:21, 10:23, 11:5, 14:25, 49:8
**fires** [1] - 54:3
**first** [10] - 10:1, 25:5, 25:24, 36:12, 38:20, 43:13, 43:14, 43:17, 44:3, 47:19
**five** [2] - 33:7, 53:25
**fix** [1] - 16:24
**fixed** [2] - 17:25, 51:9
**flawed** [2] - 45:14, 48:6
**Floor** [1] - 55:24
**Florida** [14] - 7:15, 8:7, 8:18, 8:22, 17:23, 18:1, 18:6, 18:8, 18:14, 19:3, 20:4, 24:21, 28:20, 55:24
**focus** [1] - 37:24
**follow** [2] - 7:18, 7:25
**followed** [1] - 6:8
**following** [1] - 16:19

**follows** [1] - 7:9
**Force** [1] - 21:9
**force** [5] - 22:8, 23:8, 42:25, 47:13, 49:11
**forced** [1] - 24:5
**foregoing** [1] - 55:17
**forgot** [1] - 39:3
**former** [2] - 21:6, 22:13
**forth** [3] - 5:3, 27:25, 38:3
**forum** [3] - 23:1, 31:14, 31:18
**Founder** [2] - 21:10, 22:8
**four** [1] - 41:4
**Fourth** [1] - 29:7
**FPR** [1] - 55:22
**frankly** [3] - 33:15, 35:21, 41:18
**fraud** [1] - 18:9
**frequent** [1] - 31:23
**front** [3] - 11:11, 37:16, 43:5
**full** [2] - 8:25, 45:23
**fully** [1] - 42:13
**fundamentals** [1] - 16:10
**funding** [2] - 47:14, 49:11
**furtherance** [1] - 28:12
**future** [1] - 50:20

## G

**Gables** [1] - 26:12
**Galbreath** [1] - 24:9
**gatekeeper** [3] - 10:11, 15:4, 19:2
**Gender** [2] - 21:11, 22:13
**gender** [6] - 6:15, 6:24, 6:25, 7:4, 8:10, 8:15
**gender-based** [1] - 8:15
**general** [5] - 20:20, 28:4, 41:22, 43:22, 51:10
**generally** [1] - 16:8
**genius** [1] - 48:19
**given** [2] - 7:1, 36:7
**gloss** [1] - 14:7
**GMAT** [1] - 46:10
**graduate** [1] - 46:9
**graduated** [1] - 9:1
**graduates** [1] - 45:10
**graduation** [4] - 9:4,

26:21, 46:2, 46:4
**grant** [1] - 50:23
**granted** [2] - 28:6, 39:17
**grapple** [1] - 49:3
**gravity** [1] - 44:18
**Gray** [1] - 20:11
**GRE** [1] - 48:19
**great** [2] - 53:14, 53:16
**grounds** [4] - 20:14, 23:11, 27:15, 28:9
**group** [1] - 42:8
**guess** [2] - 38:11, 49:13
**guilty** [1] - 43:18
**guise** [1] - 36:4
**gun** [1] - 6:25

## H

**hand** [2] - 47:20
**handbook** [2] - 7:23, 35:19
**handled** [1] - 8:2
**hang** [1] - 42:15
**harassment** [5] - 5:12, 18:10, 18:16, 44:22
**hard** [2] - 41:14, 42:5
**harmless** [1] - 8:6
**hassle** [1] - 49:15
**hat** [1] - 42:15
**hatred** [2] - 20:10, 20:18
**hats** [1] - 46:3
**Healy** [1] - 24:9
**hear** [3] - 4:2, 17:8
**heard** [3] - 8:20, 34:8, 37:15
**hearing** [12] - 7:11, 25:7, 36:12, 41:13, 43:13, 43:14, 43:15, 43:17, 46:14, 49:23, 49:24, 50:1
**hearings** [1] - 8:22
**held** [1] - 6:23
**help** [2] - 6:22, 47:20
**herald** [1] - 23:10
**hereby** [1] - 55:17
**high** [5] - 18:14, 18:19, 18:25, 19:4, 46:10
**highly** [1] - 31:5
**himself** [1] - 48:22
**hinge** [1] - 46:21
**history** [2] - 18:13, 47:18
**hit** [1] - 46:18

**holds** [1] - 41:1
**Honor** [36] - 3:11, 3:15, 3:21, 4:4, 4:13, 6:7, 7:19, 9:24, 12:4, 14:10, 16:7, 17:5, 17:9, 17:21, 19:13, 29:23, 32:12, 32:22, 34:20, 34:22, 35:1, 35:3, 36:7, 39:5, 40:20, 41:1, 42:2, 44:16, 45:18, 49:24, 50:14, 53:19, 54:25, 55:10, 55:11, 55:12
**hook** [1] - 12:6
**horrible** [2] - 18:16, 18:22
**hours** [1] - 42:12
**huge** [1] - 35:4
**HUGGINS** [15] - 3:18, 19:13, 19:17, 21:24, 23:4, 25:1, 25:18, 29:23, 30:2, 30:21, 30:24, 31:2, 32:12, 54:25, 55:12
**Huggins** [3] - 3:18, 17:8, 41:7
**human** [1] - 46:5
**hundred** [2] - 42:8, 53:21
**Hurricane** [10] - 23:10, 24:14, 25:5, 25:13, 26:9, 27:10, 31:13, 31:17, 31:21, 33:18
**Hurricanes** [1] - 22:9
**hypothetically** [1] - 44:11

## I

**identified** [2] - 52:10, 52:12
**identifies** [2] - 33:6
**identify** [1] - 11:23
**ignored** [1] - 37:10
**immediately** [3] - 7:10, 33:12, 36:15
**impact** [1] - 54:18
**implications** [2] - 10:1, 39:7
**implicitly** [1] - 23:17
**important** [1] - 15:5
**importantly** [4] - 11:19, 12:13, 14:22, 15:15
**improper** [1] - 9:12
**imputes** [1] - 20:5
**Inc** [1] - 6:11
**incident** [1] - 33:22

include [1] - 27:9
including [6] - 5:10, 22:5, 27:8, 31:17, 52:3, 54:9
inconsistent [3] - 13:17, 13:19, 14:6
incorporate [5] - 39:21, 51:11, 52:21, 52:22
Incorporated [1] - 20:2
incorporating [2] - 27:24, 40:7
independent [1] - 25:7
indicate [1] - 38:10
indicates [1] - 7:17
indifference [2] - 5:19, 9:12
indisputable [1] - 10:6
Industries [1] - 28:5
infamous [2] - 20:9, 20:17
inferable [1] - 24:12
inference [3] - 6:13, 7:3, 15:12
inferences [2] - 5:8, 9:17
inferred [2] - 6:4, 24:11
infliction [20] - 17:10, 17:21, 18:9, 18:15, 28:18, 28:22, 29:2, 29:10, 29:19, 29:21, 30:1, 30:5, 30:8, 33:25, 34:8, 34:15, 34:19, 39:25, 41:9, 53:3
information [10] - 31:24, 40:15, 40:16, 41:14, 43:1, 45:14, 46:19, 50:11, 51:14
injunction [3] - 49:23, 49:24, 50:1
inserted [1] - 26:25
Instagram [1] - 22:25
instance [2] - 51:5, 52:14
instances [2] - 12:6, 32:3
instead [2] - 21:1, 28:3
institution [1] - 46:9
insufficient [2] - 5:20, 17:25
intelligent [1] - 45:8
intended [1] - 35:6
intends [1] - 20:9
intentional [21] -

17:10, 17:21, 18:9, 18:15, 28:18, 28:22, 29:1, 29:9, 29:18, 29:21, 30:1, 30:5, 30:8, 33:25, 34:8, 34:14, 34:18, 39:25, 41:8, 44:22, 53:3
inter [1] - 49:18
interest [6] - 10:24, 21:12, 21:14, 21:16, 22:4, 22:6
interesting [1] - 52:16
interestingly [1] - 52:9
interrelation [1] - 22:19
interview [1] - 7:11
interviewed [1] - 26:3
interviews [1] - 42:21
intimate [2] - 22:19, 23:21
intolerable [1] - 18:4
inundated [1] - 54:1
invasion [14] - 4:22, 12:25, 13:6, 13:20, 15:23, 16:5, 30:25, 31:2, 31:10, 32:1, 32:11, 40:13, 50:6, 52:24
investigate [1] - 7:10
investigated [1] - 9:7
investigation [8] - 23:2, 23:4, 23:7, 25:7, 25:12, 45:13, 48:6, 53:7
investigations [1] - 6:20
involved [1] - 25:11
involvement [1] - 23:10
Iqbal [2] - 5:3, 7:1
irregularities [3] - 6:3, 9:11, 15:9
ISICOFF [18] - 3:11, 4:4, 4:7, 4:13, 7:19, 8:12, 8:18, 12:4, 17:5, 17:9, 17:13, 17:16, 17:18, 39:5, 53:19, 54:14, 54:22, 55:11
Isicoff [2] - 3:11, 4:14
issue [9] - 6:17, 21:20, 35:4, 37:20, 39:4, 41:23, 50:8, 51:2, 53:24
issued [2] - 9:2, 51:1
issues [4] - 39:19,

41:21, 50:2, 51:24
IX [18] - 5:14, 5:20, 6:20, 9:6, 9:15, 15:8, 15:11, 35:3, 35:10, 35:19, 36:19, 37:10, 37:18, 52:5, 52:8, 52:18, 52:21

J

Jackson [1] - 5:15
Jacksonville [1] - 20:6
January [8] - 10:5, 33:2, 42:3, 42:13, 42:14, 44:10, 44:11, 55:22
Jarzynka [1] - 23:6
JIA [3] - 3:3, 22:22, 23:20
Jia [22] - 3:9, 11:14, 12:18, 22:17, 24:17, 25:23, 26:1, 26:15, 26:16, 26:19, 26:25, 27:12, 31:25, 34:3, 34:10, 34:11, 35:11, 36:9, 37:11, 45:4, 52:10, 52:20
jobs [1] - 48:18
Johnson [1] - 18:5
Judge [2] - 6:7, 6:9
judges [1] - 53:25
judgment [2] - 8:4, 16:11
judicial [1] - 26:19
June [1] - 39:11, 39:14
jury [2] - 37:15, 37:17

K

Katharine [8] - 3:19, 9:22, 10:21, 11:2, 40:5, 40:8, 42:4, 42:18
Katherine [1] - 47:22
keep [3] - 14:14, 54:11, 54:19
keeps [1] - 53:12
Kennel [1] - 20:7
kick [1] - 35:24
kicked [1] - 37:3, 47:9
kid [3] - 37:3, 45:8, 48:21
kids [1] - 36:25
killing [1] - 48:21
kind [9] - 32:25,

36:12, 37:24, 39:18, 40:17, 46:19, 49:14, 50:21, 54:1
kinds [1] - 18:21
knight [2] - 42:24, 47:11
known [5] - 27:6, 44:8, 45:5, 45:15, 46:16
knows [3] - 6:16, 15:25, 35:4

L

lack [3] - 14:19, 28:7, 41:12
Lake [10] - 3:13, 4:15, 9:23, 11:9, 11:10, 12:11, 12:15, 12:22, 15:2, 15:20
Lake's [1] - 32:23
landmark [1] - 37:12
language [2] - 43:17, 43:18
last [4] - 30:24, 32:2, 33:20, 54:2
latter [1] - 54:2
law [14] - 4:25, 9:15, 11:6, 13:7, 13:12, 14:13, 18:1, 19:2, 19:23, 21:1, 23:25, 35:13, 44:8, 51:1
laws [1] - 49:19
lawsuit [3] - 33:2, 33:4, 33:7
lawyer [5] - 34:1, 36:14, 49:24, 49:25
lawyers [1] - 45:5
learned [2] - 44:15, 45:16
least [4] - 20:1, 27:10, 33:5, 51:2
leave [4] - 16:21, 50:25, 51:4, 51:7
lectern [1] - 45:3
lectures [1] - 45:2
left [1] - 54:16
legal [5] - 5:9, 15:23, 19:3, 21:18, 41:21
legally [1] - 45:20
legitimate [6] - 22:4, 31:6, 31:11, 31:16, 32:2, 32:5
lengthy [1] - 6:16
less [1] - 53:13
letter [3] - 37:5, 37:7, 46:15
letters [3] - 36:5, 43:9, 47:17

level [4] - 14:20, 18:11, 19:19, 45:25
liability [7] - 9:20, 10:17, 14:11, 14:13, 14:24, 25:12
liable [1] - 11:4
libel [1] - 20:15
libellous [1] - 20:8
liberal [1] - 16:8
light [5] - 14:18, 19:7, 33:15, 45:9, 45:12
like-minded [1] - 22:5
limitation [1] - 15:7
limitations [5] - 15:22, 33:9, 33:20, 41:23, 43:22
limping [1] - 43:6
listed [1] - 24:4
listen [1] - 45:22
local [5] - 26:2, 38:14, 38:20, 39:13, 54:23
Local [4] - 22:24, 26:2, 26:5, 31:13
longstanding [1] - 7:13
Lonnie [1] - 3:8
look [5] - 10:12, 16:3, 36:3, 37:11, 42:7
looking [5] - 12:10, 14:18, 19:7, 52:9, 53:20
lose [1] - 54:10
love [2] - 37:1, 47:16
Lynn [1] - 6:10

M

mail [1] - 42:10
mails [4] - 42:5, 42:6, 44:24, 49:19
main [1] - 54:21
majority [2] - 46:17
male [2] - 6:12, 26:1
malice [5] - 20:20, 20:25, 21:3, 23:17, 24:11
malicious [6] - 13:4, 13:15, 14:4, 14:9, 15:1, 16:4
maliciously [1] - 11:5
man [3] - 4:10, 52:12, 52:14
manner [1] - 8:1
Marker [1] - 20:2

**material** [4] - 15:3, 15:5, 38:24
**matter** [18] - 5:6, 10:20, 10:21, 13:7, 13:12, 13:18, 21:13, 21:16, 27:3, 27:5, 27:12, 31:5, 31:6, 31:10, 31:16, 32:2, 32:4, 55:19
**matters** [3] - 8:19, 11:16, 26:24
**mean** [34] - 13:5, 14:9, 15:1, 24:24, 37:12, 37:13, 40:13, 40:25, 41:17, 42:4, 42:5, 42:7, 42:11, 42:14, 42:20, 43:25, 44:7, 44:10, 44:12, 44:19, 44:23, 45:14, 45:21, 48:11, 48:14, 48:16, 49:23, 51:1, 52:9, 52:10, 52:12, 53:25
**mean-spirited** [3] - 13:5, 14:9, 15:1
**means** [2] - 8:20, 43:11
**media** [8] - 13:11, 22:25, 24:14, 24:15, 31:13, 31:17, 31:23, 48:11
**meet** [4] - 9:25, 15:24, 18:14, 34:14
**meeting** [2] - 18:25, 19:4
**member** [5] - 21:6, 21:8, 22:7, 23:7, 23:8
**members** [1] - 25:25
**memos** [2] - 49:19
**mention** [3] - 12:5, 14:12, 17:10
**mentioned** [5] - 11:15, 12:21, 25:23, 41:7, 51:16
**mere** [1] - 24:12
**merely** [1] - 5:18
**mess** [1] - 35:1
**met** [7] - 18:15, 19:8, 19:11, 34:2, 34:17, 36:11
**Miami** [43] - 3:4, 3:13, 4:14, 9:3, 9:21, 10:16, 10:19, 11:3, 12:24, 14:23, 15:19, 22:9, 22:21, 22:24, 23:9, 23:11, 24:14, 24:20, 25:4, 25:5, 25:13, 26:9, 27:2, 27:9, 31:12, 31:17, 31:21, 33:18, 35:20,

36:4, 40:6, 40:15, 42:18, 42:22, 42:25, 45:1, 46:24, 47:12, 47:14, 52:19, 55:24, 55:24
**Miami's** [3] - 21:9, 23:19, 32:23
**microphone** [2] - 19:15, 32:19
**middle** [2] - 45:3, 50:1
**Middle** [1] - 18:5
**Mile** [1] - 20:2
**mind** [1] - 19:13
**minded** [1] - 22:5
**minutes** [1] - 17:11
**miss** [1] - 15:9
**missed** [2] - 45:23, 48:19
**missing** [1] - 37:16
**missteps** [1] - 6:11
**misused** [1] - 35:11
**modification** [2] - 26:20, 27:1
**moment** [7] - 7:6, 11:10, 16:22, 29:17, 36:7, 47:20, 53:20
**moments** [1] - 45:10
**moral** [1] - 21:18
**Morgan** [1] - 31:7
**morning** [7] - 3:11, 3:14, 3:15, 3:17, 3:18, 3:20, 4:13
**morphed** [1] - 35:7
**Morrison** [1] - 31:7
**most** [10] - 8:23, 14:18, 18:18, 19:7, 34:2, 40:23, 46:19
**mother** [1] - 45:24
**motion** [18] - 8:11, 16:21, 16:22, 16:25, 19:18, 21:22, 25:20, 28:7, 30:16, 34:5, 35:13, 39:6, 39:9, 39:17, 44:7, 50:23, 51:3, 54:1
**motions** [1] - 4:1
**move** [3] - 7:5, 16:7, 19:9
**moved** [1] - 4:15
**moving** [7] - 17:17, 17:19, 27:19, 53:22, 54:11, 54:15, 54:19
**MR** [46] - 3:8, 3:11, 3:21, 4:4, 4:7, 4:13, 7:19, 8:12, 8:18, 12:4, 17:5, 17:9, 17:13, 17:16, 17:18, 34:25, 35:3, 37:23, 37:25,

38:4, 38:7, 38:16, 38:22, 39:5, 40:20, 41:17, 41:20, 42:2, 44:1, 44:6, 45:18, 46:24, 48:14, 48:25, 50:4, 50:13, 50:17, 50:22, 53:11, 53:16, 53:19, 54:14, 54:22, 55:3, 55:10, 55:11
**MS** [18] - 3:15, 3:18, 19:13, 19:17, 21:24, 23:4, 25:1, 25:18, 29:23, 30:2, 30:21, 30:24, 31:2, 32:12, 32:20, 32:22, 54:25, 55:12
**multiple** [1] - 5:24
**must** [9] - 5:5, 5:12, 7:1, 14:15, 18:1, 27:6, 29:22, 31:4, 43:10
**muster** [1] - 41:1
**mutually** [2] - 13:16, 14:5

# N

**name** [5] - 11:24, 12:3, 12:6, 25:23, 26:5
**named** [3] - 12:18, 17:14
**National** [2] - 21:6, 22:13
**natural** [1] - 52:11
**necessarily** [1] - 29:21
**need** [6] - 6:20, 40:19, 51:13, 52:15, 53:4, 53:10
**needs** [3] - 32:9, 47:9, 50:19
**negate** [1] - 30:7
**negligence** [1] - 20:1
**never** [5] - 18:15, 29:25, 36:20, 42:16
**nevertheless** [1] - 20:13
**new** [4] - 30:13, 49:9, 54:8, 55:7
**News** [4] - 22:24, 26:3, 26:5, 31:13
**news** [5] - 26:2, 31:23, 42:7, 42:8, 43:8
**newspaper** [4] - 10:14, 11:14, 12:11, 15:3
**next** [2] - 17:8, 55:6
**night** [2] - 47:4, 47:5

**nobody** [1] - 15:25
**Nodar** [1] - 24:9
**none** [2] - 5:20, 36:14
**nonstop** [1] - 54:3
**noose** [1] - 37:7
**normally** [1] - 51:3
**North** [1] - 55:24
**noted** [1] - 31:20
**nothing** [9] - 9:3, 10:15, 11:10, 12:12, 12:21, 36:19, 47:5, 52:25
**notice** [2] - 8:20, 8:24
**notwithstanding** [1] - 9:4
**number** [3] - 3:4, 39:10, 51:10
**numerous** [3] - 10:2, 18:6, 27:2

# O

**objection** [2] - 50:15, 53:17
**objectively** [1] - 5:13
**obligation** [5] - 21:12, 21:18, 22:15, 23:1, 24:17
**observation** [1] - 38:5
**obviously** [3] - 42:6, 48:17, 53:11
**occasion** [1] - 48:22
**occasions** [2] - 33:21, 33:22
**occurred** [3] - 6:14, 11:20, 43:23
**offense** [1] - 20:6
**offensive** [2] - 5:13, 31:5
**offer** [1] - 46:22
**Office** [1] - 6:19
**office** [2] - 36:10
**OFFICER** [1] - 55:13
**officer** [1] - 22:14
**Official** [1] - 55:23
**often** [1] - 18:10
**old** [1] - 45:6
**one** [30] - 11:1, 17:24, 19:1, 20:10, 20:18, 21:14, 21:18, 22:18, 22:19, 25:4, 25:14, 31:9, 33:14, 34:8, 36:1, 36:7, 36:19, 36:25, 38:16, 38:22, 39:24, 47:4, 47:5, 48:22, 49:20,

50:5, 51:2, 54:4, 54:6
**one-on-one** [1] - 36:19
**ones** [1] - 52:23
**ongoing** [4] - 42:15, 42:16, 44:14, 45:4
**opened** [1] - 49:8
**opine** [3] - 27:4, 47:3, 47:25
**opinion** [12] - 25:19, 27:15, 27:18, 30:4, 30:7, 41:24, 45:12, 46:21, 46:22, 47:2, 47:24, 49:18
**opinions** [1] - 27:5
**opportunities** [1] - 30:4
**opportunity** [5] - 8:20, 21:25, 25:8, 25:10, 25:20
**opposing** [1] - 38:25
**opposition** [1] - 44:6
**order** [8] - 3:1, 9:2, 26:15, 26:18, 26:20, 27:2, 51:2, 55:7
**Organization** [2] - 21:6, 22:14
**original** [1] - 40:22
**originally** [1] - 43:15
**ostensibly** [1] - 27:21
**otherwise** [1] - 21:17
**outcome** [4] - 7:12, 9:1, 9:12, 35:12
**outlet** [2] - 22:25, 31:13
**outlets** [4] - 24:15, 31:13, 31:17, 31:23
**outrageous** [9] - 18:2, 18:18, 29:3, 29:14, 40:2, 40:9, 41:3, 53:5
**outrageousness** [1] - 29:11
**outside** [5] - 12:14, 14:7, 15:6, 15:17, 15:22
**overarching** [1] - 39:18
**overlooked** [1] - 17:13
**own** [9] - 10:17, 10:18, 11:8, 13:13, 14:23, 24:25, 38:5, 48:3, 48:18

# P

**P.A** [1] - 28:20

**panel** [2] - 36:13, 43:5
**papers** [1] - 18:7
**paragraph** [15] - 24:4, 26:1, 26:8, 26:11, 26:18, 27:8, 27:9, 27:25, 29:5, 31:19, 31:22, 40:1, 40:7, 40:13, 51:19
**paragraphs** [9] - 26:14, 27:8, 29:6, 39:22, 40:6, 40:7, 51:18, 52:21, 52:22
**paraphrasing** [1] - 12:1
**parenthesis** [1] - 42:19
**parroting** [1] - 5:18
**part** [6] - 11:13, 24:25, 26:4, 26:24, 35:8, 54:2
**participate** [1] - 26:21
**particular** [2] - 28:2, 33:7
**particularly** [4] - 5:1, 5:10, 14:16, 14:24
**parties** [4] - 7:10, 54:8, 54:21, 55:6
**partner** [2] - 22:19, 23:21
**party** [5] - 13:7, 19:24, 28:2, 51:2, 52:9
**past** [2] - 8:10, 42:13
**PATRICIA** [1] - 55:22
**pending** [1] - 16:22
**people** [9] - 7:11, 18:22, 22:5, 36:3, 36:24, 37:10, 37:19, 43:4, 46:18
**per** [6] - 20:4, 20:8, 20:13, 20:15, 20:21
**percent** [1] - 53:21
**perfectly** [1] - 27:15
**perhaps** [7] - 24:23, 48:4, 48:7, 51:17, 51:24, 54:8, 54:9
**period** [8] - 12:14, 12:17, 14:21, 15:6, 15:22, 21:8, 48:18, 54:8
**person** [12] - 11:22, 12:1, 12:5, 12:8, 20:9, 20:16, 20:17, 21:15, 21:20, 31:6, 47:22, 52:11
**personal** [1] - 15:25
**pertinent** [1] - 21:7
**pervasive** [1] - 5:12

**Petersen** [1] - 20:3
**petition** [3] - 26:10, 35:24, 35:25
**Philadelphia** [1] - 46:4
**phrase** [1] - 20:13
**physically** [1] - 43:8
**place** [1] - 43:8
**places** [2] - 21:2, 35:9
**plainly** [1] - 16:5
**plaintiff** [49] - 3:7, 5:21, 11:22, 13:2, 13:3, 14:19, 16:20, 19:8, 20:14, 21:2, 21:5, 22:17, 22:22, 23:16, 23:17, 23:20, 24:16, 25:8, 25:16, 25:22, 26:10, 26:25, 27:12, 27:19, 27:23, 28:1, 28:14, 28:25, 29:4, 29:13, 29:14, 30:8, 30:9, 30:17, 31:4, 31:8, 31:11, 31:25, 32:6, 32:10, 33:1, 34:13, 48:8, 50:25, 51:7, 55:1, 55:3
**plaintiff's** [9] - 7:1, 8:10, 10:18, 20:12, 21:5, 23:15, 25:2, 28:3, 32:4
**plaintiffs** [1] - 11:17
**plausible** [3] - 5:7, 6:13, 7:2
**plausibly** [1] - 6:24
**played** [1] - 49:10
**plead** [1] - 15:9
**pleading** [5] - 6:24, 10:18, 11:24, 13:19, 39:8
**pleadings** [7] - 5:4, 10:17, 13:13, 15:14, 28:24, 29:9, 30:13
**pleads** [1] - 29:4
**plus** [1] - 35:23
**podium** [2] - 4:5, 32:20
**Point** [1] - 33:8
**point** [12] - 5:1, 7:25, 12:19, 14:10, 33:21, 36:2, 38:2, 38:22, 39:6, 41:19, 49:20, 51:8
**pointed** [2] - 11:24, 44:4
**points** [1] - 45:2
**Police** [1] - 26:12
**police** [3] - 25:11, 25:15, 26:12

**policy** [2] - 26:5, 52:17
**position** [3] - 11:1, 31:21, 48:12
**possibility** [2] - 14:2, 30:15
**possible** [5] - 12:8, 13:12, 18:3, 40:3, 40:10
**posted** [1] - 33:10
**potentially** [1] - 4:19
**preceding** [1] - 51:18
**precluded** [1] - 35:14
**predates** [1] - 10:5
**predator** [1] - 24:7
**prefer** [1] - 4:6
**prejudice** [6] - 4:24, 16:15, 19:9, 28:17, 50:16, 50:18
**premise** [3] - 50:12, 50:13, 52:13
**present** [3] - 25:9, 25:10, 34:25
**President** [1] - 36:6
**press** [3] - 10:15, 46:16, 46:18
**pressure** [2] - 6:18
**presumably** [4] - 8:8, 24:5, 52:25, 54:6
**presumption** [4] - 20:20, 20:21, 20:25, 21:1
**pretty** [4] - 8:23, 14:13, 32:16, 53:2
**Prevention** [1] - 21:9
**previously** [2] - 22:7, 27:8
**primary** [1] - 28:22
**privacy** [14] - 4:22, 12:25, 13:6, 13:20, 15:23, 16:5, 30:25, 31:2, 31:10, 32:1, 32:11, 40:14, 50:6, 52:25
**private** [8] - 13:8, 13:21, 14:5, 15:25, 31:3, 31:4, 32:9, 40:15
**privilege** [8] - 20:22, 21:1, 23:1, 23:25, 25:18, 30:3, 30:6, 30:7
**privileged** [2] - 20:24, 21:15
**pro** [1] - 3:16
**problem** [7] - 37:8, 38:15, 38:20, 49:21, 49:22, 51:10, 51:22
**problematic** [1] - 48:4

**problems** [2] - 16:24, 38:10
**procedural** [3] - 6:3, 6:11, 36:19
**procedure** [3] - 8:14, 35:20, 38:14
**procedures** [2] - 7:18, 8:9
**proceed** [2] - 4:5, 20:14, 50:10
**proceeding** [2] - 21:23, 38:1
**proceedings** [2] - 55:14, 55:18
**process** [9] - 6:3, 7:13, 8:2, 8:20, 8:21, 8:25, 41:12, 41:13
**professor** [2] - 21:11, 22:13
**Professor** [2] - 22:23, 43:18
**professors** [3] - 35:23, 36:6
**prohibited** [1] - 26:16
**promote** [1] - 47:16
**promoting** [2] - 26:10, 31:21
**proof** [2] - 33:22, 34:18
**proper** [4] - 5:25, 37:10, 51:3, 53:9
**properly** [7] - 8:8, 8:12, 10:8, 37:21, 38:3, 39:1, 52:1
**proposed** [2] - 54:9, 55:7
**proposition** [2] - 11:25, 43:22
**protect** [1] - 5:14
**protected** [1] - 45:12
**protest** [1] - 46:2, 46:3
**protests** [1] - 9:5
**proven** [1] - 6:2
**provide** [4] - 51:13, 51:17, 52:16, 55:7
**provided** [3] - 8:24, 31:14, 31:18
**provides** [1] - 33:22
**providing** [1] - 31:24
**proving** [1] - 21:2
**prudent** [1] - 51:6
**public** [19] - 13:11, 13:22, 22:6, 22:15, 22:23, 23:19, 26:6, 26:24, 27:3, 27:5, 27:12, 31:4, 31:7, 31:11, 31:17, 32:3, 32:5, 45:14, 48:10

**publication** [11] - 14:12, 14:14, 19:24, 22:9, 23:9, 23:23, 24:2, 25:6, 25:13, 27:7, 31:3
**publicized** [1] - 31:5
**publicly** [1] - 13:7
**publish** [1] - 31:14
**published** [13] - 7:13, 11:2, 12:10, 16:1, 20:8, 25:24, 26:3, 26:9, 27:2, 31:21, 33:13, 33:18
**publisher** [1] - 20:1
**publishing** [3] - 13:7, 13:16, 27:10
**Publishing** [1] - 20:3
**pull** [1] - 19:15
**pure** [3] - 27:5, 27:15, 27:18
**purported** [2] - 29:19, 51:22
**purportedly** [1] - 41:24
**put** [9] - 13:11, 14:8, 16:1, 17:3, 35:13, 37:6, 40:24, 42:19, 45:20
**putting** [2] - 27:3, 54:3

## Q

**qualified** [6] - 20:22, 23:1, 23:24, 25:18, 30:3, 30:7
**qualifiedly** [1] - 20:24
**qualify** [1] - 18:19
**questions** [2] - 45:24, 48:19
**quit** [1] - 49:25
**quite** [2] - 33:15, 35:21
**quoted** [4] - 12:11, 15:2, 15:3, 15:5
**quoting** [1] - 24:4

## R

**raise** [2] - 19:19, 39:6
**raises** [1] - 21:1
**rape** [4] - 26:5, 35:8, 43:4, 47:18
**raped** [1] - 36:18
**rapist** [10] - 24:7, 26:7, 36:1, 42:9, 43:1, 43:10, 44:25, 45:21,

47:3, 47:6
**re** [1] - 53:1
**re-file** [1] - 53:1
**reached** [1] - 42:8
**reading** [3] - 7:17, 37:13, 37:14
**reality** [2] - 37:7, 47:19
**realize** [1] - 45:7
**realized** [1] - 49:2
**reallege** [1] - 39:22
**realleging** [1] - 27:24
**really** [12] - 33:3, 37:12, 42:11, 44:18, 44:22, 45:9, 47:12, 48:15, 49:3, 49:20, 54:18
**realm** [1] - 27:18
**reason** [8] - 8:14, 13:25, 19:5, 19:9, 36:25, 39:5, 43:24, 44:1
**reasonable** [4] - 12:12, 15:4, 31:6, 54:18
**reasons** [2] - 16:7, 17:5
**recast** [1] - 13:25
**recasting** [1] - 30:9
**recently** [2] - 6:6, 48:20
**recite** [1] - 29:16
**reckless** [1] - 44:23
**recognize** [1] - 16:8
**recommendation** [1] - 47:17
**record** [10] - 12:18, 15:14, 26:24, 26:25, 27:1, 27:5, 27:13, 35:15, 45:19, 48:10
**recover** [1] - 32:11
**recovery** [1] - 30:7
**redundant** [1] - 35:17
**refer** [3] - 40:6, 40:15, 41:2
**reference** [5] - 21:14, 35:19, 40:12, 41:10, 51:18
**referencing** [1] - 11:16
**referred** [2] - 35:25, 42:9
**regarded** [1] - 18:3
**regarding** [6] - 22:6, 23:20, 25:10, 30:3, 31:15, 52:17
**regardless** [1] - 12:18
**regards** [6] - 25:12,

26:13, 26:23, 28:8, 28:18, 35:10
**rejected** [5] - 9:10, 14:16, 18:8, 18:10, 18:24
**relates** [3] - 7:5, 12:22, 14:22
**released** [1] - 26:12
**reliance** [1] - 24:22
**relied** [1] - 28:23
**relief** [2] - 5:7, 19:19
**relies** [1] - 48:6
**remains** [1] - 51:6
**remedial** [1] - 48:20
**Remember** [1] - 36:2
**renewed** [1] - 49:7
**repeat** [1] - 30:21
**repeated** [1] - 32:3
**repeatedly** [3] - 18:8, 31:12, 32:6
**reply** [1] - 17:3
**report** [2] - 34:4, 34:5
**Reporter** [1] - 55:23
**reporting** [1] - 25:14
**reports** [1] - 26:13
**representation** [1] - 37:11
**request** [2] - 16:21, 16:24
**require** [1] - 31:3
**required** [4] - 8:21, 9:17, 18:14, 24:25
**requires** [2] - 19:23, 32:9
**resolved** [2] - 7:21, 23:25
**respect** [14] - 4:21, 8:1, 9:18, 9:21, 10:9, 11:9, 12:15, 14:24, 15:7, 15:20, 15:21, 15:23, 17:21, 19:1
**respectfully** [5] - 7:20, 8:5, 9:24, 10:10, 15:8
**respond** [2] - 38:6, 52:1
**respondeat** [3] - 9:21, 14:24, 15:16
**response** [4] - 14:13, 16:20, 16:25, 26:17
**responsibility** [2] - 22:22, 24:16
**responsible** [6] - 9:22, 11:7, 15:16, 22:18, 23:21, 34:10
**restraining** [1] - 9:2, 26:15, 26:17, 26:20, 27:1
**result** [5] - 11:21,

12:23, 22:14, 27:14, 39:11
**resulted** [1] - 9:10
**retains** [1] - 45:10
**retribution** [1] - 24:7
**revealed** [1] - 50:18
**review** [2] - 8:25, 51:4
**Richard** [1] - 20:11
**Richardson** [6] - 3:6, 3:8, 4:3, 4:8, 11:25, 34:24
**RICHARDSON** [28] - 3:8, 3:21, 34:25, 35:3, 37:23, 37:25, 38:4, 38:7, 38:16, 38:22, 40:20, 41:17, 41:20, 42:2, 44:1, 44:6, 45:18, 46:24, 48:14, 48:25, 50:4, 50:13, 50:17, 50:22, 53:11, 53:16, 55:3, 55:10
**ride** [1] - 45:23
**ridicule** [2] - 20:10, 20:18
**ridiculous** [3] - 33:5, 34:12, 47:17
**rightfully** [1] - 48:18
**rightly** [1] - 47:23
**Rights** [1] - 6:19
**rise** [3] - 14:20, 18:11, 55:13
**Robin** [2] - 6:7
**role** [1] - 23:7
**roles** [1] - 35:21
**room** [1] - 43:9
**Rosenberg** [3] - 6:7, 6:8, 6:10
**Rossman** [1] - 28:19
**RPR** [1] - 55:22
**rule** [5] - 12:4, 14:11, 14:14, 20:20
**Rule** [1] - 39:7
**rules** [10] - 7:10, 7:14, 8:1, 8:6, 38:13, 38:14, 38:19, 38:20, 39:13
**ruling** [1] - 54:3

**S**

**sail** [1] - 49:14
**Sarver** [1] - 5:15
**SAT** [1] - 45:24
**save** [1] - 16:20
**scenario** [3] - 7:7, 16:25, 17:22
**schedule** [3] - 53:12, 53:21, 54:9

**scheduling** [1] - 55:7
**school** [5] - 36:11, 36:16, 37:3, 45:8, 48:20
**schooling** [1] - 44:17
**schools** [1] - 46:19
**scientist** [1] - 45:25
**scope** [3] - 10:25, 12:16, 15:18
**scrutiny** [1] - 35:5
**scurrilous** [1] - 18:24
**se** [7] - 3:16, 20:4, 20:8, 20:13, 20:15, 20:21
**seated** [1] - 3:2
**Second** [1] - 6:9
**second** [5] - 22:19, 33:11, 46:14, 54:6
**section** [1] - 51:12, 52:10
**SECURITY** [1] - 55:13
**see** [5] - 37:18, 39:16, 43:6, 51:5, 55:8
**seeking** [1] - 27:1
**semester** [1] - 45:22
**sense** [1] - 9:14
**sent** [2] - 38:24
**separate** [2] - 14:6, 30:18
**separating** [1] - 16:3
**September** [2] - 42:20, 49:12
**serious** [2] - 7:8, 37:1
**serve** [2] - 10:24, 30:5
**served** [4] - 21:8, 21:10, 22:7, 22:12
**service** [3] - 38:13, 38:18, 39:9
**Service** [1] - 21:19
**set** [6] - 5:3, 27:25, 30:15, 37:13, 38:3, 46:1
**settled** [1] - 11:6
**seven** [1] - 27:17
**severe** [2] - 5:12, 35:5
**severely** [1] - 54:18
**severity** [1] - 23:13
**sex** [8] - 5:22, 6:2, 6:4, 9:14, 15:10, 36:18, 36:21, 52:7
**sex-based** [1] - 15:10
**Sexual** [1] - 21:9
**sexual** [10] - 5:11,

7:9, 18:9, 18:16, 22:10, 22:18, 23:10, 23:22, 43:15, 46:12
**Shalala** [1] - 36:6
**shining** [2] - 42:24, 47:11
**short** [2] - 28:25, 53:25
**show** [3] - 12:19, 29:12, 29:13
**showing** [5] - 20:5, 32:4, 35:22, 42:5, 46:4
**sick** [1] - 4:10
**side** [1] - 13:2
**signature** [1] - 39:2
**signed** [4] - 35:23, 36:6, 38:12, 38:18
**silent** [1] - 46:2
**similar** [2] - 13:1, 23:5
**simply** [8] - 5:19, 9:13, 9:15, 12:19, 15:12, 18:11, 29:2, 33:23
**single** [1] - 11:12
**sit** [2] - 19:13, 32:19
**situation** [4] - 15:2, 16:20, 46:12, 51:6
**slander** [2] - 20:4, 20:15
**slew** [1] - 34:6
**slightly** [1] - 15:2
**slowly** [4] - 44:19, 44:20
**smoking** [1] - 6:25
**smoking-gun** [1] - 6:25
**So.2d** [2] - 20:11, 28:20
**So2d** [1] - 24:10
**social** [2] - 21:18, 22:25
**someone** [2] - 13:16, 36:25
**sorry** [8] - 3:21, 30:21, 35:1, 37:25, 38:4, 40:13, 49:6, 50:4
**sort** [2] - 13:1, 14:23
**sound** [1] - 53:15
**sounded** [1] - 49:6
**sounds** [2] - 46:22, 53:16
**source** [1] - 24:15
**special** [1] - 20:5
**specific** [5] - 6:22, 28:11, 40:17, 40:21, 51:19
**specifically** [6] -

24:18, 31:19, 41:6,
52:6, 52:7, 52:12
  **specificity** [3] -
14:19, 28:8, 40:19
  **specify** [3] - 51:19,
51:25, 53:4
  **speculative** [1] -
19:19
  **spent** [1] - 42:11
  **spirited** [3] - 13:5,
14:9, 15:1
  **spoken** [1] - 6:5
  **spread** [1] - 22:10
  **spreading** [1] - 43:12
  **St** [1] - 23:6
  **stage** [3] - 21:22,
30:16
  **stand** [3] - 9:15,
34:20, 37:16
  **standard** [9] - 12:12,
15:4, 15:24, 18:19,
18:25, 19:4, 19:8,
19:10, 34:2
  **standards** [2] - 5:3,
18:14
  **standing** [3] - 6:13,
14:7, 37:16
  **stands** [1] - 11:25
  **Stanley** [1] - 31:7
  **start** [2] - 3:6, 39:18
  **started** [2] - 48:3,
49:3
  **starting** [2] - 4:25,
38:11
  **State** [2] - 7:15, 8:22
  **state** [7] - 5:6, 22:14,
23:17, 25:20, 35:14,
52:6, 55:1
  **statement** [12] -
10:4, 11:19, 11:23,
12:17, 13:15, 19:25,
20:8, 21:21, 23:24,
51:19, 52:3, 52:4
  **statements** [47] -
6:25, 9:22, 10:2, 10:3,
10:9, 10:12, 11:4,
11:13, 13:4, 16:4,
20:16, 20:21, 20:23,
20:24, 20:25, 24:12,
24:19, 25:3, 26:22,
27:14, 27:16, 27:17,
28:23, 29:3, 29:8,
29:20, 29:21, 29:25,
30:5, 31:9, 31:14,
32:7, 33:6, 33:7,
33:19, 39:23, 41:11,
41:23, 41:24, 41:25,
42:3, 44:12, 51:23,
51:25, 53:5
  **States** [2] - 52:11,

55:23
  **states** [4] - 8:23,
18:1, 25:23, 32:2
  **stating** [2] - 24:4,
52:3
  **status** [7] - 33:8,
33:10, 33:11, 33:12,
54:9
  **statute** [7] - 15:7,
33:9, 33:20, 33:24,
34:14, 41:23, 43:22
  **statutes** [1] - 34:17
  **stay** [2] - 32:18, 54:5
  **step** [4] - 4:7, 11:18,
23:12, 46:5
  **steps** [1] - 6:14
  **stick** [1] - 48:24
  **sticking** [1] - 11:9
  **still** [10] - 23:7, 23:8,
23:25, 40:25, 41:4,
41:5, 44:12, 44:14,
45:8, 51:13
  **stole** [1] - 46:7
  **stolen** [1] - 46:8
  **stop** [1] - 49:17
  **stopped** [1] - 42:17
  **story** [1] - 11:15
  **strong** [3] - 10:1,
11:1, 50:19
  **stuck** [1] - 40:23
  **student** [20] - 5:11,
6:12, 6:13, 7:8, 7:24,
8:19, 8:22, 9:1, 10:14,
11:14, 11:17, 12:11,
15:3, 26:1, 34:6,
43:20, 44:13, 45:7,
45:23
  **student's** [1] - 6:14
  **student-on-student**
[1] - 5:11
  **students** [7] - 24:20,
25:25, 36:1, 42:10,
43:9, 44:24
  **Studies** [2] - 21:11,
22:13
  **subject** [6] - 11:23,
20:10, 20:18, 21:13,
23:24
  **submit** [1] - 10:10
  **submitted** [1] - 26:19
  **subsection** [1] - 24:5
  **substance** [2] -
11:15, 52:4
  **substantiate** [3] -
25:3, 28:15, 30:18
  **substantiating** [1] -
28:11
  **sufficiency** [1] - 5:4
  **sufficient** [6] - 5:6,
7:2, 29:12, 41:12,

51:20, 53:15
  **sufficiently** [2] -
30:17, 44:4
  **suggesting** [1] -
46:23
  **sum** [1] - 11:15
  **summary** [2] - 8:4,
16:11
  **SunTrust** [1] - 21:19
  **superior** [3] - 9:21,
14:24, 15:17
  **supervisors** [1] -
47:16
  **support** [6] - 6:13,
7:2, 9:14, 29:12,
29:15, 52:23
  **supposed** [1] - 9:7
  **Supreme** [2] - 5:2,
24:9
  **surely** [2] - 44:20,
44:21
  **surgeon** [1] - 45:24
  **surrounding** [2] -
22:11, 24:2
  **survive** [2] - 14:2,
19:17
  **suspended** [1] -
45:22
  **switch** [1] - 35:21
  **system** [2] - 26:19,
37:18

**T**

  **table** [1] - 32:18
  **tables** [1] - 3:23
  **Task** [1] - 21:9
  **task** [5] - 22:8, 23:8,
42:25, 47:13, 49:11
  **technical** [1] - 39:9
  **temporary** [3] -
26:15, 26:17, 49:13
  **tends** [1] - 20:17
  **Tennessee** [1] -
54:25
  **terms** [12] - 9:6,
21:12, 21:25, 22:5,
23:16, 25:1, 29:11,
33:1, 33:11, 33:20,
33:25, 34:13
  **terrible** [1] - 35:9
  **test** [2] - 9:25, 37:17
  **THE** [62] - 3:2, 3:6,
3:10, 3:14, 3:17, 3:20,
3:25, 4:6, 4:12, 7:17,
8:8, 8:17, 11:22, 17:4,
17:7, 17:12, 17:14,
17:17, 19:12, 19:15,
21:20, 23:2, 24:22,

25:17, 29:17, 29:24,
30:19, 30:22, 31:1,
32:13, 32:21, 34:23,
35:2, 37:20, 37:24,
38:2, 38:5, 38:8,
38:17, 39:3, 39:16,
41:7, 41:19, 41:21,
43:21, 44:3, 45:11,
46:21, 48:1, 48:24,
50:2, 50:5, 50:15,
50:21, 50:23, 53:15,
53:17, 53:24, 54:21,
54:23, 55:1, 55:6
  **theater** [1] - 24:7
  **themselves** [1] -
49:9
  **theoretically** [1] - 8:3
  **theories** [1] - 13:19
  **theory** [2] - 15:16,
19:3
  **therefore** [2] - 12:22,
27:16
  **therein** [1] - 21:14
  **they've** [1] - 10:20
  **thinking** [1] - 8:4
  **third** [2] - 19:24,
33:14
  **Thomas** [1] - 23:6
  **thoroughly** [1] - 6:20
  **threat** [1] - 36:1
  **three** [2] - 4:21, 5:20
  **throughout** [5] -
13:3, 13:5, 13:9,
43:16, 50:8
  **throws** [1] - 42:21
  **tied** [1] - 43:16
  **tightening** [1] - 37:8
  **Title** [19] - 4:21, 4:25,
5:10, 5:11, 5:14, 5:20,
6:20, 9:6, 9:15, 15:8,
15:11, 35:3, 36:19,
37:10, 37:18, 52:5,
52:8, 52:18, 52:21
  **today** [9] - 28:17,
35:3, 37:1, 37:4,
37:11, 37:21, 39:15,
52:24
  **together** [1] - 26:22
  **took** [3] - 42:11,
48:19, 49:11
  **top** [1] - 54:5
  **topic** [1] - 43:14
  **tort** [3] - 14:17,
28:15, 30:10
  **torturous** [1] - 44:9
  **totally** [2] - 44:14,
46:7
  **towards** [1] - 44:17
  **town** [1] - 54:24
  **track** [1] - 54:10

  **transcription** [1] -
55:18
  **transform** [1] - 29:1
  **treated** [2] - 35:12,
35:18
  **trial** [1] - 54:2
  **tried** [2] - 34:3
  **true** [12] - 5:6, 7:19,
7:20, 10:19, 11:8,
13:8, 13:16, 14:5,
15:25, 19:6, 19:21,
32:9
  **truthful** [2] - 13:22,
50:11
  **trying** [2] - 13:25,
34:12
  **tuck** [1] - 16:20
  **tucked** [1] - 16:24
  **twenty** [2] - 53:15,
53:16
  **two** [10] - 17:11,
22:18, 22:22, 24:8,
27:10, 32:25, 38:11,
41:25, 43:23, 45:23
  **Twombly** [3] - 5:3,
7:1, 19:22
  **tying** [2] - 15:9, 44:8
  **type** [2] - 18:13,
37:12
  **typically** [1] - 18:13

**U**

  **UM** [12] - 17:14,
22:10, 22:15, 22:17,
24:16, 26:16, 27:20,
42:12, 47:17, 47:18,
47:20
  **unconscious** [1] -
24:8
  **under** [11] - 7:23,
19:20, 28:4, 35:5,
36:4, 36:5, 42:22,
42:23, 45:16, 47:23,
47:24
  **undermine** [2] -
13:20, 14:23
  **undermines** [1] -
10:18
  **understatement** [1] -
48:16
  **understood** [2] -
29:18, 38:25
  **undisputed** [2] -
21:24, 22:1
  **unfairly** [1] - 37:19
  **unfortunately** [2] -
35:8, 35:10
  **unfounded** [1] - 9:9

**unhappy** [1] - 9:1
**United** [2] - 52:11,
55:23
**universitis** [2] -
6:18, 37:8
**University** [35] - 3:3,
3:12, 4:14, 6:11, 9:3,
9:20, 10:16, 10:19,
11:3, 12:24, 14:22,
15:19, 21:8, 22:21,
22:24, 23:6, 23:9,
23:11, 23:19, 24:20,
25:4, 27:2, 32:22,
35:20, 36:4, 40:5,
40:14, 42:18, 42:21,
42:25, 45:1, 46:24,
47:12, 47:14, 52:18
**university** [21] - 7:8,
7:9, 7:18, 7:24, 12:16,
15:16, 23:3, 23:5,
34:4, 34:9, 36:17,
38:8, 45:13, 47:9,
47:10, 48:5, 49:1,
49:3, 49:5, 52:19,
52:20
**university's** [3] -
24:22, 34:1, 53:6
**unless** [1] - 43:24
**unprivileged** [1] -
19:24
**untrue** [4] - 14:9,
16:4, 24:12, 32:8
**unwieldy** [1] - 54:17
**up** [10] - 4:5, 4:7,
37:8, 37:16, 37:17,
38:23, 44:8, 46:4,
49:9, 54:8
**upheld** [1] - 22:22
**utterly** [1] - 18:4

**V**

**vague** [1] - 28:4
**various** [3] - 10:3,
33:21, 38:10
**versus** [11] - 3:3,
5:15, 6:8, 6:10, 18:5,
19:21, 20:2, 20:6,
21:19, 23:6, 24:9
**viable** [1] - 30:3
**victim** [2] - 5:13,
43:4
**victims** [1] - 26:5
**video** [1] - 45:4
**vindicated** [1] -
46:13
**violations** [1] - 34:6
**violence** [3] - 22:20,
23:21, 47:18

**Violence** [1] - 21:9
**virtue** [1] - 48:12
**voice** [1] - 23:12
**voluntarily** [1] -
26:25

**W**

**walk** [2] - 9:4, 24:6
**Walton** [1] - 18:5
**watch** [1] - 46:4
**watching** [1] - 42:19
**water** [1] - 3:24
**ways** [2] - 13:3,
35:15
**weak** [1] - 33:6
**week** [2] - 25:14,
55:6
**weeks** [2] - 3:22,
24:8
**weight** [1] - 41:1
**welcome** [2] - 32:14,
32:17
**well-established** [1]
- 11:6
**well-settled** [1] -
11:6
**Westaway** [51] -
3:19, 9:23, 10:21,
11:2, 14:25, 17:19,
20:12, 20:15, 21:4,
21:6, 21:8, 22:4, 22:7,
22:23, 23:18, 24:3,
24:4, 24:13, 24:19,
26:3, 26:22, 27:4,
27:22, 28:11, 28:17,
28:19, 29:6, 29:13,
30:11, 30:20, 30:23,
31:14, 31:18, 31:23,
32:7, 32:11, 34:16,
35:22, 40:5, 40:8,
40:14, 42:4, 42:18,
43:18, 44:9, 47:22,
48:2, 48:3, 48:5,
54:23, 55:5
**Westaway's** [5] -
27:14, 27:20, 31:9,
32:23, 45:11
**white** [1] - 12:5
**whole** [4] - 4:10,
49:9, 52:13, 54:15
**William** [1] - 32:23
**wind** [1] - 49:15
**wish** [3] - 41:17,
42:5, 50:17
**witness** [1] - 49:10
**witnesses** [1] - 35:16
**woman** [1] - 35:21
**Women** [4] - 21:7,

21:10, 22:12, 22:14
**women** [1] - 37:9
**word** [1] - 43:12
**words** [6] - 5:19,
13:5, 13:14, 35:24,
46:1, 50:19
**wore** [1] - 46:3
**World** [1] - 28:5
**world** [3] - 4:10,
16:1, 18:13
**worms** [1] - 49:9
**worth** [1] - 47:15
**writing** [1] - 43:8
**written** [1] - 52:3

**Y**

**Yannuzzi** [1] - 3:12
**year** [3] - 33:3, 33:4,
54:2
**years** [2] - 41:25,
43:23
**yesterday** [3] -
16:15, 16:17, 17:2
**yourself** [1] - 11:18